# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### No: CV 07-04825 WHA

---

Betta Products, Inc. and Dana McCurnin, Trustee of the Betta Products Litigation Trust,

Plaintiffs-Appellees,

v.

Distribution Systems and Services, Inc.

Defendant-Appellant.

---

### APPELLANT'S APPENDIX

---

Richard W. Abbey, Esq. SBN 53039
Mitchell B. Greenberg, Esq. SBN 114878
Rachel K. Nunes, Esq. SBN 172525
Abbey, Weitzenberg, Warren & Emery
100 Stony Point Road
Ste. 200
PO Box 1566
Santa Rosa, CA 94502-1566
Telephone: (707) 542-5050

James Anton Beitz, MN ATTY. ID No. 6233
Hagerty Johnson & Beitz P.A.
701 Fourth Avenue, South, Suite 700
Minneapolis, Minnesota 55415
Telephone: (612) 349-9000
*Pro Hac Vice*

Attorneys for Defendant, Appellee

# APPENDIX TABLE OF CONTENTS

| Exhibit | Title of Document and Date Filed | Docket Number on Docket Report |
|---------|----------------------------------|--------------------------------|
| A | Order Severing Cases—Filed 10/20/06 | 30 |
| B | Transcript of the 10/13/06 hearing severing the cases—Filed 10/20/06 | 31 |
| C | Memorandum decision on motion to confirm the award—Filed 2/15/07 | 96 |
| D | Judgment confirming arbitration award—Filed 3/1/07 | 100 |
| E | Order for Judgment confirming award—Filed 3/1/07 | 101 |
| F | Plaintiffs' Notice of Appeal of judgment on arbitration award—Filed 5/11/07 | 124 |
| G | Memorandum in Support of DSS' Motion to Dismiss—Filed 6/28/07 | 158 |
| H | Memorandum Decision denying  DSS' Motion to Dismiss—Filed 8/15/07 | 189 |
| I | Order Denying DSS' Motion to Dismiss—Filed 9/06/07 | 190 |

# EXHIBIT A

**Entered on Docket**
**October 20, 2006**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In re: | Bankruptcy Case No. 03-10925 AJ |
| BETTA PRODUCTS, INC., a California Corporation | Chapter 11 |
|  | Adversary No. 05-01046 AJ |
| Debtor. |  |
| BETTA PRODUCTS, INC., the Debtor in Possession, and the Betta Products Litigation Trust, | **ORDER GRANTING PLAINTIFFS' MOTION FOR: 1) MODIFICATION OF THE STAY PENDING ARBITRATION; 2) LEAVE TO AMEND THE COMPLAINT** |
| Plaintiffs, |  |
| v. | Date:    October 13, 2006 |
| DISTRIBUTION SYSTEMS AND SERVICES, INC., aka DSS, | Time:    9:00 a.m. |
|  | Place:   99 South E Street |
|  |          Santa Rosa, CA |
| Defendant. |  |

Betta Products, Inc. and the Betta Products Litigation Trust (collectively "Plaintiffs") Motion For: 1) Modification of Stay Pending Arbitration; 2) For Leave To Amend the Complaint ("Motion") came on for hearing on October 13, 2006 at 9:00 a.m. before the Honorable Alan Jaroslovksy. All appearances were as noted in the Court's record.

After considering the arguments of counsel, and good cause appearing therefor,

**IT IS ORDERED** as follows:

1.    Plaintiffs are given leave to file the Amended Complaint submitted with the Motion ("Amended Complaint").

1

2.      The claims added in the Amended Complaint are severed from the contract claims pursuant to Fed.R.Civ.P. 21, as incorporated into bankruptcy cases by Fed.R.Bankr.P. 7021, and the actions will proceed separately.

3.      The original contract claims not contained in the Amended Complaint may proceed in arbitration as the AAA or its panel of arbitrators deems proper including, without limitation, any arguments for a stay or suspension of that proceeding.

4.      Any res judicata arguments regarding or arising out of the arbitration or the Plan of reorganization are reserved for a later date.

Dated: October 20, 2006

Alan Jaroslovsky
U.S. Bankruptcy Judge

2

# EXHIBIT B

1

1              UNITED STATES BANKRUPTCY COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3                  (SANTA ROSA DIVISION)

4

5   In re:

6   BETTA PRODUCTS, INC.,              Case No. 03-10925
    a California corporation,
7                                      Chapter 11

8                                      Santa Rosa ,California
                                       October 13, 2006
9                                      9:30 a.m.

10  _____/

11  BETTA PRODUCTS, INC., the
    Debtor in Possession,
12
            Plaintiff,
13
        v.                             A.P. No. 05-01046
14
    DISTRIBUTION SYSTEM AND
15  SERVICES, INC., aka DSS,

16          Defendant.

17  _____/

18              TRANSCRIPT OF PROCEEDINGS
        MOTION FOR MODIFICATION OF THE STAY AND FOR
19          LEAVE TO AMEND THE COMPLAINT

20
            BEFORE THE HONORABLE ALAN JAROSLOVSKY
21             UNITED STATES BANKRUPTCY JUDGE

22

23

24

25

2

```
 1  APPEARANCES:

 2  Special Counsel to          BRINKMAN PORTILLO, PC
    Betta Products:             BY: DAREN R. BRINKMAN, ESQ.
 3                                         -and-
                                    LAURA J. PORTILLO, ESQ.
 4                              4333 Park Terrace Drive, Suite 205
                                Westlake Village, California 91361
 5

 6  For the Defendant:          ABBEY, WEITZENBERG, WARREN & EMERY
                                BY: MITCHELL GREENBERG, ESQ.
 7                              100 Stony Point Road, #200
                                Santa Rosa, California 95401
 8
                                          -and-
 9
                                HAGERTY, JOHNSON & BEITZ, PA
10                              BY: JAMES A. BEITZ, ESQ.
                                701 Fourth Avenue South, Suite 700
11                              Minneapolis, Minnesota 55415

12

13  Court Recorder:             JAN COLVIN
                                UNITED STATES BANKRUPTCY COURT
14                              99 South "E" Street
                                Santa Rosa, California 95404
15

16

17  Transcription Service:      Jo McCall
                                Electronic Court
18                              Recording/Transcribing
                                2868 E. Clifton Court
19                              Gilbert, Arizona 85297
                                Telephone: (480)361-3790
20

21

22

23

24

25
```

3

1                P R O C E E D I N G S

2  October 13, 2005                        9:30 a.m.

3                      ---oOo---

4           THE CLERK: On the add-on calendar, <u>Betta Products</u>

5  <u>versus Distribution Systems and Services.</u>

6           MR. BRINKMAN: Good morning, Your Honor, Daren

7  Brinkman and Laura Portillo from Brinkman Portillo

8  appearing on behalf of Betta Products.

9           MR. GREENBERG: Good morning, Your Honor, Mitch

10  Greenberg and Tony Beitz for defendant, Distribution

11  Alternatives, Inc.

12           THE COURT: All right.  Well, I've had very little

13  chance to take a look at this on shortened time, so what is

14  it that the plaintiff wants in this case?

15           MR. BRINKMAN: Your Honor --

16           THE COURT: You want to amend the complaint and

17  you want it arbitrated or you want to amend the complaint

18  and bifurcate it and just arbitrate the contract claim.

19           MR. BRINKMAN: That is correct, Your Honor.  We

20  want the latter.  We want to amend the complaint and

21  bifurcate it so that things that are outside the contract

22  can go forward in the court of law where they need to be.

23           THE COURT: Why do you want to go through all that

24  expense?  What's the point of arbitrating it if you're not

25  getting rid of the whole thing?

 1          MR. BRINKMAN: Well, candidly, that's exactly what

 2    we said because you have to understand their position in

 3    the arbitration has been one of, Gee, the arbitration

 4    clause in the contract only provides for arbitrating

 5    contract claims.  They've filed a motion to dismiss which

 6    is attached to our moving papers today in the arbitration,

 7    which says this arbitration panel cannot arbitrate claims

 8    for conversion, claims for bailment, other tort claims.

 9          They're right.  Okay?  We can't force it to go

10    through.  We've reviewed their cases and instead of trying

11    to force a square peg into a round hole, we're here,

12    because this is where those claims need to be adjudicated.

13    Now, this is not some small minor thing.

14          THE COURT: Well, now you say "here."  Is this a

15    core proceeding?

16          MR. BRINKMAN: Well, that is a good point.  I mean

17    it may be something that is something that should be -- the

18    reference withdrawn.  But that being said, it has both core

19    and non-core matters in it.  There's a complaint for

20    turnover in the original complaint and in the amended

21    complaint, but the amended complaint adds claims for

22    conversion, for fraud, for negligence, and negligent

23    misrepresentation, all outside the contract.

24          MR. BEITZ: Good morning, Your Honor.  I am Tony

25    Beitz.  I am DSS's or Distribution Alternative's lawyer in

1  the arbitration.   I have been admitted pro hac vice in this

2  proceeding.   I have a number of things to say, and I want

3  to reiterate our request to file additional matters after

4  the hearing if the Court is willing, but instead of getting

5  to those things that I'd like to talk about, which aren't

6  going to do the Court much good this morning, I'd like to

7  get right to the issues.

8       There's been a suggestion -- actually more than a

9  suggestion -- that I changed the rules by this motion that

10 I brought to dismiss the conversion claim they made in the

11 arbitration.   Nothing could be further from the truth.   In

12 fact, the demand for arbitration -- and the Court should

13 understand there's also been the suggestion that DSS made

14 the demand for arbitration of my client.   That's not true

15 either.   Betta made the demand for arbitration with the

16 Triple A, and here's what they asked to be arbitrated.

17       "Under the terms of a contract, respondent,

18       Distribution Systems and Services, acted as a

19       storage warehouse and shipping agent for claimant

20       Betta Products.   Claimant, Betta Products, now

21       claims respondent breached the contract by

22       mishandling goods and by failing to turnover the

23       inventory when requested."

24       That's what they asked the panel to arbitrate, a

25 breach of contract claim.   And there was a really good

6

1  reason why they did that, because that's all your order

2  allowed them to do.  Your order told them they should go

3  and arbitrate the claims that they'd sort forth in the

4  complaint they filed in this proceeding.  There were only

5  contract claims in that complaint.  There was no conversion

6  claim; there was no fraud claim; there was no negligence

7  claim.  There was nothing except contract claims.

8      And even when they had the opportunity to amend

9  their demand for arbitration with the Triple A --

10      THE COURT: Well, when you're saying I ordered it,

11  did you oppose arbitration?  Usually my reaction is, if

12  you've got a dispute, this is the quickest and cheapest

13  place to get it resolved.  So it would be unusual for me to

14  send it out to arbitration unless both sides wanted it.

15      MR. BEITZ: We asked you to do it.  We wanted you

16  to send it out to arbitration.  We thought it belonged in

17  arbitration.  And you told them that they had to go

18  arbitrate the claims they'd raised in their complaint.  And

19  the claims they'd raised in their complaint were contract

20  claims.

21      THE COURT: Did they oppose the arbitration?

22      MR. BEITZ: They opposed the motion -- my

23  recollection is --

24      THE COURT: Because I have no recollection at all,

25  so --

1          MR. BEITZ: I appreciate that.  Mr. Chandler who
2    was their lawyer at the time argued that there were some
3    core issues that were ancillary, but he never made that
4    clear as to what they were.  But he did not put up, to the
5    best that I can recall, any dispute or disagreement with
6    the fact that the contract in question required these
7    issues to be arbitrated.

8          The contract says, and it tracks with the Plan,
9    by the way, that all claims arising out of the contract
10    must be arbitrated, and we moved you to confirm that in an
11    order, and you did.  And it went on up to arbitration and
12    we've been arbitrating it for almost 12 months.  In April,
13    we gave to Betta a bunch of documents they requested.  We
14    gave it to them on a CD, but there were several thousand
15    pages of documents.

16          From those pages of documents, they have now come
17    to this Court today to say they discovered that they've got
18    breach of contract -- excuse me -- fraud, negligence,
19    fraudulent misrepresentation, and some other claims.  And
20    that those claims based upon my motion to dismiss the
21    conversion claim don't belong in arbitration.   Here's my
22    position.  Here's our position.  And you can throw out
23    whatever anybody ever said.

24          If the claims arise under the contract -- and
25    those are the only claims reserved in the Plan -- then they

8

1   must be arbitrated, all of them. If they don't arise out

2   of the contract or under the contract, rather, then they

3   aren't reserved in the Plan and they aren't to be

4   arbitrated. I think what the Court -- the options the

5   Court really has before it this morning -- and I'll skip

6   through a lot of stuff I was going to say --

7           THE COURT: There's no hurry, but --

8           MR. BEITZ: Well, I may come back to some of that

9   stuff, let me get to the end.

10          THE COURT: Brevity for the point of clarity is

11   appreciated, but brevity because I'm in a hurry is not

12   something that should be a concern.

13          MR. BEITZ: Okay. I think the Court can deny this

14   motion because the Plan doesn't reserve these claims

15   anyway. The court can make that decision. I think the

16   Court can deny the motion because the original order to go

17   to arbitration doesn't include these claims, and I'm

18   confident that that's true.

19          THE COURT: Well, let's take the latter first.

20          MR. BEITZ: Okay.

21          THE COURT: If it doesn't -- if the arbitration

22   order does not include these claims, I can understand how

23   you could say they're gone if the Plan doesn't reserve it,

24   but if I don't interpret the Plan that way, why are the

25   claims gone?

1          MR. BEITZ: That's a good question.  And I think

2   that's a fair question.  If your order didn't approve the

3   claims because they didn't arise under the contract, then I

4   think that would mean by definition they weren't reserved

5   under the Plan, but I suppose your order could have been,

6   and probably was now that you mention it, strictly directed

7   towards the complaint that was filed at that time, and the

8   fact that the complaint didn't raise those claims doesn't

9   mean they don't exist.  That's fair; you're right.

10          THE COURT: So we end up arbitrating the contract

11   claims and then sending the rest out to District Court?  I

12   don't know.

13          MR. BEITZ: Well, I think if the other claims

14   arise under the contract, they've got to be arbitrated too.

15   That was what I said to begin with.  I think if they --

16   there are two questions that have to be resolved

17   ultimately.  Do the claims, whatever they are, arise under

18   the contract?  If they do, then they must be arbitrated

19   because that's what the contract says, regardless of what

20   they are.

21          THE COURT: But you're arguing to the arbitrator

22   that they don't.

23          MR. BEITZ: Well, I'm only arguing to the

24   arbitrator that the one doesn't because it wasn't included

25   in your order -- what you have to understand, and let me go

1  back to some of this stuff I was going to talk about -- I

2  moved to dismiss a bunch of things.  One of the things I

3  moved to dismiss was the conversion claim because it

4  duplicated the contract claim, except for one thing.  In

5  Minnesota, the measure of conversion is the market value of

6  the goods that were converted at the time of the

7  conversion.  I'm guessing in California that's true too,

8  but I know that's true in Minnesota.

9          And that's specifically and directly in

10  opposition to the measure of damages in this contract.  And

11  I moved to dismiss that conversion claim on that ground,

12  that it wasn't included in your original order and

13  therefore shouldn't be before the panel of arbitrators, but

14  also because it was contrary to the contract.  And that was

15  the basis for my motion.  And I still think that's a good

16  motion because your order, I'm very confident, didn't

17  include conversion.

18          THE COURT: Well, that's because conversion wasn't

19  alleged until now.

20          MR. BEITZ: Perfect.  Exactly right.  And if --

21  that gets me to my last alternative of what the Court can

22  do.  The Court can grant the motion but send -- keep the

23  arbitration in place on exactly the claims that are there

24  now; hold on to the additional claims, the conversion

25  claim, the negligence claim, all the allegedly non-contract

1   claims that weren't included in the original order and see

2   what happens with the arbitration, because I'll bet anybody

3   in this room today when that arbitration is over,

4   everything is going to be resolved, and I'll tell you why.

5           In Dennis Walsh's deposition, Mr. Walsh is the

6   president and CEO now of Betta and runs Betta, he admitted

7   that all of their claims flow from their allegation that we

8   didn't give them inventory to which they were entitled.

9   And I agree with him.  That's what this case is all about.

10  And if we go to arbitration and it's determined that we

11  didn't give them the inventory to which they were entitled,

12  they're going to get something.  And if it's determined we

13  did give them the inventory to which they were entitled,

14  they haven't been given anything.  And the case is going to

15  be over.

16          In the meantime, however, the debtor is not going

17  to have been prejudiced because you're still holding onto

18  those other claims, and we don't have to -- we don't have

19  to stop the arbitration which is now scheduled to be heard

20  November 13, and on which we've spent a considerable amount

21  of money and time.  As a matter of fact, this past week, I

22  intended to be in Southern California the entire week

23  meeting with, interviewing, and preparing witnesses and

24  that's where I heard about this motion and then came up

25  from Southern California here.

1        The other side I'm sure too has spent a

2   considerable amount of time.  I've been out here on two

3   trips taking depositions and meeting with witnesses.  That

4   order would have the benefit of, in my judgment, protecting

5   the debtor, letting the arbitration go forward, and if

6   there's anything left over after that arbitration is done,

7   dealing with that at that time, and I think that's not

8   likely.

9        THE COURT: Well, it may be we're on the same page

10  here.  What I am contemplating is an order which does three

11  things: number one, grants the motion to amend the

12  complaint; number two severs those claims added in the

13  amended complaint from those in the original complaint,

14  allowing the claims in the original complaint to go

15  forward, and as you said, holding the added claims; and

16  reserving the res judicata argument, that is to say,

17  reserving the argument as to whether or not the claims

18  raised in the amended complaint are barred because of the

19  Plan confirmation.

20       MR. BEITZ: Or are barred by the decision in the

21  arbitration.

22       THE COURT: Well, that goes without saying.  Yeah.

23       MR. BEITZ: That would be satisfactory to us, Your

24  Honor.

25       THE COURT: Well, let me see if it would be

1  satisfactory to the other side.

2          MR. BRINKMAN: Your Honor, a couple of things that

3  need to be addressed very clearly.  Counsel is speaking out

4  of both sides of his mouth, when he gets up here and says,

5  well, I didn't really argue this or that.  Let me read

6  directly from his brief in the arbitration.

7          "In Claims 1 and 2, claimants seek alternative

8          relief for conversion and breach of bailment

9          relationship.  Conversion is a tort claim.

10         (Citations.)  And while bailment is a form of a

11         contract claim, claimants are making their

12         bailment claims here not under the Betta/DSS

13         agreement.  But as an alternative to it, neither

14         claim is justified under the Betta/DSS agreement,

15         which limits arbitration under the agreement to

16         any agreement or dispute under this agreement.

17         Therefore, those alternative claims must be

18         dismissed."

19  He takes the position clearly in writing, black and white,

20  right there, he says, we can't arbitrate any of those

21  claims outside, and they don't arise under the contract.

22          Now all they're doing is just trying to cut off

23  an appropriate forum --

24          THE COURT: Well, hang on a minute.  Is it

25  possible for you to lose in the arbitration under the

1    contract and still have a tort claim?

2            MR. BRINKMAN: Your Honor, I want you to

3    understand, a tort claim is --

4            THE COURT: I mean it's the same act.  You're

5    saying this act had two consequences.  Number one, it was a

6    breach of the contract; and number two, it was tortuous,

7    which the only consequence there, there might be a

8    different measure of damages and there might be some

9    punitive damages involved.

10           MR. BRINKMAN: Right, and consequentials to boot.

11           THE COURT: But if you lose in the arbitration,

12   that is to say, the arbitrator says they did not breach the

13   contract, I don't see how it would be possible for you to

14   have a tort, a viable tort claim.  If the arbitrator says

15   they did everything right under the contract, they did

16   everything they were supposed to regarding the inventory,

17   then I don't see how you have a remaining tort claim.

18           MR. BRINKMAN: If that were the way the evidence

19   goes, great.  But what you have to understand that part of

20   this has been a -- we kind of anticipated from the outset,

21   this would be kind of a bean-counting exercise where we

22   basically looked at ins and outs and inventory records and,

23   you know, came out to what was right.  They have taken the

24   position officially in that proceeding now in which they

25   say, well, you can't rely upon our accounting records.  We

1   may have had an obligation to keep accurate records, but

2   they're unreliable so you have no damages because you don't

3   get to rely upon our records.   Okay?

4          They changed the whole nature of the action from

5   one of a bean-counting exercise to one about fraud.   Now we

6   have to turn around and go, look, you were handing these

7   things -- you were handing us these reports on a regular

8   basis as if that was the way they were, expecting us to

9   rely upon them, and we did rely upon them, not only damages

10  for the fact that they are not there when they're there; we

11  have damages for tort.   And we want to put on damages

12  regarding consequential damages and the fact that they were

13  misleading us.

14          THE COURT: Well, you're admitting you can't do

15  that in the arbitration.   You're admitting their motion is

16  right.   And if I issue the order that I proposed, I'm

17  preserving your rights.   If you win in the arbitration,

18  that puts you in a pretty good position to prosecute your

19  tort claims.   If you lose in the arbitration, I think your

20  tort claims either, as a matter of law or if not as a

21  matter of law, as a matter of practicality, just go poof!

22          MR. BRINKMAN: M-hm.   Yeah.   Like I said, I don't

23  think that that's what the trial is going to be about.   And

24  a secondary point regarding the res judicata argument of

25  the Plan, it's kind of absurd --

1          THE COURT: I don't want to decide that now, so I

2    just want to reserve it.  That may be a fruitless exercise

3    and so I recognize it's an issue, but that's the reason I

4    put that in my proposed order was so that I don't have to

5    decide it now but the issue is still there if it becomes

6    necessary to be decided.

7          MR. BRINKMAN: Well, understand that they've

8    raised the same argument in their arbitration brief, and we

9    think it's a collateral attack on the Plan.  They're

10   basically asking some non-judge in Minnesota to interpret

11   your Plan and interpret bankruptcy law, which is not

12   kosher.

13         THE COURT: Well, I understand that, but if -- an

14   arbitrator by definition is a non-judge.

15         MR. BRINKMAN: Yes.

16         THE COURT: And as I said, I never order people to

17   arbitration.  I always assume the case if I can because I

18   know this is the fastest -- believe me, if it were

19   litigated here, it would be over now.  You might be up in

20   the Appellate Courts, but you'd have a trial done.

21         MR. BRINKMAN: Yes.

22         THE COURT: So I know I can do it faster and

23   cheaper than anybody else.  So you're either -- you're not

24   in arbitration because I made you go to arbitration; you're

25   in arbitration because basically --

1           MR. BRINKMAN: They forced us to.

2           THE COURT:  -- there was an agreement -- well,

3    there was an agreement, and I'm just honoring the agreement

4    between the parties.

5           MR. BRINKMAN: Well, that's understood.  I mean --

6           THE COURT: I just don't see how my order

7    prejudices -- it seems to me the order that I'm proposing

8    preserves your client's rights and allows the arbitration

9    to go forward, and the whole idea of arbitration is, it's

10   not subject to legal review, so the arbitrator basically

11   does what he or she thinks is right, and then if you're

12   successful in the arbitration, then you've still got these

13   tort claims which can be litigated.

14          MR. BRINKMAN: Can you hang on one moment.  I need

15   to talk to my partner just to consult --

16        (Pause.)

17          MR. BRINKMAN: Your Honor, I want to be perfectly

18   straight with you.  I think that the order would work for

19   this reason, and I'll be totally honest with you.  Because

20   of the way the tort law gives you fair market value damages

21   on lost goods and because their contract only provides cost

22   damages, it's an inferior measure to go under contract for

23   us.  We are not likely to want to proceed first under the

24   contract.  We are probably going to seek to stay that

25   arbitration proceeding and go first under the rights that

1  we have outside the contract, because, you know, the

2  damages are -- we're going to have to deal with the damages

3  one way or the other.  We're going to have to go through

4  the accounting; we're going to have to go through the false

5  representations and it makes better sense to do it all in

6  one forum first.  We recognize that we'll have to come back

7  or, you know, if there's anything in the contract not in

8  tort law, we understand that that we'd be missing that by

9  going forward first in this court or in District Court.

10 But I want to be perfectly honest, that's what we intend to

11 do with that order in hand.

12        THE COURT:  Well, isn't that up to the arbitrator?

13        MR. BRINKMAN:  The arbitrator can decide whether

14 or not to stay it or not, yeah.

15        THE COURT:  I do not want to interfere with the

16 arbitrator.

17        All right.  My order will be that the -- well,

18 insofar as -- my order will be that leave is granted to

19 file the amended complaint.  The claims added in the

20 amended complaint are severed from the claims in the

21 original complaint, and the original complaint may proceed

22 in arbitration as the arbitrator deems proper.  And I want

23 to make it clear that the res judicata or any res judicata

24 argument which could be res judicata arising out of the

25 arbitration or res judicata arising out of the Plan itself,

19

1  is reserved.

2          Now, I do not see any need to modify the order

3  sending it out to arbitration.  Is there anything else I

4  need to consider right now?

5          MR. BRINKMAN: No, sir.

6          THE COURT: All right.  Then if counsel for Betta

7  Products will please prepare an appropriate form of order

8  and have counsel for DSS approve it as to form.

9          MS. PORTILLO: Yes, Your Honor.

10          MR. BRINKMAN: Yes, Your Honor.

11          MR. BEITZ: Thank your, Your Honor.

12          MR. GREENBERG: Thank you, Your Honor.

13          THE COURT: Thank you.

14      (Whereupon, the proceedings are concluded at 9:56

15  a.m.)

16

17

18

19

20

21

22

23

24

25

20

1

2

3

4

5                    CERTIFICATE OF TRANSCRIBER

6

7          I certify that the foregoing is a correct

8   transcript from the digital sound recording of the

9   proceedings in the above-entitled matter.

10

11

12  DATED:  October 19, 2006        /s/ Jo McCall

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT C

Entered on Dock
**February 15, 2007**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

BETTA PRODUCTS, INC.,                                    No. 03-10925

　　　　　　　　　　Debtor(s).
_____/

BETTA PRODUCTS, INC.,

　　　　　　　　　　Plaintiff(s),

　　　　　　v.                                             A.P. No. 05-1046

DISTRIBUTION SYSTEMS AND SERVICES,
INC., aka DSS,

　　　　　　　　　　Defendant(s).
_____/

Memorandum on Motions Related to Arbitration
_____

　　　This adversary proceeding involves claims by debtor and plaintiff Betta Products, Inc., that it suffered

damages due to a breach of a written warehousing agreement by defendant Distribution Systems and

Services, Inc. (DSS).  Basically, Betta alleges that DSS improperly looked after inventory of Betta in DSS'

custody.

　　　On July 11, 2005, the court granted DSS' unopposed motion to stay proceedings in this court and

compel arbitration pursuant to the written agreement.  The dispute was thereafter in the hand of the American

1

1    Arbitration Association until October, 2006, when Betta made a motion in this court to amend its complaint.

2    This was in reaction to a motion DSS had made to the arbitration panel to dismiss Betta's tort claims

3    (principally conversion) on grounds that the arbitration was, by terms of the contract, limited to damages

4    arising out of the agreement.

5          On October 20, 2006, the court entered an allowing the amended complaint. The order contained

6    the following language:

7          The original contract claims not contained in the Amended Complaint may
       proceed in arbitration as the AAA or its panel of arbitrators deems proper including,
8       without limitation, any arguments for a stay or suspension of that proceeding.

9          Immediately after entry of the order allowing the amended complaint, Betta filed a motion in this court

10    for dismissal of its contract claims. Then, five days later on October 31, 2006, Betta filed a motion for an

11    interim stay of the arbitration or, in the alternative, shortening time on its motion to dismiss the contract claims.

12    The court set a hearing on shortened time for November 17, 2006.

13          The current disputes stem from Betta's actions between October 31 and November 17, 2006.[1]

14    Betta decided that its best course of action was to completely ignore the arbitration proceedings, even though

15    this court had ordered that any request to stay the arbitration must be made to the arbitrators.    The

16    arbitration went forward without Betta's participation on November 13, 2006, and resulted in an award in

17    favor of DSS and awarding DSS $20,434.09 in arbitration expenses. Now before the court are DSS'

18    motion to confirm the arbitration award, Betta's motion to vacate the arbitration award, and Betta's motion to

19    dismiss its contract claims.

20          Betta makes two arguments which the court dismisses as without foundation. These matters need to

21    be addressed before the technical details of Betta's objections are considered.

22          First, Betta argues that the arbitration award was obtained by fraud, corruption or other undue

23    means. Nothing in the record even creates a triable issue of fact as to this slanderous assertion. Everything in

24    _____

25    [1]The court was on vacation during this time, having made arrangements for Chief Judge Newsome to
     hear any emergency matters. Betta tried to obtain an expedited hearing during this time, and its request was

26    denied by Judge Newsome.

2

1   the record indicates that the arbitrators were distinguished professionals and did not act in a corrupt or

2   fraudulent manner.

3       Second, Betta argues that the arbitration proceeded contrary to this court's orders and desires. This

4   is completely false. Not only did the court expressly order that any request for a stay of arbitration be made

5   only to the arbitrators, but the court made it clear on the record that its desire was not to interfere with the

6   arbitration. Contrary to Betta's arguments, the arbitrators acted consistently with this court's orders and did

7   not misinterpret anything. The court anticipated that the arbitrators would adjudicate the contract claims,

8   leaving only the tort claims for court adjudication. That is exactly what happened.

9       Before the court can decide the issues before it, the court must decide what law to apply and whether

10  venue is proper. Because the contract involved commerce, the Federal Arbitration Act applies

11  notwithstanding reference in the contract to Minnesota law. *Mediterranean Enterprises, Inc. v.*

12  *Ssangyong,* 708 F.2d 1458, 1463n4. Because the venue provisions of the Federal Arbitration Act are not

13  mandatory, this court has jurisdiction to enter or vacate an arbitration award notwithstanding the venue

14  provisions contained in 9 U.S.C. § 9 and § 10. *Theis Research, Inc. v. Brown & Bain,* 240 F.3d 795,

15  796 (9th Cir.2001).

16      Section 9 of the Federal Arbitration Act requires the court to confirm the arbitration award unless it is

17  vacated pursuant to § 10. Section 10(a) sets forth four grounds for vacating an award:

18  (1) where the award was procured by corruption, fraud, or undue means;
    (2) where there was evident partiality or corruption in the arbitrators, or either of them;

19  (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause
    shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior

20  by which the rights of any party have been prejudiced; or
    (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and

21  definite award upon the subject matter submitted was not made.

22      Betta has made no showing sufficient to create an issue as to grounds (1), (2) or (4). Thus, the sole

23  issue to be decided is whether the arbitrators were guilty of misconduct in refusing to postpone the hearing.

24      A party to an arbitration proceeding is not entitled to a continuance merely be asking for it. He must

25  have good cause, and denial is generally not grounds for vacation of an arbitration award unless the denial is

26  arbitrary and unreasonable. *Sheet Metal Workers v. Jason Mfg.*, 900 F.2d 1392, 1398 (9th Cir. 1990).

3

1    Courts will not intervene in an arbitrator's decision not to postpone a hearing if any reasonable basis for it

2    exists. *DVC-JPW Investors v. Gershman*, 5 F.3d 1172, 1174 (8th Cir. 1993); *El Dorado School Dist.*

3    *#15 v. Continental Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001). "[A]n arbitrator is not guilty of

4    misconduct merely because, in the face of a denial of postponement, a party chooses to absent itself from a

5    duly scheduled hearing." *Id.*; See also *Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1016-17 (11th Cir.

6    1998).

7         Fundamentally, Betta's situation is based on its own misunderstanding of this court's role once it had

8    ordered the dispute to arbitration. Betta seems to believe that the court retained or reserved the power to

9    dismiss the dispute, as if the arbitrators were special masters or the arbitration was some sort of court-

10   ordered mediation. However, the court's order made it clear that the entire dispute was in the hands of the

11   arbitrators, and that proceedings in this court were stayed pending the arbitrators' decision. Moreover, the

12   court made it clear abundantly clear that it did not desire to interfere with the arbitration in any way. Betta's

13   decision to seek dismissal from this court instead of the arbitrators was a fundamental mistake, and its

14   voluntary boycott of the duly set arbitration hearing resulted in a predictable, and quite proper, award against

15   it for the DSS' costs and the expenses of arbitration.

16        In an analogous situation, this court hears cases because the district court has referred them to this

17   court pursuant to 28 U.S.C § 157(a). The entire case is before this court, not just the trial. If a litigant

18   announced to this court that it intended to ignore a trial date because it intended to ask the district court to

19   dismiss the case, this court would do exactly what the arbitrators in this case did and proceed with the trial.

20   The entire matter was before the arbitrators, not just the adjudication of disputed issues.

21        The arbitrators acted fairly and properly in refusing to continue the arbitration. Having voluntarily

22   absented itself, Betta cannot now complain because it lost and was assessed the cost of arbitration. In fact,

23   Betta owes the arbitrators an apology for the contempt it displayed to them and the arbitration process.

24        For the foregoing reasons, Betta's motions to vacate the arbitration award and dismiss the contract

25   claims will be denied. DSS' motion to confirm the award will be granted. Counsel for DSS shall submit an

26   appropriate form of order.

4

Dated:  February 15, 2007

Alan Jaroslovsky
U.S. Bankruptcy Judge

# EXHIBIT D

Entered on Docket
**March 01, 2007**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  RICHARD W. ABBEY, Esq. State Bar 53039
   MITCHELL B. GREENBERG, Esq., State Bar 114878
2  RACHEL NUNES, Esq., State Bar 172525
   ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
3  100 Stony Point Road, Suite 200
   Post Office Box 1566
4  Santa Rosa, California  95402
   Telephone: (707) 542-5050
5  Facsimile: (707) 542-2589

6  JAMES ANTON BEITZ, MN Atty. ID No. 6233
   HAGERTY, JOHNSON, ALBRIGHTSON & BEITZ, p.a.
7  701 Fourth Avenue, South, Suite 901
   Minneapolis, Minnesota  55415
8  Telephone:  (612) 349-9000
   *(Appearing Pro Hac Vice)*
9
   Attorneys for Defendant
10 DISTRIBUTION ALTERNATIVES, INC., dba DSS

11

12                    UNITED STATES BANKRUPTCY COURT

13                    NORTHERN DISTRICT OF CALIFORNIA

14

15 In Re:                          )  Case No.:  03-10925
                                   )
16    BETTA PRODUCTS, INC.,        )  Chapter 11
                                   )
17                      Debtor.    )  A.P. No. 05-01046
   _____)
18                                 )
   BETTA PRODUCTS, INC.,           )  **JUDGMENT CONFIRMING**
19                                 )  **ARBITRATION AWARD**
                      Plaintiff,   )
20                                 )  Hearing Date:    January 26, 2007
       vs.                         )  Time:            10:00 a.m.
21                                 )  Location:        99 South E Street
   DISTRIBUTION SYSTEMS AND SERVICES,)                 Santa Rosa, CA
22 INC., aka DSS,                  )
                                   )
23                    Defendants.  )
   _____)
24

25        The Court, by Order this date, having confirmed an American Arbitration Association Award

26 dated November 16, 2006, in favor of Defendant Distribution Alternatives, Inc. (fka Distribution Systems

27 and Services Corp.)  dba DSS (hereinafter "DSS") and against Betta Products, Inc. ("Betta") and the

28 Betta Products Litigation Trust ("The Trust"), including an award of fees to DSS in the amount of

ABBEY, WEITZENBERG,
WARREN & EMERY, P.C
P.O. BOX 1566
Santa Rosa, CA 95402
(707) 542-5050

                                      1

1  $20,434.09 as arbitrators' fees; and the arbitration Award having been duly filed with all of the papers

2  required under 9 U.S.C. § 13;

3      IT IS ORDERED, ADJUDGED, AND DECREED that DSS shall have judgment against Betta

4  and against The Trust as set forth in the arbitration Award and that DSS recover from Betta and from The

5  Trust the sum of $20, 434.09, together with its costs of action.

6

7  Dated:  March 1, 2007

8

9

10                                          Alan Jaroslovsky
                                            U.S. Bankruptcy Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ABBEY, WEITZENBERG,
WARREN & EMERY, P.C.
P.O. BOX 1566
Santa Rosa, CA 95402
(707) 542-5050

# EXHIBIT E

Entered on Docket
**March 01, 2007**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1   RICHARD W. ABBEY, Esq. State Bar 53039
    MITCHELL B. GREENBERG, Esq., State Bar 114878
2   RACHEL NUNES, Esq., State Bar 172525
    ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
3   100 Stony Point Road, Suite 200
    Post Office Box 1566
4   Santa Rosa, California   95402
    Telephone: (707) 542-5050
5   Facsimile: (707) 542-2589

6   JAMES ANTON BEITZ, MN Atty. ID No. 6233
    HAGERTY, JOHNSON, ALBRIGHTSON & BEITZ, p.a.
7   701 Fourth Avenue, South, Suite 901
    Minneapolis, Minnesota  55415
8   Telephone:  (612) 349-9000
    *(Appearing Pro Hac Vice)*

9

10  Attorneys for Defendant
    DISTRIBUTION ALTERNATIVES, INC., dba DSS

11

12

13          UNITED STATES BANKRUPTCY COURT

14          NORTHERN DISTRICT OF CALIFORNIA

15  In Re:                          )   Case No.: 03-10925
                                    )
16      BETTA PRODUCTS, INC.,       )   Chapter 11
                                    )
17                      Debtor.     )   A.P. No. 05-01046
                                    )
    _____)
18                                  )
    BETTA PRODUCTS, INC.,           )   **ORDER GRANTING DEFENDANT**
19                                  )   **DISTRIBUTION SYSTEMS AND**
                         Plaintiff, )   **SERVICES, INC.'S MOTION TO**
20                                  )   **CONFIRM ARBITRATION**
        vs.                         )   **AWARD AND FOR ENTRY OF**
21                                  )   **JUDGMENT THEREON; AND**
    DISTRIBUTION SYSTEMS AND SERVICES, )  **DENYING BETTA PRODUCTS,**
22  INC., aka DSS,                  )   **INC.'S AND THE BETTA**
                                    )   **PRODUCTS LITIGATION TRUST'S**
23                       Defendants. )   **MOTIONS FOR VOLUNTARY**
                                    )   **DISMISSAL OF BREACH OF**
    _____)   **CONTRACT CLAIMS AND TO**
24                                      **VACATE ARBITRATION AWARD**

25                                      Hearing Date:    January 26, 2007
26                                      Time:            10:00 a.m.
                                        Location:        99 South E Street
27                                                       Santa Rosa, CA

28      Defendant Distribution Alternatives, Inc.'s (fka Distribution Systems and Services Corp.) dba

ABBEY, WEITZENBERG,
WARREN & EMERY, P.C.
P.O. BOX 1566
Santa Rosa, CA 95402
(707) 542-5050

1

1   DSS (hereinafter "DSS") motion to confirm arbitration award and to enter judgment thereon, and Betta

2   Products, Inc.'s ("Betta") and the Betta Products Litigation Trust's ("The Trust") motions for voluntary

3   dismissal of breach of contract claims and to vacate or set aside arbitration award, all came regularly for

4   hearing in this Court before the Honorable Alan Jaroslovsky on January 26, 2007.  James Anton Beitz,

5   appearing pro hac vice, and Mitchell B. Greenberg, appeared on behalf of DSS.  Daren R. Brinkman and

6   Laura J. Portillo appeared on behalf of Betta and The Trust.

7          After having reviewed all papers filed in support of and in opposition to the motions, and after

8   having entertained argument by counsel, and good cause appearing,

9          **IT IS HEREBY ORDERED** that DSS's motion to confirm the American Arbitration

10  Association ("AAA") Award, dated November 16, 2006, is granted.  The Court's basis for this order is

11  set forth in the Court's February 15, 2007 Memorandum on Motions Related to Arbitration.    **IT IS**

12  **HEREBY FURTHER ORDERED** that Betta's and The Trust's motions for voluntary dismissal of

13  breach of contract claims and to vacate or set aside arbitration award, are denied.  The Court's basis for

14  these orders are set forth in the Court's February 15, 2007 Memorandum on Motions Related to

15  Arbitration.

16         **IT IS HEREBY FURTHER ORDERED** that, in accordance with 9 U.S.C. § 13,

17  judgment shall be entered in favor of DSS, and against Betta and The Trust, consistent with the AAA

18  Award.

19         **IT IS SO ORDERED.**

20

21  Dated:   March 1, 2007

22                                                              Alan Jaroslovsky
                                                                U.S. Bankruptcy Judge
23

24

25

26

27

28

ABBEY, WEITZENBERG,
WARREN & EMERY, P.C.
P.O. BOX 1566
Santa Rosa, CA 95402
(707) 542-5050

# EXHIBIT F

# United States Bankruptcy Court
## Northern District of California

In re:

BETTA PRODUCTS, INC., a California
Corporation,

     Debtor.

BETTA PRODUCTS, INC., the Debtor in
Possession, and DANA MCCURNIN, Trustee
of the Betta Products Litigation Trust,

          Plaintiffs,

v.

DISTRIBUTION SYSTEMS AND
SERVICES, INC., aka DSS,

          Defendant.

Bankruptcy Case No. 03-10925 AJ

Chapter 11

Adversary No. 05-01046

### NOTICE OF APPEAL

     Betta Products, Inc., and Dana McCurnin, Trustee of the Betta Products Litigation Trust, the plaintiffs in the above captioned case, appeal under 28 U.S.C. §158(a)(1) from the judgment, order, or decree of the bankruptcy judge entitled "Judgment Confirming Arbitration Award for Defendant" entered in this adversary proceeding on the 1st day of March, 2007.

     The names of all parties to the judgment, order, or decree appealed from and the names, address, and telephone numbers of their respective attorneys are as follows:

| Betta Products, Inc. | Dana McCurnin, Trustee of the Betta Products |
|---|---|
| Represented by: | Litigation Trust |
| BRINKMAN PORTILLO, PC | Represented by: |
| Daren R. Brinkman | BRINKMAN PORTILLO, PC |
| Laura J. Portillo | Daren R. Brinkman |
| 4333 Park Terrace Drive, Ste. 205 | Laura J. Portillo |
| Westlake Village, CA 91361 | 4333 Park Terrace Drive, Ste. 205 |
| Ph. (818) 597-2992 | Westlake Village, CA 91361 |
|  | Ph. (818) 597-2992 |

Distribution Systems and Services, Inc.
Represented by:
ABBEY, WEITZENBERG, WARREN & EMERY
Richard W. Abbey
Mitchell B. Greenberg
100 Stony Point Road, Ste. 200
P.O. Box 1566
Santa Rosa, CA 95402-1566
Ph. (707) 542-5050

And

HAGERTY, JOHNSON, ALBRIGHT & BEITZ, P.A.
James Anton Beitz
701 Fourth Avenue, South, Ste. 901
Minneapolis, Minnesota 55415
Ph. (612) 349-9000

The "Judgment Confirming Arbitration Award for Defendant" was not finalized until May 3, 2007, when the bankruptcy court entered an order resolving a motion to reconsider the "Judgment Confirming Arbitration Award for Defendant" based upon Federal Rules of Bankruptcy Procedure 9023 and 9024 that was filed within ten days of the entry of the "Judgment Confirming Arbitration Award for Defendant".

A true and correct copy of the judgment that is being appealed is attached to this Notice of Appeal as Exhibit A.

DATED:  May 11, 2007

Signed _____ /s/ Laura J. Portillo ____
Laura J. Portillo
Special Counsel for Appellants
4333 Park Terrace Drive, ste. 205
Westlake Village, CA 91361
Ph. (818) 597-2992

If a Bankruptcy Appellate Panel Service is authorized to hear this appeal, each party has a right to have the appeal heard by the district court. The appellant may exercise this right only by filing a separate statement of election at the time of the filing of this notice of appeal. Any other party may elect, within the time provided in 28 U.S.C. §158(c), to have the appeal heard by the district court.

*If a child support creditor or its representative is the appellant, and if the child support creditor or its representative files the form specified in §304(g) of the Bankruptcy Reform Act of 1994, no fee is required.*

# Exhibit 'A'

Entered on Docket
March 01, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  RICHARD W. ABBEY, Esq. State Bar 53039
   MITCHELL B. GREENBERG, Esq., State Bar 114878
2  RACHEL NUNES, Esq., State Bar 172525
   ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
3  100 Stony Point Road, Suite 200
   Post Office Box 1566
4  Santa Rosa, California  95402
   Telephone: (707) 542-5050
5  Facsimile: (707) 542-2589

6  JAMES ANTON BEITZ, MN Atty. ID No. 6233
   HAGERTY, JOHNSON, ALBRIGHTSON & BEITZ, p.a.
7  701 Fourth Avenue, South, Suite 901
   Minneapolis, Minnesota  55415
8  Telephone:  (612) 349-9000
   *(Appearing Pro Hac Vice)*
9
   Attorneys for Defendant
10 DISTRIBUTION ALTERNATIVES, INC., dba DSS

11

12

13                    UNITED STATES BANKRUPTCY COURT

14                    NORTHERN DISTRICT OF CALIFORNIA

15  In Re:                              )   Case No.: 03-10925
                                        )
16      BETTA PRODUCTS, INC.,           )   Chapter 11
                                        )
17                         Debtor.      )   A.P. No. 05-01046
                                        )
18  _____)
                                        )
19  BETTA PRODUCTS, INC.,               )   **JUDGMENT CONFIRMING**
                                        )   **ARBITRATION AWARD**
20                         Plaintiff,   )
                                        )   Hearing Date:    January 26, 2007
21      vs.                             )   Time:            10:00 a.m.
                                        )   Location:        99 South E Street
22  DISTRIBUTION SYSTEMS AND SERVICES,  )                    Santa Rosa, CA
    INC., aka DSS,                      )
23                         Defendants.  )
                                        )
24  _____)

25      The Court, by Order this date, having confirmed an American Arbitration Association Award

26  dated November 16, 2006, in favor of Defendant Distribution Alternatives, Inc. (fka Distribution Systems

27  and Services Corp.)  dba DSS (hereinafter "DSS") and against Betta Products, Inc. ("Betta") and the

28  Betta Products Litigation Trust ("The Trust"), including an award of fees to DSS in the amount of

ABBEY, WEITZENBERG,
WARREN & EMERY, P.C.
P.O. BOX 1566
Santa Rosa, CA 95402
(707) 542-5050

1

1  $20,434.09 as arbitrators' fees; and the arbitration Award having been duly filed with all of the papers

2  required under 9 U.S.C. § 13;

3       IT IS ORDERED, ADJUDGED, AND DECREED that DSS shall have judgment against Betta

4  and against The Trust as set forth in the arbitration Award and that DSS recover from Betta and from The

5  Trust the sum of $20, 434.09, together with its costs of action.

6

7  Dated:  March 1, 2007

8

9

10                                                    Alan Jaroslovsky
                                                      U.S. Bankruptcy Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ABBEY, WEITZENBERG,
WARREN & EMERY, P.C.
P.O. BOX 1566
Santa Rosa, CA 95402
(707) 542-5050

2

# EXHIBIT G

RICHARD W. ABBEY, Esq., State Bar 53039
MITCHELL B. GREENBERG, Esq., State Bar 114878
RACHEL NUNES, Esq., State Bar 172525
ABBEY, WEITZENBERG, WARREN & EMERY
100 Stony Point Road, Suite 200
Post Office Box 1566
Santa Rosa, CA  95402-1566
Telephone:  707-542-5050
Facsimile:  707-542-2589

JAMES ANTON BEITZ, MN ATTY. ID No. 6233
HAGERTY, JOHNSON, ALBRIGHTSON & BEITZ, P.A.
701 Fourth Avenue, South, Suite 901
Minneapolis, Minnesota  55415
Telephone:  (612) 349-9000
*(Appearing Pro Hac Vice)*

Attorneys for Defendant
DISTRIBUTION ALTERNATIVES, INC. dba DSS

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile (707) 542-2589

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:<br><br>BETTA PRODUCTS, INC.,<br><br>Debtor. | Case No.  03-10925<br><br>Chapter 11<br><br>A.P. No. 05-01046 |
| BETTA PRODUCTS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DISTRIBUTION SYSTEMS AND SERVICES, INC., aka DSS,<br><br>Defendants. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND, ALTERNATIVELY, FOR SUMMARY JUDGMENT**<br><br>Date:  August 3, 2007<br>Time:  10:00 a.m.<br>Location:  99 South E Street<br>  Santa Rosa, CA |

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ............................................................................ 1

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY .............................. 1

III.   ARGUMENT ................................................................................ 4

    A.     Standard Of Review Under Fed. R. Civ.P. 12 and 56(b) ......................... 4

    B.     Betta And The Trustee Do Not Have Standing In This
        Proceeding ........................................................................... 5

        1.     Betta gave up its claims against DSS, and the Trustee
              does not have representative status under the Plan........................... 5

        2.     The Trustee has not moved to intervene or join this
              proceeding............................................................................ 5

    C.     The First, Second, Third, Sixth, And Seventh Claims Of The
        Amended Complaint Are Barred By Application Of The
        Doctrine Of *Res Judicata* .......................................................... 6

        1.     The First, Third, and Seventh Claims of the Amended
              Complaint are identical to claims decided in the
              Arbitration, and, therefore, they are precluded by the
              Award ................................................................................ 7

        2.     The Second and Sixth Claims of the Amended
              Complaint are also precluded by the Award because
              they involve the same parties, they arise from the same
              transactional set of facts as those addressed in the
              arbitration, and they involve the same rights argued and
              established in the arbitration. ...................................................... 8

    D.     The First, Second, Third, Sixth, And Seventh Claims Of The
        Amended Complaint Are Barred By Application Of The
        Doctrine Of Collateral Estoppel .................................................. 11

        1.     Betta and the Trustee were parties to Betta 1 and the
              judgment that flowed from it......................................................... 12

        2.     The issues raised in the First, Second, Third, Sixth, and
              Seventh Claims are identical to the issues adjudicated in
              Betta I. ............................................................................. 12

        3.     Betta and the Trustee were given a full and fair
              opportunity to be heard on all of the issues presented
              and decided in the Arbitration...................................................... 15

        4.     The judgment entered on the arbitration was final and
              valid and on the merits. ........................................................... 16

**Page**

E.   *Res Judicata* And Collateral Estoppel Also Bar The Fourth
     And Fifth Claims................................................................ 17

     1.   Betta and the Trustee have made the judicial admission
          that the claims and issues in Betta I and this case are
          identical................................................................ 17

     2.   This Court's decision to grant Betta's and the Trustee's
          motion to strike DSS' jury demand on the grounds that
          the claims and issues here are the same as those raised
          in the earlier case has become the "law of the case"..................... 19

IV.  CONCLUSION   .................................................................. 20

**TABLE OF AUTHORITIES**

Page

**Federal Statutes**

11 U.S.C. § 1123(b)(3)...................................................................... 5

11 U.S.C. § 1123(b)(3)(B) ................................................................ 5

**Federal Cases**

Allen v. McCurry,
    449 U.S. 900 (1980)................................................................. 17

Baker v. Gen'l Motors Corp.,
    522 U.S. 222 (1998) .......................................................... *passim*

Bismarck v. Toltz, King, Duvall, Anderson & Assoc., Inc.,
    767 F.2d 429 (8th Cir. 1985) ................................................. 12

Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found.,
    402 U.S. 313 (1971) .......................................................... *passim*

Blue Mountain Constr. Co. v. Werner,
    270 F.2d 305 (9th Cir. 1959)................................................. 16

Canady v. Allstate Ins. Co.,
    282 F.3d 1005 (8th Cir. 2002)................................................. 6

Chao v. A-One Med. Servs., Inc.,
    346 F.3d 908 (9th Cir. 2003) ................................................. 8

Conley v. Gibson,
    355 U.S. 41 (1957)................................................................. 4

Fox Sports Net North, L.L.C. v. Minnesota Twins,
    319 F.3d 329, 335 (8th Cir. 2003)........................................... 18

Friedmann v. U.S.,
    107 f. Supp. 2d 502 (D.N.J. 2000) ......................................... 19

Geraci v. Homestreet Bank,
    347 f.3D 749 (9TH Cir. 2003) ................................................. 4

Gospel Missions of America v. City of Los Angeles,
    328 f.3D 548 (9TH Cir. 2003)............................................ *passim*

Hadge v. Second Fed. Savs. & Loan Ass'n of Boston,
    409 F.2d 1254 (1st Cir. 1969) ............................................... 12

Hydrick v. Hunter,
    466 f.3D 676 (9TH Cir. 2006)................................................. 19

Page

*In re Resorts Intern'l, Inc.,*
145 B.R. 474 (D.N.J. 1990) ............................................................ 5

*Int'l Union v. Karr,*
994 F.2d 1426 (9th Cir. 1993) ......................................................... 9

*Kamilche Co. v. United States,*
53 F.3d 1059 (9th Cir. 1995) .......................................................... 14

*Kamilche Co. v. United States,*
75 F.3d 1391 (9th Cir. 1996) .......................................................... 14

*Kourtis v. Camercon,*
419 F.3d 989 (9th Cir. 2005) .................................................. *passim*

*Levy v. Ohl,*
477 F.3d 988 (8th Cir. 2007) ........................................................... 4

*Local Freight Drivers, Local No. 208 v. Braswell, Motor Freight Lines, Inc.,*
422 F.2d 109 (9th Cir. 1970) .......................................................... 16

*Masson v. New Yorker Magazine, Inc.,*
85 F.3d 1394 (9th Cir. 1996) .......................................................... 15

*McCarthy v. Noran,*
370 F.2d 845 (9th Cir. 1966) .......................................................... 10

*McClain v. Aapadaca,*
793 F.2d 1031 (9th Cir. 1986) ......................................................... 11

*Mpoyo v. Litton Electyro-Optical Sys.,*
430 F.3d 985 (9th Cir. 2005) ............................................... 8, 9, 10, 11

*New Hampshire v. Maine,*
532 U.S. 742 (2001) ................................................................... 19

*Northwest Airlines v. Astraea Aviation Serv.,*
111 F.3d 1386 (8th Cir. 1997) ......................................................... 11

*Oscanyan v. Arms Co.,*
103 U.S. 261 (1880) ................................................................... 19

*Papasan v. Allain,*
478 U.S. 265 (1986) .................................................................... 4

*Porous Media Corp. v. Pall Corp.,*
186 F.3d 1077 (8th Cir. 1999) .......................................................... 4

*Postscript Enter. V. City of Bridgeton,*
905 F.2d 223 (8th Cir. 1990) .......................................................... 18

*Reyn's Pasta Bells, L.L.C. v. Visa USA, Inc.,*
442 F.3d 741 (9th Cir. 2006) .................................................. *passim*

-iv-

| | Page |
|---|---|
| Simonds v. Norwich Union Indem. Co.,<br>    73 F.2d 412, 146 (8th Cir. 1934)................................................ | 8 |
| Southern Pac. R.R. Co. v. United States,<br>    168 U.S. 1 (1897)........................................................ | 12 |
| Stahl v. United States Dep't of Agric.,<br>    327 F.3d 698 (8th Cir. 2003).......................................... | 4 |
| Surgical Synergies, Inc. v. Genesee Assoc., Inc.,<br>    432 F.3d 870 (8th Cir. 2005)........................................ | 4 |
| State ex rel. Nixon v. Coeur d'Alene Tribe,<br>    164 F.3d 1102 (8th Cir. 1999)........................................ | 4 |
| Toombs v. Bell,<br>    798 F.2d 297 (8th Cir. 1986).......................................... | 4 |
| Totten v. Merkle,<br>    137 F.3d 1172 (9th Cir. 1998) ....................................... | 19 |
| Tripati v. Henman,<br>    857 F.2d 1136, 1367 (9th Cir. 1988)................................. | 7, 16 |
| United States v. Lazarenko,<br>    476 F.3d 642, 649-50 (9th Cir. 2007)............................... | 5 |
| US West Financial Services, Inc. v. Buhler, Inc.,<br>    150 F.3d 929 (8th Cir. 1998)........................................ | 16 |
| United States v. Shanbaum,<br>    10 F.3d 305 (5th Cir. 1994) ......................................... | 12 |
| Victory Highway Village, Inc. v. Weaver,<br>    480 F. Supp. 71 (D. Minn. 1979) ................................... | 11, 20 |
| Warth v. Seldin,<br>    422 U.S. 501 (1975)..................................................... | 5 |
| Western Sys. Inc. v. Ulloa,<br>    958 F.2d 864 (9th Cir. 1992)......................................... | 9 |

**State Cases**

| | |
|---|---|
| American Druggists Ins. V. Thompson Lumber Co.,<br>    349 N.W.2d 569 (Minn. Ct. App. 1984)........................... | 8, 11, 20 |
| Antonson v. Ekvall,<br>    295 Minn. 558, 204 N.W.2d 446 (1973) ......................... | 11 |

Page

Borgeson v. Borgeson,
    461 N.W.2d 402 (Minn. Ct. App. 1990) ................................ 19

Calhoun v. Franchise Tax Bd.,
    20 Cal. 3d 881, 884-87, 574 P.2d 763, 765-66 (1978),
    *cert. den.* 439 U.S. 872 ................................................ 6, 7, 16

Dollar Travel Agency v. Northwest Airlines, Inc.,
    354 N.W.2d 880 (1984) .................................................. 11

Ellis v. Comm'n on Civil Rts.,
    319 N.W.2d 702 (Minn. 1982) ......................................... *passim*

Hauser v. Mealy,
    263 N.W.2d 803 (Minn. 1978)........................................... 14

Margo-Kraft Distribs., Inc. v. Minneapolis Gas Co.,
    200 N.W.2d 45 (Minn. 1972)........................................... 12, 15

McMenomy v. Ryden,
    276 Minn. 55, 148 N.W.2d 804 (1967) ............................... 11

Price v. Amdal,
    256 N.W.2d 461 (Minn. 1977)........................................... 12

Transamerica Ins. Group v. Paul,
    267 N.W.2d 180 (Minn. 1978)........................................... 15

Twaiten v. Tanke,
    466 N.W.2d 31 (Minn. Ct. App. 1991)................................. 15

**Other Authorities**

7C Charles Alan Wright and Mary Kay Kane, Federal Practice
and Procedure §1901 (2d ed. 1986) ................................... 5

9 John Henry Wigmore, Evidence in Trials at Common Law
(James H. Chadbourn ed. 1981)...................................... 17, 18

18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper,
Federal Practice and Procedure § 4433 (2d ed. 2002).............. 7, 16

18B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper,
Federal Practice and Procedure § 4478 (2d ed. 2002) ............. 19

22 Charles Alan Wright and Kenneth W. Graham,
Federal Practice and Procedure § 5194 (1978)...................... 17

Fed. R. Civ. P. 12 ..................................................... 4, 20

Fed. R. Civ. P. 12(b), (c)............................................. 4

|  | Page |
|---|---|
| Fed. R. Civ. P. 19 | 5 |
| Fed. R. Civ. P. 23 | 5 |
| Fed. R. Civ. P. 24 | 5 |
| Fed. R. Civ. P. 24(a) | 6 |
| Fed. R. Civ. P. 56 | 4, 20 |
| Fed. R. Civ. P. 56(b) | 4 |
| Fed. R. Civ. P. 56(c) | 4 |
| John Henry Wigmore, Code of Evidence at 542 (3rd Ed. 1941) | 17 |
| Note, *Judicial Admissions*, 64 Colum. L. Rev. 1121, 1131 (1964) | 17, 18 |
| Restatement (Second Judgments § 24(2) (1982) | 9 |

## STATEMENT OF LEGAL ISSUES

I.    Does Betta or the Trustee have standing following Betta's irrevocable transfer of its claims against DSS to the Trustee and the Trustee's failure to attain "representative status" under the Plan of Reorganization coupled with its failure to join or intervene in this action?

II.   Are the First, Second, Third, Sixth, and Seventh Claims barred by *res judicata* because they make the same claims that were decided in the Arbitration?

III.  Are the First, Second, Third, Sixth, and Seventh Claims barred by collateral estoppel because they raise the same issues decided in the Arbitration?

IV.   Are the Fourth and Fifth Claims barred by *res judicata* and collateral estoppel because Betta and the Trustee have admitted and the law of the case has established that the claims and issues in Betta I and Betta II are the same?

# I. INTRODUCTION

In this case Betta Products, Inc. ("Betta") and the Betta Litigation Trustee (the "Trustee") seek again to recover from Defendant Distribution Systems and Services Corp. dba DSS (hereinafter "DSS")[1] damages (1) arising from DSS' alleged failure to return inventory it owed Betta and its lender, (2) arising from payments Betta and its lender allegedly made to DSS for services they say DSS never performed, and (3) arising from reports allegedly containing inaccurate information sent to Betta by DSS. This case is comprised of the same claims, based on the same alleged facts, raising the same issues which Betta and the Trustee already presented unsuccessfully in their first case against DSS ("Betta I"). Moreover, Betta and the Trustee have admitted, and this Court has already ruled that this case ("Betta II") does not raise anything different than the claims decided in Beta I.

Therefore, DSS submits this memorandum of points and authorities in support of its motion to dismiss and, alternatively, for summary judgment. The Court should grant the motion because neither Betta nor the Trustee has standing to pursue the claims made in the Amended Complaint, and in any event, those claims and the issues they raise are barred by *res judicata*, and collateral estoppel.

# II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Betta and DSS entered into a Warehouse Agreement May 1, 1996. A copy of that agreement is attached as Exhibit A[2] to the Declaration of James A. Beitz in Support of Motion to Dismiss.[3] Under the Warehouse Agreement, DSS received, stored, recorded, and transported Betta's inventory to Betta and Betta's customers as ordered by Betta and Betta paid DSS for those services. Exhibit A. The Warehouse Agreement required binding arbitration of all disputes arising under the Agreement. *Id.*, ¶19.

---

[1] DSS' current name is Distribution Alternatives, Inc.
[2] An identical copy is attached to Betta's original complaint, *see* Ex. D, *infra*, and, hence, is part of the pleadings in Betta I.
[3] Unless otherwise indicated, all references hereafter to Exhibits are to the exhibits attached to the Beitz Declaration.

1

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile (707) 542-2589

1    Betta filed a petition with the United States Bankruptcy Court on April 15, 2003, and DSS

2    continued to provide its services under the Warehouse Agreement. Betta filed and on May 17,

3    2004, the Court approved Betta's First Amended Chapter 11 Plan of Reorganization (the "Plan").

4    The Plan, Exhibit B, reserved certain claims in Section 7.04(c) for payments, overcharges, and

5    lost or damaged goods, arising under the Warehouse Agreement.

6    On April 6, 2005, Betta formed the Trust and transferred to the Trustee irrevocably

7    various claims, including all the claims against DSS. Exhibit C, p. 3. On April 14, 2005, Betta

8    sued DSS under the reservation of claims. Its Complaint, Exhibit D, sought to enforce its rights

9    and DSS' duties under the Warehouse Agreement and alleged that DSS breached the Warehouse

10   Agreement (1) by failing to turn over inventory belonging to Betta and Wells Fargo, *see id.*, ¶¶1-

11   13; by overcharging Betta for services under the Agreement, *id.*, ¶¶1-10, 13-15, 20-27; and by

12   failing to safeguard Betta's inventory, *id.*, ¶¶1-10, 16-19.

13   On April 15, 2005, Betta petitioned the Bankruptcy Court to transfer "representative

14   status" to the Trust to allow it to represent Betta in pursuing its claims. The Bankruptcy Court

15   rejected Betta's petition. Exhibit E.

16   On May, 18, 2005, DSS moved to compel arbitration of the claims in the original

17   complaint and stay the first case while that arbitration continued. On July 11, 2005, the Court

18   granted DSS' motion. Exhibit F. On October 31, 2005, Betta filed a Demand for Arbitration with

19   the American Arbitration Association ("AAA"), Exhibit G, and Betta filed an amended demand

20   for arbitration on November 4, 2005, Exhibit H, adding the Trustee as a party claimant.

21   On March 27, 2006, Betta and The Trustee filed and served in the arbitration proceeding a

22   Specification of Claims. Exhibit I. It included claims that Betta owned and claims allegedly

23   assigned to Betta by its secured creditor, Wells Fargo Bank, all of which Betta had assigned

24   irrevocably to the Trustee. Exhibit C at 1 & 3. The Specification alleged that DSS breached the

25   Warehouse Agreement (1) by failing to deliver the pre-petition goods to Wells Fargo;  (2) by

26   failing to deliver the post-petition goods to Betta; (3) by charging rent for storage and handling of

27   goods that it did not deliver to Wells Fargo; (4) by charging Betta monthly rent to warehouse

28   goods that DSS never delivered to Betta; (5) by charging Betta carton handling fees for cartons

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile (707) 542-2589

2

1   that Betta and/or Wells Fargo never received; and (6) by charging Betta a fee to conduct a yearly

2   physical inventory, even though the Agreement did not provide for such a fee. The Specification

3   of Claims virtually mirrored the claims contained in the Betta I Complaint. *Compare*

4   Specification of Claims, Exhibit I, and Complaint, Exhibit D.

5          On October 13, 2006, Betta and the Trustee moved the Bankruptcy Court to amend the

6   Complaint in this action to add tort claims and one implied contract claim. The Bankruptcy Court

7   granted their motion to amend the Complaint, but specifically stated that "[T]he claims added in

8   the amended complaint are severed from the contract claims pursuant to Fed. R. Civ. P. 21, as

9   incorporated into bankruptcy cases by Fed. R. Bankr. P. 7021, and the actions will proceed

10  separately," the arbitration should proceed according to what the "AAA or its panel of arbitrators

11  deems proper," and "[A]ny res judicata arguments arising out of the arbitration or the Plan of

12  Reorganization are reserved for a later date." Exhibit J.

13         The arbitration was held as scheduled, and the Panel denied on the merits Betta's and the

14  Trustee's claims and concluded that DSS (1) had not failed to deliver the pre-petition goods to

15  Wells Fargo;  (2) had not failed to deliver the post-petition goods to Betta; (3) had not charged

16  Wells Fargo rent for storage and handling of goods that it did not deliver to Wells Fargo; (4) had

17  not charged Betta monthly rent to warehouse goods that DSS never delivered to Betta; (5) had not

18  charged Betta carton handling fees for cartons that Betta and/or Wells Fargo never received; and

19  (6)had not wrongly charged Betta a fee to conduct a yearly physical inventory. Exhibit K, Award,

20  at 6-7 & Exhibits A & B attached to Exhibit K. Betta and the Trustee moved to vacate the Award,

21  and DSS moved to confirm the Award.  The Bankruptcy Court entered an Order on March 1,

22  2007, granting DSS' motion, denying Betta's and the Trustee's motion, and entered judgment

23  against Betta and the Trustee confirming the Award and awarding DSS the costs of the

24  arbitration. See Exhibit M (Memorandum on Motions Related to Arbitration), Exhibit N (Order

25  granting DSS motion and denying Betta motion), and Exhibit O (Judgment Confirming

26  Arbitration Award).  Betta and the Trustee served the Amended Complaint, Exhibit P, on DSS

27  February 25, 2007. DSS served and filed its answer March 5, 2007, raising all of the affirmative

28  defenses reflected in this motion. Exhibit Q.

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile (707) 542-2589

3

# III. ARGUMENT.

**A.    Standard Of Review Under FED. R. CIV. P. 12 And 56(b).**

A Rule 12 motion tests the sufficiency of a complaint, assuming the facts it alleges are true. The court should grant the motion where it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Geraci v. Homestreet Bank*, 347 F.3d 749, 751 (9th Cir. 2003); *Toombs v. Bell*, 798 F.2d 297, 298 (8th Cir. 1986). A court may consider certain outside materials, such as matters of public record, materials that do not contradict the complaint, court records in the prior proceedings, and materials that are necessarily embraced by the pleadings, without converting the motion into one for summary judgment. *See generally Reyn's Pasta Bells, L.L.C., v. VISA USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006); *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *see also Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986) (public records); *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (court records, including the records in the prior case in a *res judicata* or collateral estoppel consideration); *State ex rel. Nixon v. Coeur d'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir. 1999) (public records); *Surgical Synergies, Inc. v. Genesee Assoc., Inc.*, 432 F.3d 870, 873 n.3 (8th Cir. 2005) (materials necessarily embraced by the pleadings); *Stahl v. United States Dep't of Agric.* 327 F.3d 698, 700 (8th Cir. 2003).

Rule 12 also permits the court to consider other matters outside the pleadings and then to treat the motion as a Rule 56 motion for summary judgment. *See* FED. R. CIV. P. 12 (b), (c). Rule 56 requires the moving party to show that there are no genuine issues of material fact and that based on the undisputed facts the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In support of this motion DSS has submitted only matters of public record, materials that do not contradict the Amended Complaint, court records in Betta I, and materials that are necessarily embraced by the pleadings. Therefore, the Court may dismiss the Amended Complaint under Rule 12. In either event, the Court should dismiss the Amended Complaint under Rules 12(c) or 56(c).

/ / / /

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050 Facsimile: (707) 542-2589

4

**B.     Betta And The Trustee Do Not Have Standing In This Proceeding.**

To have standing to sue, a litigant must demonstrate a "distinct and palpable injury to himself." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also United States v. Lazarenko*, 476 F.3d 642, 649-50 (9th Cir. 2007) (holding that restraint of assets and denial of immediate hearing are not legally cognizable injuries to a party charged with liquidating assets of prior owner, a convicted money launderer). As set forth below, Betta does not own the claims it alleges in the Amended Complaint and, therefore, cannot demonstrate the requisite injury to support its claims, and the Trustee has not moved to intervene or join in this proceeding to afford it the standing necessary to prosecute this action.

    1.     Betta gave up its claims against DSS, and the Trustee does not have representative status under the Plan.

Neither Betta nor the Trustee has standing even to bring this action.  Betta irrevocably assigned all of its claims against DSS to the Trustee under the Litigation Trust Agreement. Exhibit C at 1, 2, 3. Therefore, Betta itself no longer owns these claims against DSS and has no standing.  The Trust Agreement provides, in Article IX, *see id.* at p. 10, that for purposes of pursuing the claims against DSS, the Trustee *shall* be a "representative" under 11 U.S.C. §1123(b)(3).  However, the Bankruptcy Court refused Betta's request to transfer "representative status" to the Trustee under §1123(b)(3), *see* Exhibit E at 2-5. Therefore, the Trustee has no standing. *See In re Resorts Intern'l, Inc.*, 145 B.R. 412, 474 (D. N.J. 1990) (holding that in order for a litigation trust to be valid pursuant to §1123(b)(3)(B) it must be approved by the Court).

    2.     The Trustee has not moved to intervene or join this proceeding.[4]

Three principal procedures have been developed to deal with litigation that will or may have implications on persons not parties—compulsive joinder, class action joinder, and intervention--Fed. R. Civ. P. 19, 23, and 24. *See* 7C CHARLES ALAN WRIGHT AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §1901 (2d ed. 1986). The Trustee has not availed herself of any those procedures. In order for the Trustee to participate in this proceeding in which she is not, and never has been, a party, she must meet the tests for intervention and then move to

---

[4] Even the title of the Amended Complaint does not name the Trustee as a plaintiff. Exhibit P.

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile: (707) 542-2589

5

1    intervene in the action. *See* FED. R. CIV. P. 24 (a). The Trustee clearly does not meet those tests

2    and, therefore, has not attempted a Rule 24 (a) motion. Neither of the other parties has sought her

3    joinder or impleader. For those reasons as well, she has no standing in this proceeding.

4          C.    **The First, Second, Third, Sixth, and Seventh Claims of the Amended**

5               **Complaint are Barred by Application of the Doctrine of *Res Judicata*.**

6          Although the parties chose in the Warehouse Agreement to apply Minnesota law to all

7    disputes arising between the parties under the Warehouse Agreement, *see* Exhibit A ¶22 (d),

8    federal *res judicata* and collateral estoppel law preempt the Warehouse Agreement, and therefore

9    federal *res judicata* and collateral estoppel law apply. *see Canady v. Allstate Ins. Co.*, 282 F.3d

10   1005, 1014 (8th Cir. 2002) (holding that where prior judgment was rendered by a federal district

11   court, the preclusive effect of that judgment is governed by federal law); *see also Younger v.*

12   *Jensen (1980) 26 Cal. 3d 397, 411; Lumpkin v. Jordan (1996) 49 Cal. App. 4th 1223, 1230, citing*

13   *Younger v. Jensen*[ a federal judgment has the same effect in California courts as it would in

14   federal court, and fact that there was an appeal from the federal judgment did not preclude the

15   application of collateral etoppel].

16         The arbitration panel held that DSS did not commit any breaches of contract and ordered that

17   Claimants take nothing from DSS on any claim of breach of duty under the Warehouse Agreement

18   or the Specification of Claims. Exhibit K at 6.  Thus, the award, confirmed by judgment in Betta I,

19   has already decided against Betta and the Trustee the claims that "DSS failed to deliver all of the

20   Pre-petition goods to Wells Fargo,"[5] "DSS failed to deliver all of the Post-petition goods to

21   Betta,"[6] "DSS charged rent for storage and handling of goods that it did not deliver to Wells

22   Fargo,"[7] "DSS charged Betta monthly rental costs to warehouse goods that DSS never delivered

23   to Betta,"[8] "DSS charged and Betta paid carton handling fees for cartons that Betta and/or Wells

24   Fargo never received,"[9] "DSS charged Betta a fee to conduct a yearly physical inventory of the

25

26   [5] Claim Number One of the Specification of Claims. Exhibit I.
     [6] Claim Number Two of the Specification of Claims.
27   [7] Claim Number Three of the Specification of Claims.
     [8] Claim Number Four of the Specification of Claims.
28   [9] Claim Number Five of the Specification of Claims.

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile (707) 542-2589

1  property stored at DSS, even though this fee was not stated in the contract,"[10] and any claim that

2  "depends in whole or in part upon a finding that DSS breached a duty arising under or by reason of

3  the 'Agreement' dated May 1, 1996. . .". Exhibit K at 6-7.

4     1.    The First, Third, and Seventh Claims of the Amended Complaint are identical to
             claims decided in the Arbitration, and, therefore, they are precluded by the Award.

5

6         *Res judicata* has two distinct applications—claim preclusion, in which a valid final

7  adjudication of a claim precludes a second action on that claim or any part of it, *Baker v. Gen'l*

8  *Motors Corp.*, 522 U.S. 222, 233 (1998), and issue preclusion[11] (often called "collateral estoppel),

9  in which an issue of fact or law, actually litigated and resolved by a valid final judgment, binds

10  the parties in a subsequent action whether on the same or different claim, *see id.* §27. Claim

11  preclusion applies here to bar the First, Third, and Seventh Claims of the Amended Complaint,

12  because those claims involve identical parties, they are identical to the claims in the Specification,

13  they were arbitrated by order of the Bankruptcy Court, they were decided by the Panel, and the

14  Panel's Award was made final by the Betta I judgment. *See Blonder-Tongue Labs, Inc. v. Univ. of*

15  *Ill. Found.*, 402 U.S. 313, 323-24 (1971) (holding that claim preclusion bars a second action

16  involving same parties or privies, claim or claims in second action are same as in prior action, and

17  prior litigation ended in a final adjudication).

18         The Specification of Claims in Betta I sought damages for breach of contract for failing to

19  return pre and post-petition inventory and for breach of contract for collecting overcharges related

20  to inventory never delivered and for physical inventories. Exhibit I. The First Claim of the

21  Amended Complaint in this action seeks damages for breach of contract for failure to return pre-

22  petition inventory; the Third Claim seeks damages for breach of an implied contract to return pre

23  and post-petition inventory; and the Seventh Claim also seeks damages for failure to return

24  inventory belonging to Betta. All of those claims were made and decided in Betta I  among DSS

25  and Betta and the Trustee. It is immaterial for *res judicata* finality purposes that Betta and Trustee

26  have appealed that judgment. *See e.g., Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988);

27

28

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile: (707) 542-2589

---

[10] Claim Number Six of the Specification of Claims.
[11] See Argument C. *infra* for a discussion of collateral estoppel and its application here.

7

1    18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE

2    AND PROCEDURE §4433 (2d ed. 2002); see also *Younger v. Jensen (1980) 26 Cal. 3d 397, 411*.

3    Therefore, the First, Third, and Seventh Claims are barred by the claim preclusion prong of *res*

4    *judicata. See* 522 U.S. at 233; 402 U.S. at 323-24; *see also Gospel Missions of America. v. City of*

5    *Los Angeles*, 328 F.3d 548, 555 (9th Cir. 2003). The result would be the same under Minnesota

6    law. *See, e.g., American Druggists Ins. v. Thompson Lumber Co.*, 349 N.W.2d 569, 572 (Minn.

7    Ct. App. 1984); *see also Simonds v. Norwich Union Indem. Co.*, 73 F.2d 412, 416 (8th Cir. 1934).

8             2.    <u>The Second and Sixth Claims of the Amended Complaint are also precluded by the
             Award because they involve the same parties, they arise from the same</u>

9             <u>transactional set of facts as those addressed in the arbitration, and they involve the
             same rights argued and established in the arbitration</u>

10    Claim preclusion bars a second suit (1) where the same parties or their privies are

11    involved in both suits, (2) the prior litigation involved the same claim or claims, (3) and the prior

12    suit terminated in a final judgment on the merits. *See Gospel Missions of America v. City of Los*

13    *Angeles*, 328 F.3d 548, 555 (9th Cir. 2003). DSS has already established the existence of the first

14    and third elements of claim preclusion, *i.e.*, that Betta I and Betta II involve the same parties or

15    privies and that Betta I ended in a final adjudication on the merits. *See* Argument C. 1., *supra*. It

16    only remains for DSS to establish that Betta I addressed the same claims as those raised in the

17    Second and Sixth Claims of the Amended Complaint.

18    The Second and Sixth Claims in the Amended Complaint allege the torts of conversion

19    and negligence and not contract breaches, at least not directly. However, the fact that the Second

20    and Sixth Claims were not raised, word for word, in the Specification of Claims in Betta I does

21    not necessarily allow them to escape application of the first prong of the doctrine of *res judicata*.

22    *See* 328 F.3d at 555; *see also Mpoyo v. Litton Electyro-Optical Sys.*, 430 F.3d 985, 987-88 (9th

23    Cir. 2005).

24    In determining whether two suits which do not contain, word for word, the same

25    allegations, still involve the "same claims" for *res judicata* purposes, courts look at four criteria:

26    (1) whether they arise from the same transactional nucleus of facts; (2) whether rights established

27    in the first action will be impaired by prosecution of the second; (3) whether the two suits involve

28

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile (707) 542-2589

8

1    alleged infringement of the same right; or (4) whether substantially the same evidence is

2    presented in both cases. *See id.* at 987, *citing Chao v. A-One Med. Servs., Inc.*, 346 F.3d 9008,

3    921 (9th Cir. 2003).

4         Whether two suits share a common nucleus of operative facts depends on whether they are

5    related to the same set of facts and whether they could conveniently be tried together. *See* 430

6    F.3d at 987 *citing Int'l Union v. Karr*, 994 F.2d 1426, 1429-30 (9th Cir. 1993), *Western Sys. Inc.*

7    *v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992), and RESTATEMENT (SECOND) JUDGMENTS §24(2)

8    1982. In *Mpoyo,* the Ninth Circuit concluded that "[b]ecause both sets of Mpoyo's claims arise

9    from Litton's conduct while Mpoyo was an employee and specifically from the events leading to

10   his termination, his claims relate to the same set of facts." 430 F.3d at 987. Furthermore, the

11   Court said that Mpoyo's Title VII, FLSAS, and FMLA claims formed a convenient trial unit that

12   "discloses a cohesive narrative of an employee-employer relationship and a controversial

13   termination." *Id.* It concluded that the second action arose from the same transaction or series of

14   transactions as the original action and, therefore, satisfied the first criterion. *Id.* The Ninth Circuit

15   went on to examine the remaining three criteria and found that they did not "yield a clear

16   outcome," but, nevertheless, based on its conclusion that the two cases shared a common nucleus

17   of operative facts, held that the two cases involved the same claim or cause of action. *See id.* at

18   988.

19        The Second and Sixth Claims of the Amended Complaint present an even more

20   compelling case for application of the doctrine of *res judicata* than those presented to the Ninth

21   Circuit in *Mpoyo.* The Second and Sixth Claims allege conversion of the pre and post-petition

22   goods Betta turned over to DSS under the Warehouse Agreement and negligence in failing to

23   return those same goods to Betta. *See* Exhibit P at 9-10 and 16. The Specification of Claims

24   alleged that DSS had breached the Warehouse Agreement in failing to return the pre-and post-

25   petition goods Betta had turned over to it under the Warehouse Agreement. *See* Exhibit I at 4-6.

26   Thus, **the Second and Sixth Claims share a common nucleus of operative facts with Betta I**

27   **because they relate to the same set of facts that could conveniently be tried together.** They

28   both deal with pre and post-petition inventory allegedly turned over to DSS by Betta. They both

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile: (707) 542-2589

9

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile (707) 542-2589

1    deal with an alleged failure of DSS to return that inventory. They both deal with damages Betta

2    and the Trust allege they suffered as a result of Betta's failure to receive that inventory from DSS.

3    The claims involve not only the same nucleus of facts, they involve essentially the same exact

4    facts.[12] Obviously, they could have been tried together. Therefore, DSS has met the first and only

5    test thought significant in *Mpoyo*. However, DSS has met the other three criteria as well.

6         The allegations in the Second and Sixth Claims involve the same overall harms and

7    primary rights as the claims decided in Betta I and, therefore, meet the second and third criteria.

8    In both cases Betta and the Trustee allege the same wrong—failure to turn over pre and post-

9    petition inventory belonging to Betta and Wells Fargo. In the arbitration, Betta and the Trustee

10   alleged that those failures breached the Warehouse Agreement and sought damages under that

11   contract. In the Second and Sixth Claims of this case, they allege that DSS committed conversion

12   and negligence in failing to turn over that same inventory. The same harm is alleged to have been

13   sustained—loss of the value of the inventory. Those two virtually identical allegations of overall

14   harm meet the second criterion. *See* 430 F.3d at 987-88.

15        The rights established in Betta I—that DSS did not fail to turn over inventory belonging to

16   Betta and Wells Fargo -- will be impaired by prosecution of the Second and Sixth Claims, and

17   that fact meets the third criterion. *See id.*

18        The two cases meet the fourth criterion because both cases will require substantially the

19   same evidence—did DSS accept the inventory in question from Betta; did it have an obligation to

20   return the inventory; did it fail to return the inventory; did that failure harm Betta; and what was

21   the extent of Betta's harm? *See Gospel Missions of America. v. City of Los Angeles*, 328 F.3d

22   548, 555 (9th Cir. 2003); *see also Mpoyo*, 430 F.3d at 987-88; *McCarthy v. Noran,* 370 F.2d 845,

23   846-47 (9th Cir. 1966) (holding first action alleging arbitrary and capricious action on part of

24   Bureau Land Management in rejecting land use application barred second action alleging

25   violation of Fifth Amendment rights in rejecting land use application).

26

27
_____

28   [12] In fact, this Court has already ruled that Betta I and Betta II "turn on the same matrix of facts."
     Ex. V at 2-3.

                                              10

1    Based on the foregoing analysis, *res judicata* bars the Second and Sixth Claims of the

2  Amended Complaint because they involve the same parties, they arise from the same

3  transactional set of facts as those addressed in Betta I, and they involve the same primary rights

4  and duties argued and established in Betta I. *See Blonder-Tongue Labs, Inc. v. Univ. of Ill.*

5  *Found.*, 402 U.S. 313, 323-24 (1971); *Gospel Missions of America. v. City of Los Angeles*, 328

6  F.3d 548, 555 (9th Cir. 2003); *Mpoyo v. Litton Electyro-Optical Sys.*, 430 F.3d 985, 987-88 (9th

7  Cir. 2005); *see also McClain v.Aapodaca*, 793 F.2d 1031 1033-34 (9th cir. 1986) (holding res

8  judicata bars all grounds for recovery, which could have been asserted, whether or not they were).

9    The result would not change under Minnesota law. *See, e.g., Dollar Travel Agency v.*

10  *Northwest Airlines, Inc.*, 354 N.W.2d 880, 882-23 (1984) holding that *res judicata* precludes tort

11  action based on same facts as prior contract action because it bars not only every claim litigated

12  but every claim which might have been litigated); *Antonson v. Ekvall*, 295 Minn. 558, 204

13  N.W.2d 446 (1973) (holding that where factual setting was same in contract action as in former

14  tort action, plaintiff who had unsuccessfully pursued contract action could not relitigate same

15  basic claims in contract action); *McMenomy v. Ryden*, 274 Minn. 55, 58, 148 N.W.2d 804, 807

16  (1967) (holding that test for determining whether former case is same as latter for *res judicata*

17  purposes in whether same evidence will sustain both).

18    **D.    The First, Second, Third, Sixth, and Seventh Claims of the Amended**
       **Complaint are Barred by Application of the Doctrine of Collateral Estoppel.**

19

20    The second prong of res judicata, best known as "collateral estoppel," is also called "issue

21  preclusion" and "estoppel by verdict." *See, e.g., Baker v. Gen'l Motors Corp.*, 522 U.S. 222, 233

22  (1998); *Ellis v. Minneapolis Comm'n on Civil Rts.*, 319 N.W.2d at 703 n.3. "Collateral estoppel

23  precludes the relitigation of issues which are both identical to those issues already litigated by the

24  parties in a prior action and necessary and essential to the resulting judgment." Id. at 704. The

25  application of collateral estoppel is appropriate where: (1) the estopped party was a party or in

26  privity with a party to the prior adjudication; (2) the issue was identical to one in a prior

27  adjudication; and (3) there was a final judgment on the merits. *See Reyn's Pasta Bells, L.L.C., v.*

28  *VISA USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006); *see also Ellis*,319 N.W.2d at 704, *citing*

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile (707) 542-2589

11

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile (707) 542-2589

1    *Victory Highway Village, Inc. v. Weaver*, 480 F. Supp. 71, 74 (D. Minn. 1979); *American*

2    *Druggists Ins. v. Thompson Lumber Co.*, 349 N.W.2d 569, 572 (Minn. Ct. App. 1984). All the

3    collateral estoppel tests were met here.

       1.    <u>Betta and the Trustee were parties to Betta I and the judgment that flowed from it.</u>

5    Betta and the Trustee were the identical parties against whom judgment was entered in

6    Betta I. Exhibit O. Therefore, Betta and the Trustee are proper subjects for the bar of collateral

7    estoppel. *See Reyn's Pasta Bells, L.L.C., v. VISA USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006); *see*

8    *also Kourtis v. Cameron*, 419 F.3d 989, 994-96 (9th Cir. 2005); *Margo-Kraft Distribs., Inc. v.*

9    *Minneapolis Gas Co.*, 200 N.W.2d 45, 47-48 (Minn. 1972).

       2.    <u>The issues raised in the First, Second, Third, Sixth, and Seventh Claims are identical to the issues adjudicated in Betta I.</u>

11    In order for collateral estoppel to bar a plaintiff's claim in pending litigation, the "issue" in

12    the pending litigation must be identical to the issue already litigated by the parties in the previous

13    action. *See Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005); *see also Ellis v. Comm'n on*

14    *Civil Rts.*, 319 N.W. 702, 703-04 (Minn. 1982).

15    It is immaterial that this case involves tort and quasi-contract claims and Betta I involved

16    contract claims. As Justice Harlan noted long ago ". . . even if the second suit is for a different cause

17    of action, the right, question or fact once so determined must, as between the same parties or their

18    privies, be taken as conclusively established. *Southern Pac. R.R. Co. v. United States*, 168 U.S. 1,

19    48-49 (1897); *accord Bismarck v. Toltz, King, Duvall, Anderson & Assoc., Inc.*, 767 F.2d 429 (8th

20    Cir. 1985) (applying collateral estoppel to bar contract action, where prior action for declaratory

21    judgment held the contract to require arbitration); *Hadge v. Second Fed. Savs. & Loan Ass'n of*

22    *Boston*, 409 F.2d 1254 (1st Cir. 1969) (applying collateral estoppel to bar plaintiff's actions seeking

23    access to membership list for upcoming election even though prior action, which was dismissed,

24    involved a different election); *Price v. Amdal*, 256 N.W.2d 461, 466 (Minn. 1977) (applying

25    collateral estoppel to impose liability established in earlier wrongful death suit to negligence suit by

26    survivor).

27

28

1    The Fifth Circuit noted in a discussion of *res judicata* that "under issue preclusion, unlike

2    claim preclusion, the subject matter of the later suit need not have any relationship to the subject

3    matter of the prior suit." *United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994).  The critical

4    issue decided by Betta I was whether DSS returned or did not return inventory it owed Betta and/or

5    Wells Fargo and whether it charged them and they paid for services they did not receive.  Betta I

6    decided that DSS did not fail to return inventory it owed either Betta or Wells Fargo or charge them

7    for services they did not receive. *See* Exhibit K 6-7.  Betta and the Trustee may not now raise those

8    same issues here merely by re-characterizing them as tort or quasi-contract claims.  Those claims are

9    precluded by collateral estoppel.

10    Analysis of sameness of issues considers whether there is a substantial overlap between

11    the evidence in the two cases and whether both suits involve application of the same rule of law.

12    *See Kourtis*,  419 F.3d at 994-95. Although the Ninth Circuit determined in *Kourtis* that collateral

13    estoppel did not apply because the parties were not the same, it did conclude that the issues were

14    the same. Its analysis of that issue is instructive here. In the first case discussed in *Kourtis*, the

15    plaintiff contended that, based on the screenplay itself,  the motion picture, *Terminator II*,

16    infringed on the copyright of the screenplay in an earlier project, *The Minotaur*, but the court

17    decided that there was no copyright infringement due to lack of substantial similarity in content.

18    The second case raised the question of infringement based on the dialogue in the screenplay *plus*

19    the "morphing" technique used on the *Minotaur* character. The Ninth Circuit held that that

20    distinction lacked merit and that the second case raised the same issue for collateral estoppel

21    purposes. *See id.*

22    The evidence in the two cases before this Court is likewise identical. In order to succeed

23    with its claims that DSS received, kept, and did not return to Betta and Wells Fargo the pre and

24    post-petition inventory, Betta and the Trustee will have to offer evidence that it shipped or had

25    someone ship the specific inventory to DSS, that DSS received that inventory, and that DSS never

26    shipped that inventory to Betta's customers or to Betta or to Wells Fargo. Inventory reports,

27    shipping records, bills of lading, etc.—the same evidence received and analyzed Betta I, *see*

28    Exhibit K at Exhibit A., will have to be offered to prove and disprove those claims.

13

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile (707) 542-2589

1    In order to succeed with its claims that DSS billed it and Wells Fargo and they paid for

2    services they never received, Betta and the Trustee will have to offer that same evidence as well

3    as evidence that DSS billed Betta and Wells Fargo for services, that Betta and Wells Fargo paid

4    for those services, and that DSS did not perform those services. Inventory reports, shipping

5    records, bills of lading, plus invoices, statements, cancelled checks, transaction reports,

6    testimony, and invoice analysis, etc.—the same evidence received and analyzed in Betta I, *see*

7    *id.*— will have to be offered to prove and disprove those claims. *See Kamilche Co. v. United*

8    *States,* 53 F.3d 1059, 1062 (9th Cir. 1995) (holding prior determination that taxpayer owned

9    *portion* of disputed land collaterally estopped government from contesting ownership of *entire*

10    piece in later case involving taxpayer's claim of charitable deduction for entire piece), *reh'g*

11    granted in part and amended in non-relevant part and *reh'g* denied as to rest, 75 F.3d 1391 (9th

12    Cir. 1996). The issue in *Kamilche* was the same in both cases even though in the prior case the

13    government relied on a survey and in the later case the government relied on the theory of adverse

14    possession. *Id.; see also Hauser v. Mealy,* 263 N.W. 803, 807 (Minn. 1978) (holding that same

15    issue test met if first action arises out of same factual circumstances as second). Clearly the issues

16    raised in Betta I arise out of the same factual circumstances as the issues raised by the First,

17    Second, Third, Sixth, and Seventh Claims in this case.

18    Moreover, Betta's and the Trustee's own pleadings demonstrate conclusively that the issues

19    presented in the First, Second, Third, Sixth, and Seventh Claims are identical to the issues raised in

20    the Specification of Claims and decided in Betta I. *Compare* Exhibit P at 6-11, 15-7 and Exhibit I at

21    4-10.  The First, Second, Third, Sixth, and Seventh Claims allege that DSS did not deliver the pre-

22    petition goods to Wells Fargo or pay Wells Fargo for them, that DSS converted the pre-petition

23    goods to its own use, that DSS did not turn over the post-petition goods to Betta, and that DSS

24    charged Betta and Wells Fargo and Betta and Wells Fargo paid monthly storage costs, carton

25    handling fees, physical inventory costs, and fees for other services DSS never provided or for which

26    it agreed not to charge them. Exhibit P at 6-11, 15-7. The Specification of Claims also alleged that

27    DSS did not deliver the pre-petition goods to Wells Fargo or pay Wells Fargo for them, that DSS

28    converted the pre-petition goods to its own use, that DSS did not turn over the post-petition goods to

14

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone (707) 542-5050 Facsimile (707) 542-2589

1    Betta, and that DSS charged Betta and Wells Fargo and Betta and Wells Fargo paid monthly storage

2    costs, carton handling fees, physical inventory costs, and fees for other services DSS never provided

3    or for which it agreed not to charge them. Exhibit I at 4-10.

4            Of course, those are the same issues addressed and decided Betta I. *See* Exhibit K at 6-7.

5    That decision disposes of Betta's and the Trustee's claims in this case because it decided the same

6    issues which Betta and the Trustee raise in this case. *See Blonder-Tongue Lab., Inc. v. University*

7    *of Ill. Found.*, 402 U.S. 313 (1971) and *Reyn's Pasta Bells, L.L.C., v. VISA USA, Inc.*, 442 F.3d 741

8    (9th Cir. 2006); *see also Kourtis v. Cameron*, 419 F.3d 989, 994-96 (9th Cir. 2005); *Ellis v.*

9    *Minneapolis Comm'n on Civil Rts*, 319 N.W.2d 702 (Minn. 1982); *Margo-Kraft Distribs., Inc. v.*

10   *Minneapolis Gas Co.*, 200 N.W.2d 45, 47-48 (Minn. 1972); *Twaiten v. Tanke*, 466 N.W.2d 31

11   (Minn. Ct. App. 1991).

12           3.      <u>Betta and the Trustee were given a full and fair opportunity to be heard on all of</u>
             <u>the issues presented and decided in the Arbitration.</u>

13           The party against whom an estoppel is asserted must have had a fair opportunity to present

14   its position in the prior case. *See Blonder-Tongue Lab., Inc. v. University of Ill. Found.*, 402 U.S.

15   313, 329 (1971); *Masson v. New Yorker Magazine, Inc.*, 85 F.3d 1394, 1400 (9th Cir. 1996); *see*

16   *also Ellis v. Minneapolis Comm'n on Civil Rts*, 319 N.W.2d at 704; *Transamerica Ins. Group v.*

17   *Paul*, 267 N.W.2d 180, 182 (Minn. 1978).

18           The Panel and the Bankruptcy Court made it clear that even though Betta and the Trustee

19   chose voluntarily to "boycott" the final arbitration hearing in Betta I, they had a full opportunity to

20   present their position:

21
22           The Claimants having cited the Panel to—and the Panel being aware of—
             no AAA Rules permitting a party to "withdraw a Demand for
23           Arbitration" so as to unilaterally curtail arbitration proceedings and strip
             arbitrators of jurisdiction once those arbitrators have accepted
24           appointment . . .; Claimants having failed . . .to make a showing of "good
             cause" for a postponement of the final hearing as required by AAA Rule
25           28[13]. . ., the Panel directed that (and the AAA notified all parties that) the
             final hearing would proceed as scheduled. . .
26

27
─────────────────────
28   [13] See Exhibit R at 10.

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile (707) 542-2589

> On November 9, 2006, counsel for Claimants emailed the AAA, declaring that. . .[they] would no longer participate in the arbitration proceedings. . .

Exhibit K at 4-5.

> Fundamentally, Betta's situation is based on its own misunderstanding of this court's role once it had ordered the dispute to arbitration. . . .Betta's decision to seek dismissal from this court instead of the arbitrators was a fundamental mistake, and its voluntary boycott of the duly set arbitration hearing resulted in a predictable, and quite proper, award against it for the (sic) DSS' costs and expenses of arbitration."

Exhibit M at 2-4. Betta and the Trustee were given all the opportunity that collateral estoppel requires. *See* 402 U.S. at 329; 85 F.3d at 1400; *see also Ellis,* 319 N.W.2d at 704; *Blue Mountain Constr. Co. v. Werner,* 270 F. 2d 305, 307-08 (9th Cir. 1959) (noting that plaintiff, which decided to ignore its case following denial of motion to dismiss, did so at its peril, and could not be heard to complain following dismissal with prejudice for failure to prosecute and loss of appeal).

    4.    <u>The judgment entered on the arbitration was final and valid and on the merits.</u>

    The Award was incorporated in the trial court's order for judgment. *See* Exhibits N and M. Thus, the issues decided in Betta I became part of the trial court judgment entered March 1, 2007. Exhibit O. They are final for purposes of applying collateral estoppel, *see US West Financial Services, Inc. v. Buhler, Inc.,* 150 F.3d 929, 932 (8th Cir. 1998) (holding that a final arbitration award has the same preclusive effect as a judgment); *see also Local Freight Drivers, Local No. 208 v. Braswell, Motor Freight Lines, Inc.,* 422 F.2d 109, 114 (9th Cir. 1970), and it is immaterial that Betta and Trustee have appealed that judgment, *see e.g., Calhoun,* 20 Cal.3d at 884-87, 574 P.2d at 765-66; *see also Tripati v. Henman,* 857 F.2d 1366, 1367 (9th Cir. 1988); 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE §4433 (2d ed. 2002).

    Betta and the Trustee and DSS were the same and only parties that participated in Betta I; the issues raised in the complaint and in the Specification of Claims and decided in Betta I were the same issues raised in the First, Second, Third, Sixth, and Seventh Claims of the Amended Complaint in Betta II; Betta and the Trustee were given a full and fair opportunity in Betta I to be

16

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile (707) 542-2589

1   heard on the merits of those issues; and judgment on the arbitration award in Betta I was final for

2   purposes of applying collateral estoppel. Therefore, this court should apply collateral estoppel to

3   dismiss the First, Second, Third, Sixth, and Seventh Claims in the Amended Complaint. *See Baker*

4   *v. Gen'l Motors Corp.*, 522 U.S. 222 (1998); *Allen v. McCurry*, 449 U.S. 990 (1980); *Blonder-*

5   *Tongue Lab., Inc. v. University of Ill. Found.*, 402 U.S. 313 (1971); see also, e.g., *Reyn's Pasta*

6   *Bells, L.L.C., v. VISA USA, Inc.*, 442 F.3d 741 (9th Cir. 2006); *Ellis v. Minneapolis Comm'n on Civil*

7   *Rts.*, 319 N.W. 702 (Minn. 1982).

8         **E.**    *Res Judicata* **and Collateral Estoppel also Bar the Fourth and Fifth Claims**.

9         DSS has already established that Betta I and the Amended Complaint involve the same

10  parties or privies, *see* Argument C. 1., *supra*; that Betta I ended in a final adjudication on the

11  merits, *see* Arguments D. 1., and D. 4., *supra*; and that Betta and the Trustee had a fair opportunity

12  to present their position in Betta I, *see* Argument D. 3, *supra*. It only remains for DSS to establish

13  that Betta I addressed the same claims and/or issues as those raised in the Fourth and Fifth Claims

14  of the Amended Complaint. However, Betta and the Trustee have already conceded that that they

15  did, and this Court's ruling agreeing with that concession has become law of the case.

16        1.   Betta and the Trustee have made the judicial admission that the claims and issues
               in Betta I and this case are identical.

17

18        "A judicial admission is a formal stipulation by a party or counsel that concedes any

19  element of a claim or defense. Its effect is to determine the issue conclusively, to dispense

20  entirely with the need for further evidence." Note, *Judicial Admissions*, 64 COLUM. L. REV. 1121,

21  1131 (1964); *See also* 22 CHARLES ALAN WRIGHT and KENNETH W. GRAHAM, FEDERAL

22  PRACTICE AND PROCEDURE, § 5194 (1978). Judicial admissions are usually made by the party's

23  lawyer because "it is settled that the general authority to conduct the trial implies the authority to

24  make such admissions." 9 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2594

25  (James H. Chadbourn ed. 1981). To have conclusive effect, declarations of counsel must be in

26  writing or stated in open court and included in the record. *See id.* In this case they were in writing

27  *and* included in the record.

28

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile (707) 542-2589

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND, ALTERNATIVELY,
FOR SUMMARY JUDGMENT

1   Judicial admissions differ from evidential admissions mostly by their unequivocal nature.

2   For instance, equivocal testimony, whether due to uncertainty, confusion, or a party's fallible

3   impressions, opinions, or understandings will be given only evidential value, *Judicial Admissions*

4   at 1131, but unequivocal written statements of counsel should be accorded judicial admission

5   status, *see id.* Judicial admissions completely dispose of the particular issue. They are deemed

6   more than evidence; instead they substitute for evidence. *Judicial Admissions* at 1126. "The vital

7   feature of a judicial admission is universally conceded to be its *conclusiveness* upon the party

8   making it, *i.e.,* the prohibition of any further dispute of the fact by him and of any use of evidence

9   to prove or contradict it." 9 WIGMORE, EVIDENCE §2590.

10   Betta's and the Trustee's admissions in this case manifestly qualify as judicial admissions,

11   dispositive of the case, for what could be more clear than the following declarations argued

12   strenuously on three different occasions:

13       a.   the Amended Complaint did not change the substance of Betta's claims
              from those made in Betta I, *see* Beitz Declaration Ex. S at 4;

14

15       b.   "Betta *did not allege* any new facts in the Amended Complaint" that were
              not alleged in Betta I (emphasis in original), *id.* at 7;

16       c.   the Amended Complaint "does not discuss any new facts" from those
              alleged in the complaint in Betta I, *id.*;

17

18       d.   the original complaint in Betta I and the Amended Complaint are based on
              the "*exact same facts,*" (emphasis in original) *id.*;

19       e.   "[t]he original complaint included a claim for fraud. . .[and] negligent
              misrepresentation"), *id.* at 8-9;

20

21       f.   "Plaintiffs' Amended Complaint does not allege any new facts," Ex. T at 5;
              and

22       g.   "[t]he original complaint contained all of the factual issues for a claim of
              fraud. . .[and. . .negligent misrepresentation, " *id.* at 6; *see also* Ex. U at 20.

23

24   Those statements were judicial admissions. *See Oscanyan v. Arms Co.*, 103 U.S. 261, 264

25   (1880).

26   Here there were neither unguarded expressions used, nor any ambiguous
     statements made. The opening counsel was fully apprised of all the facts out

27   of which his client's claim originated, and seldom was a case opened with
     greater fullness of detail. He dwelt upon and reiterated the statement of the

28

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050 Facsimile (707) 542-2589

18

fact which constituted the ground of the court's action in directing a verdict for the defendant. . .

*Id.; American Title Ins. Co. v. Lacelaw Corp.* 861 F.2d 224, 227 *(9th Cir. 1988); see also Fox Sports Net North, L.L.C. v. Minnesota Twins*, 319 F.3d 329, 335 (8th Cir. 2003) (acknowledging that admissions in pleadings are binding on the parties); *Postscript Enter. V. City of Bridgeton*, 905 F.2d 223, 227-28 (8th Cir. 1990) (treating statements by parties made in briefs as judicial admissions); and *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998).

Betta and the Trustee cannot have it both ways. They may not prevail, as they have, in denying DSS its fundamental right to a jury trial based exclusively on their argument that the claims and issues in Betta I and Betta II are the same and then, in order to avoid *res judicata*, argue the opposite—that the claims and issues are *not* the same. That reasoning is specious. *See New Hampshire v. Maine,* 532 U.S. 742, 742-43 (2001) (holding that under the doctrine of judicial estoppel a party who assumes a certain position in a legal proceeding, and succeeds in maintaining that position, may not thereafter, simply because his interests have changed, assume a contrary position); *see also Friedmann v. U.S.,* 107 F. Supp. 2d 502, 510-11 (D.N.J. 2000) (holding that the taxpayer's clear and unmistaken assertion of the truth of a fact in support of one of its legal theories, on which it ironically carried the day, must not be ignored and the opposite of that fact accepted as true for purposes of the analysis of a second legal issue).

> 2. This Court's decision to grant Betta's and the Trustee's motion to strike DSS' jury demand on the grounds that the claims and issues here are the same as those raised in the earlier case has become the "law of the case."

Not only did Betta and the Trustee make the admissions described in the foregoing section, they won the argument based on those admissions. *See Beitz Declaration Ex. V at 2-3 (holding that "[t]he factual allegations and damages sought [in the two cases] are the same," "[t]he amended complaint is based on exactly the same facts as the original complaint," and that the only difference between the earlier case and this case is "the presentation of a new theory of recovery. . .which does not constitute the presentation of a new issue").

This Court's decision that the claims and issues in Betta I and Betta II are the same has become the law of the case. *See, e.g.,* 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND

19

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile (707) 542-2589

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile (707) 542-2589

1  EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE §4478 (2d ed. 2002) (explaining that

2  when a court decides upon a rule of law, that decision governs the same issues in subsequent

3  stages in the same case); *Hydrick v. Hunter*, 466 F.3d 676, 687 (9th Cir. 2006); *Borgeson v.*

4  *Borgeson*, 461, N.W.2d 402, 404 (Minn. Ct. App. 1990).

5      Since the Court has already concluded that all of the Claims, including the Fourth and

6  Fifth Claims for fraud and negligent misrepresentation, and the issues they raised were the same

7  in the first case, application of the doctrines of *res judicata* and collateral estoppel preclude Betta

8  from raising them here a second time. *See, e.g., Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found.,*

9  402 U.S. 313, 323-24 (1971) (holding that claim preclusion bars a second action involving same

10  parties or privies, claim or claims in second action are same as in prior action, and prior litigation

11  ended in a final adjudication); *American Druggists Ins. v. Thompson Lumber Co.*, 349 N.W.2d

12  569, 572 (Minn. Ct. App. 1984); *Reyn's Pasta Bells, L.L.C., v. VISA USA, Inc.,* 442 F.3d 741, 746

13  (9th Cir. 2006); *Victory Highway Village, Inc. v. Weaver*, 480 F. Supp. 71, 74 (D. Minn. 1979).

14                              **IV.  CONCLUSION**

15      Betta and the Trustee do not have standing in this proceeding, and the Trustee has never

16  moved to intervene or join the proceeding, and all of the Claims are barred by *res judicata* and

17  collateral estoppel. Therefore, this Court should dismiss the Amended Complaint under FED. R.

18  CIV. P. 12, or, alternatively should grant DSS summary judgment under FED. R. CIV. P. 56 on all

19  of the Claims in the Amended Complaint.

20  Dated:  June 28, 2007.            Respectfully submitted,

21

22                        /s/ James Anton Beitz
                          HAGERTY JOHNSON & BEITZ P.A.
23                        James Anton Beitz, Minn. Atty. Id. No. 6233
                          701 Fourth Avenue, South, Suite 700
24                        Minneapolis, Minnesota  55415
                          Telephone:  (612) 349-9000
25                        *(Appearing Pro Hac Vice)*

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ABBEY, WEITZENBERG, WARREN & EMERY
Richard W. Abbey, Esq., State Bar 53039
Mitchell B. Greenberg, Esq., State Bar 114878
Rachel Nunes, Esq., State Bar 172525
100 Stony Point Road, Suite 200
Santa Rosa, CA 95402-1566
Telephone: 707-542-5050
Facsimile: 707-542-2589

Attorneys for Defendant

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile (707) 542-2589

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND, ALTERNATIVELY,
FOR SUMMARY JUDGMENT

**PROOF OF SERVICE**
**[Code Civ. Proc. § 1013(a)]**

I am employed in the County of Sonoma, California.

I am over the age of eighteen (18) years and not a party to the within cause; my business address is 100 Stony Point Road, Suite 200, Santa Rosa, California 95401.

On the date set out below, I served the attached:

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS AND, ALTERNATIVELY,**
**FOR SUMMARY JUDGMENT**

on the interested parties in said cause, by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Daren R. Brinkman. Esq.                     Counsel for Plaintiff
Laura J. Portillo, Esq.                       Betta Products, Inc.
Brinkman Portillo, PC
4333 Park Terrace Drive, Suite 205
Westlake Village, CA  91361
Telephone:  (818) 597-2992
Facsimile:  (818) 597-2998
daren@brinkmanlaw.com

__XX__   (BY MAIL)  I placed each such sealed envelope, with postage thereon fully prepaid for first-class mail, for collection and mailing at Santa Rosa, California, following ordinary business practices.  I am readily familiar with the practice of Abbey, Weitzenberg, Warren & Emery for the processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited with the United States Postal Service the same day as it is placed for processing.

_____   (BY OVERNIGHT MAIL)  I placed each such sealed envelope, with postage thereon fully prepaid for overnight mail, for collection and mailing at Santa Rosa, California, following ordinary business practices.  I am readily familiar with the practice of Abbey, Weitzenberg, Warren & Emery for the processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited with the overnight mail provider the same day as it is placed for processing.

_____   (BY PERSONAL SERVICE)  I caused such envelope to be delivered by hand to the addressee(s) noted above.

_____   (BY FACSIMILE)  I caused said document to be transmitted by facsimile machine to the number indicated after the address(es) noted above.

_____   (BY ELECTRONIC TRANSMISSION)  I caused said document to be transmitted electronically to the email addresses indicated after the address(es) noted above.

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050  Facsimile (707) 542-2589

22

1    I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct and that this declaration was executed on June 28, 2007, in Santa
2    Rosa, California.

3

4                                              /s/ Barbara S. Himbert
                                               Barbara S. Himbert
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ABBEY, WEITZENBERG, WARREN & EMERY, P.C.
100 Stony Point Road, Suite 200, P.O. Box 1566, Santa Rosa, CA 95402-1566
Telephone: (707) 542-5050 Facsimile (707) 542-2589

23

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS AND, ALTERNATIVELY,
FOR SUMMARY JUDGMENT**

# EXHIBIT H

Entered on Docket
**August 15, 2007**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1

2

3

4                      UNITED STATES BANKRUPTCY COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6    In re

7    BETTA PRODUCTS, INC.,                                No. 03-10925

8                              Debtor(s).
                    _____/
9
     BETTA PRODUCTS, INC.,
10

11                            Plaintiff(s),

12              v.                                        A.P. No. 05-1046

13   DISTRIBUTION SYSTEMS AND SERVICES,
     INC., aka DSS,
14
                              Defendant(s).
15   _____/

16           Memorandum on Motion to Dismiss and Related Motions and Cross-Motions

17                              _____

18   I.  Issue Preclusion

19           In its complaint commencing this adversary proceeding, plaintiff and Chapter 11 debtor in possession

20   Betta Products, Inc. ("Betta") alleged that defendant Distribution Systems and Services, Inc. ("DSS")

21   breached a written warehouse agreement by failing, refusing or being unable to produce inventory of Betta

22   which DSS had contracted to warehouse.  Betta sought either turnover of its missing inventory or damages

23   exceeding $1 million.

24           The agreement between Betta and DSS called for DSS to use reasonable efforts to store safely all

25   products received from Betta and to protect the products from loss or damage.   It further provided, in

26   pertinent part:

                                            1

1
2
3

> DSS is responsible for the safe handling and safekeeping of Products delivered to the warehouse location provided by DSS. . . . [I]f more than one half (½) of one percent (1%) of the Products received DSS during any three month quarter during the Agreement are lost, stolen, and/or damaged, then DSS agrees to reimburse [Betta] for the value of the Products in excess of this amount . . . .

4    The agreement provided that it was to be governed by Minnesota law and contained a provision

5 requiring any dispute to be arbitrated by the American Arbitration Association. Shortly after service of the

6 complaint, DSS filed a motion to compel arbitration which Betta did not oppose. The court granted the

7 motion and stayed further proceedings in this court pending arbitration.

8    DSS made a motion before the arbitration panel to exclude any tort claims of Betta. Panicking at the

9 thought of losing a theory of recovery, Betta came running back to this court to amend its complaint to add tort

10 claims. The court granted the motion but severed the tort claims from the contract claims being arbitrated,

11 assuming that the issue was a tempest in a teapot since the essential issue was whether DSS properly

12 warehoused Betta's property and that would be decided by the arbitration panel.

13    For some reason still a mystery to the court, Betta decided that since it now had a tort action pending

14 before this court it could ignore the arbitration proceeding. It sought to dismiss its contract claims and only

15 litigate the tort claims. However, it made a fundamental mistake in thinking that the arbitration panel was some

16 sort of extension of this court and sought dismissal with this court instead of the arbitration panel. The court

17 refused to intervene and the arbitration panel proceeded, in the absence of Betta, to rule in favor of DSS. The

18 arbitration panel specifically held:

19
20
21
22

> Having considered all testimony heard by the Panel, the full record at the final hearing, and the entire record otherwise placed before the Panel during the course of this arbitration proceeding, the Panel is satisfied that there is no credible evidence in the arbitration record sufficient to establish any of the breaches of contract alleged in Claimants' Specification of Claims, and that nothing in the entire arbitration record creates any reason for the Panel to believe that, had Claimants elected to appear at the final hearing, they would have been able to establish any of such alleged breaches of contract by a preponderance of the evidence.

23    DSS has filed a motion to dismiss the remaining tort claims against it, on the ground that the decision of

24 the arbitration panel preclusively forbids Betta from re-litigating the issue of whether DSS acted wrongfully in

25 its care of Betta's inventory.

26    Since the agreement between Betta and DSS called for DSS to use reasonable efforts to store safely

2

1  all products received from Betta and to protect the products from loss or damage, and since the arbitration

2  panel found that DSS did not breach the agreement, if the arbitration decision is given preclusive effect then the

3  court must dismiss Betta's tort claims, which are based on the same operative facts.  While the tort claims are

4  based on negligence and conversion rather than breach of contract, there is no way that DSS could have

5  committed these torts without breaching the contract.

6          Issue preclusion bars re-litigation of issues that have been actually litigated.    The doctrine is intended

7  to avoid inconsistent judgments and the related misadventures associated with giving a party a second bite at

8  the apple.  Issue preclusion bars re-litigation of an issue of fact or issue that: (1) is identical to a fact or issue

9  determined in an earlier proceeding, (2) was actually decided by a court in an earlier action, (3) the issue was

10  necessary to the judgment in such action, (4) there was a final judgment on the merits, and (5) the parties are

11  the same.  *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir.2001).

12          In this case, all of the elements for issue preclusion are present except that the award of the arbitration

13  panel is not final.  While the court did enter a judgment on the award on March 1, 2007, it did not direct that it

14  was a final judgment or make the express determinations necessary for it to be final.  Pursuant to FRCP 54(b),

15  made applicable to this adversary proceeding by FRBP 7054, that judgment is not final.[1]  The motion to

16  dismiss on grounds of issue preclusion therefore cannot be granted[2].

17

18  II.  Standing

19          The court does not see how Betta lacks standing.  The confirmed plan of reorganization specifically

20  _____

21          [1]The court is aware that Betta has appealed the judgment.  The appellate court can of course, treat

22  the appeal as a motion for leave to appeal pursuant to FRBP 8003(c).  The fact remains, however, that Betta
    has continued its procedural blundering by improperly appealing a judgment which is not final.

23
          [2]Both sides in this case are bound and determined to win by cleverness of counsel.  In this contest,
24  Betta is at a distinct disadvantage.  However, the court actually wants to hear testimony and find out if DSS
    negligently stored Betta's inventory.  The court's curiosity is so strong at this point that it has no interest in the
25  procedural machinations of the parties and the quiddities of their lawyers.  The court suggests they either talk

26  settlement or prepare for trial.

3

provides "The debtor may pursue reserved actions, tort claims . . . "[ § 7.02].  Further,  § 7.04 specifically

provides:

> 7.04.  Debtor shall reserve the rights to pursue the following:
>
> . . . .
>
>     c.  Claims and rights of setoff against Distribution Sales and Services Corporation arising from the warehousing agreement dated May 1, 1996, payments, overcharges, lost and damaged goods, and claims assigned pursuant to the Compromise Agreement . . . .

The instant adversary proceeding is entirely consistent with the plan and Betta has standing to bring the action.

III. Partial Summary Judgment

The court is not thrilled with Betta's expectation that the court will wade through page after page of exhibits attempting to determine if partial summary judgment is appropriate, just as the court is not thrilled with DSS's procedural arguments and endless exhibits and useless "compendia."  Nonetheless, the parties are not obligated to make things easier on themselves by focusing on substantive issues. And the court is not obligated to rule on a motion for partial summary judgment. "In a case involving multiple claims, the court may exercise its discretion to deny summary judgment where it finds it better as a matter of judicial administration to dispose of all the claims and counterclaims at trial rather than attempt piecemeal disposition, or where part of the action may be ripe for summary judgment but is intertwined with another claim that must be tried." 28 Fed.Proc.L.Ed., Pleadings and Motions, §§ 62:572, citing *Taylor v. Rederi A/S Volo*, 374 F.2d 545 (3rd Cir. 1967) and *Kollsman Instrument Corp. v. Astec Instrument Corp.*, 225 F.Supp. 534 (S.D.N.Y. 1964).

Since this is to be a court trial, the court sees no benefit to deciding the case piecemeal. If the parties really want to spend their time and money on endless procedural motions they are free to do so, but at the end of the day they will still have to discuss what, if anything, happened to Betta's inventory.

For the foregoing reasons, the motion of DSS for dismissal or summary judgment will be denied, as will Betta's motion for partial summary judgment. Any party who wants an order to this effect may submit one.  The court looks forward to trial in January and warns both sides that a continuance for any reason is not

1    likely.

2

3    Dated:  August 15, 2007

4

5

6    Alan Jaroslovsky
     U.S. Bankruptcy Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

5

# EXHIBIT I

**Entered on Docket**
**September 06, 2007**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1   Richard W. Abbey, Esq. SBN 53039
    Mitchell B. Greenberg, Esq. SBN 114878
2   Rachel Nunes, Esq. SBN 172525
    Abbey, Weitzenberg, Warren & Emery
3   100 Stony Point Road, Suite 200
    Post Office Box 1566
4   Santa Rosa, CA  94502-1566
    Telephone: (707) 542-5050
5
    James Anton Beitz, MN ATTY. ID No. 6233
6   Hagerty, Johnson, Albrightson & Beitz, P.A.
    701 Fourth Avenue, South, Suite 901
7   Minneapolis, Minnesota 55415
    Telephone: (612) 349-9000
8   *(Appearing Pro Hac Vice)*

9   Attorneys for Defendant
    Distribution Alternatives, Inc. dba DSS

10

11              UNITED STATES BANKRUPTCY COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13
    IN RE:                              )   Case No.  03-10925
14                                      )
    BETTA PRODUCTS, INC.,               )   Chapter 11
15                                      )
               DEBTOR.                  )   A. P. No. 05-01046
16   _____)   06/24/05
                                        )
17   BETTA PRODUCTS, INC.,              )   **ORDER DENYING DEFENDANT**
                                        )   **DISTRIBUTION ALTERNATIVES,**
18             Plaintiff,               )   **INC.'S MOTION TO DISMISS AND**
    v.                                  )   **ALTERNATIVELY, MOTION FOR**
19                                      )   **SUMMARY JUDGMENT, AND**
    DISTRIBUTION SYSTEMS AND SERVICES,  )   **DENYING PLAINTIFF BETTA**
20   INC., aka DSS,                     )   **PRODUCTS, INC.'S MOTIONS**
                                        )   **FOR PARTIAL SUMMARY**
21             Defendant.               )   **JUDGMENT**
    _____)
22

23         Defendant Distribution Alternatives, Inc.'s (fka Distribution Systems and Services Corp.) dba

24   DSS  (hereinafter "DSS") motion to dismiss and alternatively, motion for summary judgment, and Plaintiff

25   Betta Products Inc.'s ("Betta") motions for partial summary judgment came regularly for hearing on

26   August 3, 2007 before the Honorable Alan Jaroslovsky.  James Anton Beitz  and Mitchell B. Greenberg

27   appeared on behalf of moving party DSS.  Laura Portillo appeared on behalf of debtor Betta Products,

28   Inc.

*(left margin, rotated)* ABBEY, WEITZENBERG, WARREN & EMERY, P.C. P.O. BOX 1566 Santa Rosa, CA 95402 (707) 542-5050

After having reviewed all papers filed in support of and in opposition to the motions, and after having ordered and received supplemental briefing, and having entertained argument by counsel, and good cause appearing,

**IT IS HEREBY ORDERED** that:

1.      DSS' motion to dismiss on the grounds of standing, claim and issue preclusion is denied for the reasons set forth in the Court's August 15, 2007 Memorandum on Motion to Dismiss and Related Motions and Cross-Motions.

2.      Betta's motions for partial summary judgment are denied for the reasons set forth in the Court's August 15, 2007 Memorandum on Motion to Dismiss and Related Motions and Cross-Motions.

**IT IS SO ORDERED.**

[changes]

Dated:  September 6, 2007

Alan Jaroslovsky
U.S. Bankruptcy Judge

ABBEY, WEITZENBERG,
WARREN & EMERY, P.C.
P.O. BOX 1566
Santa Rosa, CA 95402
(707) 542-5050

## PROOF OF SERVICE
### [Code Civ. Proc. § 1013(a)]

I am employed in the County of Sonoma, California. I am over the age of eighteen (18) years and not a party to the within cause; my business address is 100 Stony Point Road, Suite 200, Santa Rosa, California 95401. On the date set out below, I served the attached:

## APPELLANT'S APPENDIX

on the interested parties in said cause, by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Daren R. Brinkman. Esq.                    Counsel for Plaintiff
Laura J. Portillo, Esq.                    Betta Products, Inc.
Brinkman Portillo, PC
4333 Park Terrace Drive, Suite 205
Westlake Village, CA 91361
Telephone: (818) 597-2992
Facsimile: (818) 597-2998
daren@brinkmanlaw.com

XX_____    (BY MAIL) I placed each such sealed envelope, with postage thereon fully prepaid for first-class mail, for collection and mailing at Santa Rosa, California, following ordinary business practices. I am readily familiar with the practice of Abbey, Weitzenberg, Warren & Emery for the processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited with the United States Postal Service the same day as it is placed for processing.

_____    (BY OVERNIGHT MAIL) I placed each such sealed envelope, with postage thereon fully prepaid for overnight mail, for collection and mailing at Santa Rosa, California, following ordinary business practices. I am readily familiar with the practice of Abbey, Weitzenberg, Warren & Emery for the processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited with the overnight mail provider the same day as it is placed for processing.

_____    (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the addressee(s) noted above.

_____    (BY FACSIMILE) I caused said document to be transmitted by facsimile machine to the number indicated after the address(es) noted above.

_____    (BY ELECTRONIC TRANSMISSION) I caused said document to be transmitted electronically to the email addresses indicated after the address(es) noted above.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on October 29, 2007, in Santa Rosa, California.

_Barbara S. Himbert_
Barbara S. Himbert