# EXHIBIT A

1

1               UNITED STATES BANKRUPTCY COURT

2            NORTHERN DISTRICT OF CALIFORNIA

3              (SANTA ROSA DIVISION)

4

5  In re:

6  BETTA PRODUCTS, INC.,        Case No. 03-10925
   a California corporation,

7                       Chapter 11

8                       Santa Rosa ,California
                            October 13, 2006

9                       9:30 a.m.
          Debtor.

10  ————————————————————/

11  BETTA PRODUCTS, INC., the
    Debtor in Possession,

12

         Plaintiff,

13

    v.                    A.P. No. 05-01046

14

  DISTRIBUTION SYSTEM AND

15  SERVICES, INC., aka DSS,

16        Defendant.

17  ————————————————————/

18             TRANSCRIPT OF PROCEEDINGS
     MOTION FOR MODIFICATION OF THE STAY AND FOR

19          LEAVE TO AMEND THE COMPLAINT

20

21       BEFORE THE HONORABLE ALAN JAROSLOVSKY
        UNITED STATES BANKRUPTCY JUDGE

22

23

24

25

2

```
 1   APPEARANCES:

 2   Special Counsel to        BRINKMAN PORTILLO, PC
     Betta Products:           BY: DAREN R. BRINKMAN, ESQ.
 3                                      -and-
                                 LAURA J. PORTILLO, ESQ.
 4                             4333 Park Terrace Drive, Suite 205
                               Westlake Village, California 91361
 5

 6   For the Defendant:        ABBEY, WEITZENBERG, WARREN & EMERY
                               BY: MITCHELL GREENBERG, ESQ.
 7                             100 Stony Point Road, #200
                               Santa Rosa, California 95401
 8
                                      -and-
 9
                               HAGERTY, JOHNSON & BEITZ, PA
10                             BY: JAMES A. BEITZ, ESQ.
                               701 Fourth Avenue South, Suite 700
11                             Minneapolis, Minnesota 55415

12

13   Court Recorder:           JAN COLVIN
                               UNITED STATES BANKRUPTCY COURT
14                             99 South "E" Street
                               Santa Rosa, California 95404
15

16

17   Transcription Service:    Jo McCall
                               Electronic Court
18                             Recording/Transcribing
                               2868 E. Clifton Court
19                             Gilbert, Arizona 85297
                               Telephone: (480)361-3790
20

21

22

23

24

25
```

3

1                    P R O C E E D I N G S

2   October 13, 2005                        9:30 a.m.

3                    ---oOo---

4           THE CLERK: On the add-on calendar, <u>Betta Products</u>

5   <u>versus Distribution Systems and Services.</u>

6           MR. BRINKMAN: Good morning, Your Honor, Daren

7   Brinkman and Laura Portillo from Brinkman Portillo

8   appearing on behalf of Betta Products.

9           MR. GREENBERG: Good morning, Your Honor, Mitch

10  Greenberg and Tony Beitz for defendant, Distribution

11  Alternatives, Inc.

12          THE COURT: All right.  Well, I've had very little

13  chance to take a look at this on shortened time, so what is

14  it that the plaintiff wants in this case?

15          MR. BRINKMAN: Your Honor --

16          THE COURT: You want to amend the complaint and

17  you want it arbitrated or you want to amend the complaint

18  and bifurcate it and just arbitrate the contract claim.

19          MR. BRINKMAN: That is correct, Your Honor.  We

20  want the latter.  We want to amend the complaint and

21  bifurcate it so that things that are outside the contract

22  can go forward in the court of law where they need to be.

23          THE COURT: Why do you want to go through all that

24  expense?  What's the point of arbitrating it if you're not

25  getting rid of the whole thing?

4

1          MR. BRINKMAN: Well, candidly, that's exactly what

2    we said because you have to understand their position in

3    the arbitration has been one of, Gee, the arbitration

4    clause in the contract only provides for arbitrating

5    contract claims.  They've filed a motion to dismiss which

6    is attached to our moving papers today in the arbitration,

7    which says this arbitration panel cannot arbitrate claims

8    for conversion, claims for bailment, other tort claims.

9          They're right.  Okay?  We can't force it to go

10   through.  We've reviewed their cases and instead of trying

11   to force a square peg into a round hole, we're here,

12   because this is where those claims need to be adjudicated.

13   Now, this is not some small minor thing.

14          THE COURT: Well, now you say "here."  Is this a

15   core proceeding?

16          MR. BRINKMAN: Well, that is a good point.  I mean

17   it may be something that is something that should be -- the

18   reference withdrawn.  But that being said, it has both core

19   and non-core matters in it.  There's a complaint for

20   turnover in the original complaint and in the amended

21   complaint, but the amended complaint adds claims for

22   conversion, for fraud, for negligence, and negligent

23   misrepresentation, all outside the contract.

24          MR. BEITZ: Good morning, Your Honor.  I am Tony

25   Beitz.  I am DSS's or Distribution Alternative's lawyer in

5

1    the arbitration.  I have been admitted pro hac vice in this
2    proceeding.  I have a number of things to say, and I want
3    to reiterate our request to file additional matters after
4    the hearing if the Court is willing, but instead of getting
5    to those things that I'd like to talk about, which aren't
6    going to do the Court much good this morning, I'd like to
7    get right to the issues.

8             There's been a suggestion -- actually more than a
9    suggestion -- that I changed the rules by this motion that
10   I brought to dismiss the conversion claim they made in the
11   arbitration.  Nothing could be further from the truth.  In
12   fact, the demand for arbitration -- and the Court should
13   understand there's also been the suggestion that DSS made
14   the demand for arbitration of my client.  That's not true
15   either.  Betta made the demand for arbitration with the
16   Triple A, and here's what they asked to be arbitrated.

17            "Under the terms of a contract, respondent,
18            Distribution Systems and Services, acted as a
19            storage warehouse and shipping agent for claimant
20            Betta Products.  Claimant, Betta Products, now
21            claims respondent breached the contract by
22            mishandling goods and by failing to turnover the
23            inventory when requested."
24            That's what they asked the panel to arbitrate, a
25   breach of contract claim.  And there was a really good

6

1  reason why they did that, because that's all your order

2  allowed them to do.  Your order told them they should go

3  and arbitrate the claims that they'd sort forth in the

4  complaint they filed in this proceeding.  There were only

5  contract claims in that complaint.  There was no conversion

6  claim; there was no fraud claim; there was no negligence

7  claim.  There was nothing except contract claims.

8          And even when they had the opportunity to amend

9  their demand for arbitration with the Triple A --

10          THE COURT: Well, when you're saying I ordered it,

11  did you oppose arbitration?  Usually my reaction is, if

12  you've got a dispute, this is the quickest and cheapest

13  place to get it resolved.  So it would be unusual for me to

14  send it out to arbitration unless both sides wanted it.

15          MR. BEITZ: We asked you to do it.  We wanted you

16  to send it out to arbitration.  We thought it belonged in

17  arbitration.  And you told them that they had to go

18  arbitrate the claims they'd raised in their complaint.  And

19  the claims they'd raised in their complaint were contract

20  claims.

21          THE COURT: Did they oppose the arbitration?

22          MR. BEITZ: They opposed the motion -- my

23  recollection is --

24          THE COURT: Because I have no recollection at all,

25  so --

1          MR. BEITZ: I appreciate that.  Mr. Chandler who

2   was their lawyer at the time argued that there were some

3   core issues that were ancillary, but he never made that

4   clear as to what they were.  But he did not put up, to the

5   best that I can recall, any dispute or disagreement with

6   the fact that the contract in question required these

7   issues to be arbitrated.

8          The contract says, and it tracks with the Plan,

9   by the way, that all claims arising out of the contract

10  must be arbitrated, and we moved you to confirm that in an

11  order, and you did.  And it went on up to arbitration and

12  we've been arbitrating it for almost 12 months.  In April,

13  we gave to Betta a bunch of documents they requested.  We

14  gave it to them on a CD, but there were several thousand

15  pages of documents.

16         From those pages of documents, they have now come

17  to this Court today to say they discovered that they've got

18  breach of contract -- excuse me -- fraud, negligence,

19  fraudulent misrepresentation, and some other claims.  And

20  that those claims based upon my motion to dismiss the

21  conversion claim don't belong in arbitration.   Here's my

22  position.  Here's our position.  And you can throw out

23  whatever anybody ever said.

24         If the claims arise under the contract -- and

25  those are the only claims reserved in the Plan -- then they

8

1    must be arbitrated, all of them.  If they don't arise out
2    of the contract or under the contract, rather, then they
3    aren't reserved in the Plan and they aren't to be
4    arbitrated.  I think what the Court -- the options the
5    Court really has before it this morning -- and I'll skip
6    through a lot of stuff I was going to say --

7            THE COURT: There's no hurry, but --

8            MR. BEITZ: Well, I may come back to some of that
9    stuff, let me get to the end.

10           THE COURT: Brevity for the point of clarity is
11   appreciated, but brevity because I'm in a hurry is not
12   something that should be a concern.

13           MR. BEITZ: Okay.  I think the Court can deny this
14   motion because the Plan doesn't reserve these claims
15   anyway.  The court can make that decision.  I think the
16   Court can deny the motion because the original order to go
17   to arbitration doesn't include these claims, and I'm
18   confident that that's true.

19           THE COURT: Well, let's take the latter first.

20           MR. BEITZ: Okay.

21           THE COURT: If it doesn't -- if the arbitration
22   order does not include these claims, I can understand how
23   you could say they're gone if the Plan doesn't reserve it,
24   but if I don't interpret the Plan that way, why are the
25   claims gone?

9

1        MR. BEITZ: That's a good question.  And I think
2  that's a fair question.  If your order didn't approve the
3  claims because they didn't arise under the contract, then I
4  think that would mean by definition they weren't reserved
5  under the Plan, but I suppose your order could have been,
6  and probably was now that you mention it, strictly directed
7  towards the complaint that was filed at that time, and the
8  fact that the complaint didn't raise those claims doesn't
9  mean they don't exist.  That's fair; you're right.
10        THE COURT: So we end up arbitrating the contract
11  claims and then sending the rest out to District Court?  I
12  don't know.
13        MR. BEITZ: Well, I think if the other claims
14  arise under the contract, they've got to be arbitrated too.
15  That was what I said to begin with.  I think if they --
16  there are two questions that have to be resolved
17  ultimately.  Do the claims, whatever they are, arise under
18  the contract?  If they do, then they must be arbitrated
19  because that's what the contract says, regardless of what
20  they are.
21        THE COURT: But you're arguing to the arbitrator
22  that they don't.
23        MR. BEITZ: Well, I'm only arguing to the
24  arbitrator that the one doesn't because it wasn't included
25  in your order -- what you have to understand, and let me go

10

1  back to some of this stuff I was going to talk about -- I

2  moved to dismiss a bunch of things.  One of the things I

3  moved to dismiss was the conversion claim because it

4  duplicated the contract claim, except for one thing.  In

5  Minnesota, the measure of conversion is the market value of

6  the goods that were converted at the time of the

7  conversion.  I'm guessing in California that's true too,

8  but I know that's true in Minnesota.

9          And that's specifically and directly in

10 opposition to the measure of damages in this contract.  And

11 I moved to dismiss that conversion claim on that ground,

12 that it wasn't included in your original order and

13 therefore shouldn't be before the panel of arbitrators, but

14 also because it was contrary to the contract.  And that was

15 the basis for my motion.  And I still think that's a good

16 motion because your order, I'm very confident, didn't

17 include conversion.

18          THE COURT: Well, that's because conversion wasn't

19 alleged until now.

20          MR. BEITZ: Perfect.  Exactly right.  And if --

21 that gets me to my last alternative of what the Court can

22 do.  The Court can grant the motion but send -- keep the

23 arbitration in place on exactly the claims that are there

24 now; hold on to the additional claims, the conversion

25 claim, the negligence claim, all the allegedly non-contract

11

1   claims that weren't included in the original order and see

2   what happens with the arbitration, because I'll bet anybody

3   in this room today when that arbitration is over,

4   everything is going to be resolved, and I'll tell you why.

5          In Dennis Walsh's deposition, Mr. Walsh is the

6   president and CEO now of Betta and runs Betta, he admitted

7   that all of their claims flow from their allegation that we

8   didn't give them inventory to which they were entitled.

9   And I agree with him.  That's what this case is all about.

10  And if we go to arbitration and it's determined that we

11  didn't give them the inventory to which they were entitled,

12  they're going to get something.  And if it's determined we

13  did give them the inventory to which they were entitled,

14  they haven't been given anything.  And the case is going to

15  be over.

16         In the meantime, however, the debtor is not going

17  to have been prejudiced because you're still holding onto

18  those other claims, and we don't have to -- we don't have

19  to stop the arbitration which is now scheduled to be heard

20  November 13, and on which we've spent a considerable amount

21  of money and time.  As a matter of fact, this past week, I

22  intended to be in Southern California the entire week

23  meeting with, interviewing, and preparing witnesses and

24  that's where I heard about this motion and then came up

25  from Southern California here.

12

1          The other side I'm sure too has spent a

2   considerable amount of time.  I've been out here on two

3   trips taking depositions and meeting with witnesses.  That

4   order would have the benefit of, in my judgment, protecting

5   the debtor, letting the arbitration go forward, and if

6   there's anything left over after that arbitration is done,

7   dealing with that at that time, and I think that's not

8   likely.

9          THE COURT: Well, it may be we're on the same page

10  here.  What I am contemplating is an order which does three

11  things: number one, grants the motion to amend the

12  complaint; number two severs those claims added in the

13  amended complaint from those in the original complaint,

14  allowing the claims in the original complaint to go

15  forward, and as you said, holding the added claims; and

16  reserving the res judicata argument, that is to say,

17  reserving the argument as to whether or not the claims

18  raised in the amended complaint are barred because of the

19  Plan confirmation.

20          MR. BEITZ: Or are barred by the decision in the

21  arbitration.

22          THE COURT: Well, that goes without saying.  Yeah.

23          MR. BEITZ: That would be satisfactory to us, Your

24  Honor.

25          THE COURT: Well, let me see if it would be

13

1   satisfactory to the other side.

2           MR. BRINKMAN: Your Honor, a couple of things that

3   need to be addressed very clearly.  Counsel is speaking out

4   of both sides of his mouth, when he gets up here and says,

5   well, I didn't really argue this or that.  Let me read

6   directly from his brief in the arbitration.

7           "In Claims 1 and 2, claimants seek alternative

8           relief for conversion and breach of bailment

9           relationship.  Conversion is a tort claim.

10          (Citations.)  And while bailment is a form of a

11          contract claim, claimants are making their

12          bailment claims here not under the Betta/DSS

13          agreement.  But as an alternative to it, neither

14          claim is justified under the Betta/DSS agreement,

15          which limits arbitration under the agreement to

16          any agreement or dispute under this agreement.

17          Therefore, those alternative claims must be

18          dismissed."

19  He takes the position clearly in writing, black and white,

20  right there, he says, we can't arbitrate any of those

21  claims outside, and they don't arise under the contract.

22          Now all they're doing is just trying to cut off

23  an appropriate forum --

24          THE COURT: Well, hang on a minute.  Is it

25  possible for you to lose in the arbitration under the

14

1  contract and still have a tort claim?

2         MR. BRINKMAN: Your Honor, I want you to

3  understand, a tort claim is --

4         THE COURT: I mean it's the same act.  You're

5  saying this act had two consequences.  Number one, it was a

6  breach of the contract; and number two, it was tortuous,

7  which the only consequence there, there might be a

8  different measure of damages and there might be some

9  punitive damages involved.

10         MR. BRINKMAN: Right, and consequentials to boot.

11         THE COURT: But if you lose in the arbitration,

12  that is to say, the arbitrator says they did not breach the

13  contract, I don't see how it would be possible for you to

14  have a tort, a viable tort claim.  If the arbitrator says

15  they did everything right under the contract, they did

16  everything they were supposed to regarding the inventory,

17  then I don't see how you have a remaining tort claim.

18         MR. BRINKMAN: If that were the way the evidence

19  goes, great.  But what you have to understand that part of

20  this has been a -- we kind of anticipated from the outset,

21  this would be kind of a bean-counting exercise where we

22  basically looked at ins and outs and inventory records and,

23  you know, came out to what was right.  They have taken the

24  position officially in that proceeding now in which they

25  say, well, you can't rely upon our accounting records.  We

15

1 may have had an obligation to keep accurate records, but

2 they're unreliable so you have no damages because you don't

3 get to rely upon our records.  Okay?

4        They changed the whole nature of the action from

5 one of a bean-counting exercise to one about fraud.  Now we

6 have to turn around and go, look, you were handing these

7 things -- you were handing us these reports on a regular

8 basis as if that was the way they were, expecting us to

9 rely upon them, and we did rely upon them, not only damages

10 for the fact that they are not there when they're there; we

11 have damages for tort.  And we want to put on damages

12 regarding consequential damages and the fact that they were

13 misleading us.

14        THE COURT: Well, you're admitting you can't do

15 that in the arbitration.  You're admitting their motion is

16 right.  And if I issue the order that I proposed, I'm

17 preserving your rights.  If you win in the arbitration,

18 that puts you in a pretty good position to prosecute your

19 tort claims.  If you lose in the arbitration, I think your

20 tort claims either, as a matter of law or if not as a

21 matter of law, as a matter of practicality, just go poof!

22        MR. BRINKMAN: M-hm.  Yeah.  Like I said, I don't

23 think that that's what the trial is going to be about.  And

24 a secondary point regarding the res judicata argument of

25 the Plan, it's kind of absurd --

16

1          THE COURT: I don't want to decide that now, so I

2    just want to reserve it.  That may be a fruitless exercise

3    and so I recognize it's an issue, but that's the reason I

4    put that in my proposed order was so that I don't have to

5    decide it now but the issue is still there if it becomes

6    necessary to be decided.

7          MR. BRINKMAN: Well, understand that they've

8    raised the same argument in their arbitration brief, and we

9    think it's a collateral attack on the Plan.  They're

10   basically asking some non-judge in Minnesota to interpret

11   your Plan and interpret bankruptcy law, which is not

12   kosher.

13         THE COURT: Well, I understand that, but if -- an

14   arbitrator by definition is a non-judge.

15         MR. BRINKMAN: Yes.

16         THE COURT: And as I said, I never order people to

17   arbitration.  I always assume the case if I can because I

18   know this is the fastest -- believe me, if it were

19   litigated here, it would be over now.  You might be up in

20   the Appellate Courts, but you'd have a trial done.

21         MR. BRINKMAN: Yes.

22         THE COURT: So I know I can do it faster and

23   cheaper than anybody else.  So you're either -- you're not

24   in arbitration because I made you go to arbitration; you're

25   in arbitration because basically --

17

1          MR. BRINKMAN: They forced us to.

2          THE COURT:  -- there was an agreement -- well,

3   there was an agreement, and I'm just honoring the agreement

4   between the parties.

5          MR. BRINKMAN: Well, that's understood.  I mean --

6          THE COURT: I just don't see how my order

7   prejudices -- it seems to me the order that I'm proposing

8   preserves your client's rights and allows the arbitration

9   to go forward, and the whole idea of arbitration is, it's

10  not subject to legal review, so the arbitrator basically

11  does what he or she thinks is right, and then if you're

12  successful in the arbitration, then you've still got these

13  tort claims which can be litigated.

14         MR. BRINKMAN: Can you hang on one moment.  I need

15  to talk to my partner just to consult --

16     (Pause.)

17         MR. BRINKMAN: Your Honor, I want to be perfectly

18  straight with you.  I think that the order would work for

19  this reason, and I'll be totally honest with you.  Because

20  of the way the tort law gives you fair market value damages

21  on lost goods and because their contract only provides cost

22  damages, it's an inferior measure to go under contract for

23  us.  We are not likely to want to proceed first under the

24  contract.  We are probably going to seek to stay that

25  arbitration proceeding and go first under the rights that

18

1   we have outside the contract, because, you know, the

2   damages are -- we're going to have to deal with the damages

3   one way or the other.  We're going to have to go through

4   the accounting; we're going to have to go through the false

5   representations and it makes better sense to do it all in

6   one forum first.  We recognize that we'll have to come back

7   or, you know, if there's anything in the contract not in

8   tort law, we understand that that we'd be missing that by

9   going forward first in this court or in District Court.

10  But I want to be perfectly honest, that's what we intend to

11  do with that order in hand.

12          THE COURT: Well, isn't that up to the arbitrator?

13          MR. BRINKMAN: The arbitrator can decide whether

14  or not to stay it or not, yeah.

15          THE COURT: I do not want to interfere with the

16  arbitrator.

17          All right.  My order will be that the -- well,

18  insofar as -- my order will be that leave is granted to

19  file the amended complaint.  The claims added in the

20  amended complaint are severed from the claims in the

21  original complaint, and the original complaint may proceed

22  in arbitration as the arbitrator deems proper.  And I want

23  to make it clear that the res judicata or any res judicata

24  argument which could be res judicata arising out of the

25  arbitration or res judicata arising out of the Plan itself,

19

1   is reserved.

2          Now, I do not see any need to modify the order

3   sending it out to arbitration.  Is there anything else I

4   need to consider right now?

5          MR. BRINKMAN: No, sir.

6          THE COURT: All right.  Then if counsel for Betta

7   Products will please prepare an appropriate form of order

8   and have counsel for DSS approve it as to form.

9          MS. PORTILLO: Yes, Your Honor.

10         MR. BRINKMAN: Yes, Your Honor.

11         MR. BEITZ: Thank your, Your Honor.

12         MR. GREENBERG: Thank you, Your Honor.

13         THE COURT: Thank you.

14     (Whereupon, the proceedings are concluded at 9:56

15   a.m.)

16

17

18

19

20

21

22

23

24

25

20

```
1
2
3
4
5                    CERTIFICATE OF TRANSCRIBER
6
7          I certify that the foregoing is a correct
8     transcript from the digital sound recording of the
9     proceedings in the above-entitled matter.
10
11
12    DATED:  October 19, 2006        /s/ Jo McCall
13
14
15
16
17
18
19
20
21
22
23
24
25
```