# UNITED STATES DISTRICT COURT FOR THE

# NORTHERN DISTRICT OF CALIFORNIA

U.S. District Court Case Number CV 07-04825 WHA

U.S. Bankruptcy Court, Northern District of California; Honorable Alan
Jaroslovsky - Bankruptcy Case Number 03-10925
Adversary Case Number 05-01046

## In re BETTA PRODUCTS, INC.

### *Debtor*

---

## BETTA PRODUCTS, INC., AND DANA MC CURNIN, TRUSTEE OF THE BETTA PRODUCTS LITIGATION TRUST,

### *Plaintiffs, Appellees and Cross-Appellants*

### vs.

## DISTRIBUTION SYSTEMS AND SERVICES, INC. (aka DSS),

### *Defendant, Appellant and Cross-Appellee*

---

## APPELLEES' COMBINED BRIEF ANSWERING APPELLANT'S OPENING BRIEF AND OPENING BRIEF ON CROSS-APPEAL

---

### BRINKMAN PORTILLO, PC
Daren R. Brinkman (State Bar No. 158698)
Laura J. Portillo (State Bar No.186813)
4333 Park Terrace Dr., Suite 205
Westlake Village, Ca 91361
Ph: (818) 597-2992; Fax: (818) 597-2992

## CORPORATE DISCLOSURE STATEMENT

Betta Products, Inc. is a California corporation.  Dana McCurnin is an individual residing in the State of California and serving as trustee for the Betta Products Litigation Trust.  The bankruptcy First Amended Plan of Reorganization was confirmed on May 17, 2004.  See Bankruptcy Case No. 03-10925.

# TABLE OF CONTENTS

I.      JURISDICTIONAL STATEMENT ............................................................ 1

II.     STATEMENT OF THE ISSUES ON CROSS-APPEAL ......................... 1

III.    APPLICABLE STANDARD OF REVIEW ........................................... 2

IV.     STATEMENT OF THE CASE ................................................................ 3

        A.    Nature of Case ....................................................................... 3

        B.    Procedural History ............................................................... 3

V.      STATEMENT OF FACTS ...................................................................... 7

VI.     SUMMARY OF ARGUMENTS ............................................................ 8

        A.    In Answer to DSS Opening Appellate Brief ....................... 8

        B.    The Betta Parties Cross-Appeal ........................................... 9

VII.    ARGUMENT IN RESPONSE TO DSS'S OPENING BRIEF ON
        APPEAL OF DENIAL OF DSS'S MOTION TO DISMISS ............... 10

        A.    The Bankruptcy Court Intended Severance Pursuant to
              Fed.R.Civ.P. 42 .................................................................... 10

              1.    The Court has the Authority to Remand the Case to the
                    Bankruptcy Court in Order to Clarify Its Order .............. 12

        B.    DSS Does Not Dispute that a Severance Pursuant to
              Fed.R.Civ.P. 42(b) Does Not Create Separate Cases and
              Therefore, is Not Final ....................................................... 14

        C.    The Court Should Not Interpret the Judgment as Final
              Because Such an Interpretation Would Substantially
              Prejudice the Appellees ....................................................... 15

VIII.   BETTA PARTIES' OPENING BRIEF ON CROSS-APPEAL ............. 16

        A.    Did the Bankruptcy Court Err in Applying the Correct
              Standard of Issue Preclusion .............................................. 16

        B.    Did the Bankruptcy Court Err in Finding that the Issues in
              the Amended Complaint are Identical to Issues in the
              Arbitration? ......................................................................... 17

1.    The Issues Cannot be "Identical" Because The
Warehouse Agreement (Which Was The Subject of the
Arbitration) Required A More Difficult and More
Particular Set of Issues and Burden Of Proof Than The
Tort, Bankruptcy and Common Law Claims ....................... 17

a.    The Warehousing Agreement Distinctly Defines
the Claims and the Burden of Proof Required for a
Breach of the Agreement and this Differs from the
Standard of Proof for the Tort and Bankruptcy
Claims .............................................................................. 18

b.    Minnesota and Federal Law Requires a New
Hearing Between the Parties if There is any
Variation in the Burden of Proof ..................................... 19

C.    Did the Bankruptcy Court Err in Finding that Allegedly
Identical Issues Were Actually Litigated and Necessary to
the Arbitration Award? ................................................................. 21

1.    The Arbitration Award is Devoid of Facts Sufficient to
Specifically Identify Which Issues Were Actually
Determined or Necessary to the Award .................................. 21

2.    The Arbitration Award is Based Entirely upon DSS's
Presentation of Evidence Without Anyone to Represent
what Claims Were being Asserted Against DSS ..................... 23

IX.    CONCLUSION ................................................................................................ 24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Acevedo-Garcia v. Monroig,*
    351 F.3d 547 (1st Cir. 2003) ........................................................................ 14

*Ashe v. Swenson,*
    397 U.S. 436 (1970) ...................................................................................... 22

*Blanton v. Anzalone,*
    813 F.2d 1574 (9th Cir. 1987) ..................................................................... 11

*Chrysler Credit Corp. v. Country Chrysler, Inc.,*
    928 F.2d 1509 (10th Cir. 1991) ................................................................... 14

*Clark v. Bear Stearns & Co., Inc.,*
    966 F.2d 1318 (9th Cir. 1992) ..................................................................... 21

*Doyle v. United States,*
    721 F.2d 1195 (9th Cir. 1983) ..................................................................... 13

*E.S. v. Ind. School District, No. 196,*
    135 F.3d 566 (8th Cir. 1998) ....................................................................... 14

*Emich Motors Corp. v. Gen. Motors Corp.,*
    340 U.S. 558, 569 (1950) ............................................................................. 22

*Far Out Productions, Inc. v. Oskar,*
    247 F. 3d 986 (9th Cir. 2001) ...................................................................... 16

*Gaffney v. Riverboat Servs of Indiana, Inc.,*
    451 F.3d 424 (7th Cir. 2006) ....................................................................... 14

*Harmon v. Kobrin (In re Harmon),*
    250 F.3d 1240 (9th Cir. 2001) ..................................................................... 18

*Huey v. Teledyne,*
    608 F.2d 1234 (9th Cir. 1987) ............................................................... 11, 13

*In re BCE West, L.P.,*
    319 F.3d 1166 (9th Cir. 2003) ....................................................................... 2

*In re Harmon,*
    250 F.3d 1240  (9th Cir. 2001)..........................................................................2

*In re Moncur,*
    328 B.R. 183 (9th Cir. 2005) ....................................................................12

*In re Moncur,*
    328 B.R. 183, 191 (9th Cir. 2005) ................................................................2

*In re Palmer,*
    207 F.3d 566, 567 (9th Cir. 2000)..............................................................17

*In re Paris Air Crash of March 3, 1974,*
    69 F.R.D. 310 (C.D. Cal. 1974) ................................................................14

*In re S. Cal. Plastics, Inc.,*
    165 F.3d 1243 (9th Cir. 1999)......................................................................2

*Jones & Guerrero Co. v. Sealift Pac.,*
    650 F.2d 1072 (9th Cir. 1981).....................................................................11

*Matsushita Elec. Indus. Co., Ltd. v. Epstein,*
    516 U.S. 367 (1996) ...................................................................................17

*McDonald v. City of West Branch,*
    466 U.S. 284 (1984) ...................................................................................17

*Morris v. Morgan Stanley & Co.,*
    942 F.2d 648 (9th Cir. 1991).......................................................................11

*Morris v. Morgan Stanley & Co.,*
    942 F.2d 6485 (9th Cir. 1991).....................................................................13

*NLRB v. Donna-Lee Sportswear Co.,*
    836 F.2d 31 (1st Cir. 1987) ........................................................................14

*Robi v. Five Platters, Inc.,*
    918 F.2d 1439 (9th Cir. 1990).....................................................................11

*U.S. Aluminum Corp./Texas v. Alumax, Inc.,*
    831 F.2d 878 (9th Cir. 1987).......................................................................20

*United States v. Lasky,*
    600 F.2d 765 (9th Cir. 1979)..........................................................................22

## FEDERAL STATUTES

28 U.S.C. § 1331 ...........................................................................................1

28 U.S.C. § 157 .............................................................................................1

28 U.S.C. § 158 .............................................................................................1

28 U.S.C. § 1738 ...........................................................................................16

Fed.R.Civ.P. 60(a) .........................................................................................13

## STATE CASES

*State v. Lemmer,*
    736 N.W.2d 650 (Minn. 2007).......................................................................20

*Willems v. Comm'r of Public Safety,*
    333 N.W.2d 619 (Minn. 1983).......................................................................20

## OTHER AUTHORITIES

4 Moore's Federal Practice §21.06 (3d Ed. 2007) ...................................................9

9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 203.11
    (2d ed. 1983) ...........................................................................................10

# I.  JURISDICTIONAL STATEMENT

Betta Products, Inc. ("Betta") invoked the jurisdiction of the bankruptcy court pursuant to 28 U.S.C. §§ 157(b)(2)(A), (C) and (E) on April 14, 2005. Appellee's Appendix ("AApp"), Exhibit "1", p.1, ¶ 1.

On September 14, 2007, DSS filed a notice appeal and a motion for leave to appeal ("Motion for Leave to Appeal") the Bankruptcy Court's judgment and order denying DSS's motion to dismiss and cross-motions filed by the Betta Parties ("Judgment Denying DSS's Motion to Dismiss").  Although, the Betta Parties contend that the Judgment Denying DSS's Motion to Dismiss is an interlocutory and unappealable judgment, the Betta Parties filed a notice of cross-appeal on September 24, 2007 in order to preserve their right to appeal if this Court decided to grant DSS's Motion for Leave to Appeal.  The Court subsequently granted DSS's Motion for Leave to Appeal.  The Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. §§ 158 (a), 1331.

# II. STATEMENT OF THE ISSUES ON CROSS-APPEAL

The issues presented on the Betta Parties cross-appeal of the Bankruptcy Court's Judgment Denying DSS's Motion to Dismiss are as follows:

1.  Whether the Bankruptcy Court applied the correct legal standard for issue preclusion?

2.  Whether the Bankruptcy Court erred in finding that the issues raised by the Betta Parties in the causes of action in the Amended Complaint are identical to issues actually decided by the Arbitration Panel?

3.  Whether the Bankruptcy Court erred in finding that the issues raised by the Betta Parties in the causes of action in the Amended Complaint are identical to issues actually decided by the arbitration penal when, in fact, the contract which was the subject of the arbitration required a more difficult and more particular set of issues and burden of proof than the claims in the court action?

4.  Whether any alleged identical issue(s) between the claims asserted in the arbitration and the claims asserted in the causes of action in the Betta Parties' Amended Complaint were necessary to the arbitration award?

## III.   APPLICABLE STANDARD OF REVIEW

This District Court reviews a bankruptcy court's conclusions of law de novo and its factual findings for clear error. *In re S. Cal. Plastics, Inc.*, 165 F.3d 1243, 1245 (9th Cir. 1999); *In re Lazar*, 83 F.3d 306, 308 (9th Cir. 1996); *In re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001).  Mixed questions of law and fact are reviewed de novo. *In re BCE West, L.P.*, 319 F.3d 1166, 1170 (9th Cir. 2003).  However, a court sitting in review of a lower court's order or judgment should defer to the lower court's interpretation of its own ruling. *In re Moncur*, 328 B.R. at 191 (9th Cir. 2005).

The Betta Parties assert that each of the issues involved in the cross-appeal are questions of law that should be reviewed de novo.

## IV.    STATEMENT OF THE CASE

### A.    Nature of Case

This appeal is a complete waste of the Court's time and resources and is another example of DSS's improper effort to abuse the arbitration process to avoid having to answer for its tortious conduct.  Now that the Bankruptcy Court has prevented DSS from improperly exploiting the arbitration process in this unfair manner, DSS has filed this appeal to try to take advantage of a citation error in the order dated October 20, 2006.  Despite the Bankruptcy Court's Amended Order which completely undercuts DSS's arguments DSS continues to pursue the appeal. Although the Betta Parties vehemently disagree with the DSS's claim that arbitration award and the Bankruptcy Court's Judgment Confirming the Arbitration Award are final judgments, the Betta Parties were forced to file their cross-appeal of the Bankruptcy Court's findings in order to preserve their rights.

### B.    Procedural History

On April 14, 2005, Betta Products, Inc., through its former counsel, commenced the adversary proceeding for turnover of inventory and for damages incurred by DSS' breach of a warehouse agreement "Agreement" between Betta and DSS.  Appellee's Appendix ("AApp") Exhibit "1".  DSS filed a motion to

compel arbitration and to stay the court action. On May 11, 2005, the Bankruptcy Court entered an order granting DSS' motion to compel and stay the action.

During the discovery process, the Betta Parties obtained information supporting additional claims in tort including fraud, negligent misrepresentation and negligence. On September 15, 2006, DSS filed with the American Arbitration Award ("AAA") a motion to dismiss all or part of Betta's claims in which it argued that the Betta's claims for conversion and bailment were not within the scope of the arbitration agreement and should be dismissed from the arbitration.[1] AApp, Exhibit "3", at Exhibit "B". In realization of the fact that DSS was arguing that DSS' tort claims were not arbitrable, Betta and the Trust jointly filed a motion with the Bankruptcy Court for modification of the stay and for leave to amend the adversary complaint ("Motion to Amend"). AApp, Exhibit "2". Betta's proposed amended complaint ("Amended Complaint") included causes of action for breach of bailment, conversion, fraud, negligent misrepresentation and negligence. *Id*. at Exhibit "A". The Bankruptcy Court granted Betta's Motion to Amend and entered a corresponding order on October 20, 2006 ("2006 Order"). Appellant's Appendix, Exhibit "A".

---

[1] After the hearing on October 13, 2006, DSS withdrew the portion of its motion to dismiss which argued that the Betta Parties' claims for breach of bailment and conversion should be dismissed from the arbitration.

The Betta Parties immediately sought from AAA and its panel of arbitrators ("Panel") a stay or continuance of the arbitration proceedings pending the outcome of the litigation of the claims in the Amended Complaint. AApp, Exhibit "6" at Exhibit D, p.2. The Betta Parties also filed with the AAA a formal request for withdrawal of its arbtirable breach of contract claims from arbitration. AApp, Exhibit "4" at Exhibit D, p.3. The Panel denied the requests for a continuation and withdrawal of claims and subsequently held the arbitration without the Betta Parties on November 13, 2006. The Panel found in favor of DSS on the breach of contract claims and issued an arbitration award ("Arbitration Award") on November 16, 2006. AApp, Exhibit "6", at Exhibit "D" p.5-6.

DSS subsequently moved the Bankruptcy Court to confirm the Arbitration Award ("Motion to Confirm") and the Betta Parties moved to vacate the award. The Bankruptcy granted DSS' Motion to Confirm and entered a judgment ("Judgment") and a separate order ("Order") (collectively ("Judgment and Order Confirming Arbitration Award") confirming the award on March 1, 2007. Appellant's Appendix, Exhibits "D" and "E".

On or about June 28, 2007, DSS filed a motion to dismiss, and, alternatively, for summary judgment ("Motion to Dismiss"). Appellant's Appendix, Exhibit "G". DSS asserted that the case should be dismissed on the grounds that the doctrine of issue preclusion prevents the Betta Parties from litigating the claims in

their amended complaint. *Id.* The Betta Parties filed cross-motions for summary judgment and supporting declarations. AApp, Exhibits "4", "5" and "6". The Betta Parties also filed a supplemental brief regarding why issue preclusion does not apply. AApp, Exhibit "11".

On August 15, 2007, The Bankruptcy Court issued a memorandum on motion to dismiss and related motions and cross-motions denying the motions and cross-motions ("Memorandum of Decision"). Appellant's Appendix, Exhibit "H". The Memorandum of Decision states that:

> In this case, all of the elements for issue preclusion are present except that the award of the arbitration panel is not final. While the court did enter a judgment on the award on March 1, 2007, it did not direct that it was a final judgment or make the express determinations necessary for it to be final. Pursuant to FRCP54(b), made applicable to adversary proceedings by FRBP 7054, that judgment is not final. The Motion to dismiss on grounds of issue preclusion therefore cannot be granted.

Appellant's Appendix, Exhibit "H", p.3, ln.12-16.

On September 6, 2007 the Bankruptcy Court also entered an order denying defendant DSS' motion to dismiss and alternatively motion for summary judgment and denying plaintiff Betta Products, Inc's motion for partial summary judgment ("Order") which reflects the findings set forth in the Memorandum of Decision. Appellant's Appendix, Exhibit "I". The Memorandum of Decision and the Order shall collectively be referred to hereafter as the Judgment on DSS's Motion to Dismiss.

On September 14, 2007, DSS filed its Notice of Appeal and a motion for leave to appeal ("Motion for Leave to Appeal"). On September 24, 2007 the Betta Parties filed an opposition to DSS' Motion for Leave to Appeal and a supporting declaration. AApp, Exhibit "7" and "8", respectively. Although, the Betta Parties contend that the Judgment on DSS's Motion to Dismiss is interlocutory and unappealable, the Betta Parties also filed a notice of cross-appeal. The purpose of the cross-appeal was to preserve their right to appeal the Bankruptcy Court's finding that the elements of issue preclusion, other than the element of a final order, were met. AApp, Exhibit "9".

## V. STATEMENT OF FACTS

At the hearing on the Betta Parties' Motion for Leave to Amend, the Bankruptcy Court granted the Betta Parties' requested relief and held that, "[t]he claims added in the amended complaint are severed from the claims in the original complaint, and the original complaint may proceed in arbitration as the arbitrator deems proper." Appellant's Appendix, Exhibit "B", p.18, ln.17-22. The Motion for Leave to Amend did not request severance of the claims pursuant to Fed.R.Civ.P. 21. AApp, Exhibit "2". At no time during the hearing did the Bankruptcy Court indicate that it was severing the claims pursuant to Fed.R.Civ.P. 21. Appellant's Appendix, Exhibit "B".

On November 5, 2007, the Bankruptcy Court issued a memorandum and order amending prior order ("Amended Order").  AApp, Exhibit "10".  The Amended Order attempts to clarify the intent of the Bankruptcy Court's order dated October 20, 2006.  *Id*.  The Amended Order states that:

> [t]his court's order of October 20, 2006, contains an error.  It refers to FRCP 21 when it should have read FRCP 42.  Accordingly, to the extent that the court has jurisdiction to do so, IT IS ORDERED that paragraph 2 of the said orders is amended to change 'Fed.R.Civ.P. 21' to 'Fed.R.Civ.P. 42' and 'Fed.R.Bankr.Poc. 7021' to 'Fed.R.Bankr.Proc. 7042'… to the extent the court no longer has jurisdiction to correct its mistake due to pending interlocutory appeal, this order shall be deemed an indication that it would amend its order if the matter is remanded.

*Id*.

## VI.    SUMMARY OF ARGUMENTS

### A.    In Answer to DSS Opening Appellate Brief

The Betta Parties contend that the Bankruptcy Court's ruling on October 13, 2006 did not intend to sever the arbitration proceeding and the court action to create separate and distinct cases under Fed.R.Civ.P. 21, but instead created separate hearings within the bankruptcy case pursuant to Fed.R.Civ.P. 42.  The Bankruptcy Court's Amended Order clearly expresses this intention.  DSS does not dispute that a judgment regarding claims severed pursuant to Fed.R.Civ.P. 42 does not create a final judgment absent certification as such.

This Court should consider that neither law nor equity supports an interpretation of the Judgment Confirming the Arbitration Award as a final judgment, because doing so would prejudice the Betta Parties. If this Court were to reverse the portion of the Bankruptcy Court's Judgment Denying DSS's Motion to Dismiss the Betta Parties would be estopped from litigating their non-arbitrable tort, bankruptcy and common law claims. Accordingly, the Betta Parties would suffer the ultimate prejudice in having its case effectively dismissed without having their day in court.

**B.    The Betta Parties Cross-Appeal**

A summary of the Betta Parties' arguments on cross-appeal are as follows:

1.    This Bankruptcy Court erroneously applied a state law standard of issue preclusion instead of the federal law. A full and fair opportunity for a hearing in the preceding action is an express element the federal law standard. In addition, the federal law of issue preclusion generally does not apply to default judgments.

2.    The Bankruptcy Court erred as a matter of law in finding that the issues raised by the claims in the Betta Parties' Amended Complaint are identical to the issues raised by the breach of contract claims in the arbitration. Because the warehouse agreement (which is the subject of the arbitration) involves a more particularized and burdensome set of issues and burden of proof, the issues are not identical.

3.    The Bankruptcy Court erred as a matter of law in finding that the

allegedly identical issues in the Amended Complaint were actually litigated and

necessary to the arbitration.  The Arbitration Award does not clearly identify which

specific issues were actually decided and were necessary to the Award.  In

addition, none of the issues were actually litigated because the Panel of Arbitrators

held the arbitration without the Betta Parties and issued a one-sided opinion which

is the equivalent of a default judgment.

## VII.
## ARGUMENT IN RESPONSE TO DSS'S OPENING BRIEF ON APPEAL OF DENIAL OF DSS'S MOTION TO DISMISS

### A.    The Bankruptcy Court Intended Severance Pursuant to Fed.R.Civ.P. 42

DSS's argument on appeal is premised on the erroneous position that the

Bankruptcy Court severed the claims in the Amended Complaint from the

arbitrable claims and created separate and distinct cases.  This Court should affirm

the Bankruptcy Court's Judgment because the Bankruptcy Court never intended to

create separate and distinct cases, nor did it intend for the Judgment Confirming

the Arbitration Award to be a final judgment.  This fact is made clear by the

Bankruptcy Court's order amending the order dated October 20, 2006.  AApp,

Exhibit "10".

DSS will incorrectly argue that the Bankruptcy Court's order amending the

October 20, 2006 Order is not a correctable error.  However, the test in the Ninth

Circuit for determining what constitutes a correctable "clerical error" focuses on what the court originally <u>intended</u> to do. *Huey v. Teledyne*, 608 F.2d 1234, 1237 (9th Cir. 1987)(using Rule 60(a) to make the order reflect the actual intentions of the court); *Jones & Guerrero Co. v. Sealift Pac.*, 650 F.2d 1072, 1074 (9th Cir. 1981)(Errors correctable under Rule 60(a) include those where what is spoken, written or recorded is not what the court intended to speak, write or record.); *See e.g. Blanton v. Anzalone*, 813 F.2d 1574 (9th Cir. 1987)(upholding district court's correction of earlier order that stated that award consisted of 7% interest from Sep. 8, 1980 to date of entry of judgment based on court's later statements that it never intended to grant prejudgment interest.); *Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 654-55 (9th Cir. 1991)(stating that "[f]rom the *clarifying order* it is obvious that the district court intended to dismiss claims and that its first order simply was inartfully drafted.") (emphasis added); *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1445 (9th Cir. 1990)(initial order purporting to cancel single trademark which could have been any one of three trademarks was corrected to cancel all three).

DSS's appeal turns on the issue of what was the Bankruptcy Court's intent with respect to its October 13, 2007 ruling and the October 20, 2007 order. The Bankruptcy Court answered this question on two occasions. First, in its Memorandum of Decision in which it stated that it did not certify the Judgment

Confirming the Arbitration Award as final judgment.  Appellant's Appendix,

Exhibit "H", p.3, ln.12-16.  The Bankruptcy Court clearly expressed its intent with

respect to its ruling and the 2006 Order when it filed the Amended Order.  Despite

these statements DSS continues to argue that the Bankruptcy Court intended

severance pursuant to Fed.R.Civ.P. 21.  It is quite amazing how DSS can purport to

know better than the Bankruptcy Court what the Bankruptcy Court intended.

Unfortunately for DSS's weak position, appellate courts give deference to the trial

court's interpretation of its own ruling in situations such as these where one party

to an action purports to know better that than the trial court what the trial court

intended. *See In re Moncur*, 328 B.R. 183, 191 (9th Cir. 2005); *Matter of Chicago,*

*Milwaukee, St. Paul & Pac. R. Co*, 974 F.2d 775, 779 (7th Cir. 1992).  DSS <u>has</u> <u>not</u>

and <u>cannot</u> provide any evidence supporting that such deference should not be

given in this case.

### 1.    The Court has the Authority to Remand the Case to the Bankruptcy Court in Order to Clarify Its Order

DSS will absurdly argue that the Bankruptcy Court's intent somehow no

longer matters.  The basis for DSS's frivolous claim is that because the amended

order was allegedly entered after the appeal was docketed in this Court, the

Bankruptcy Court did not have jurisdiction to clarify its order and cannot now

correct or clarify the order.  In essence, DSS's argument is that it should be

allowed to misuse the rules of Civil Procedure to prevent the Bankruptcy Court

from clarifying the intent of its original order and to prevent the Betta Parties from having their day in court.

Once again, DSS's argument is completely without merit. Appellate courts have held that where a trial court attempts to correct a clerical error pursuant to Fed.R.Civ.P. 60(a) after an appeal is docketed in the appellate court, the appellate court may remand the case to the trial court to correct its order or may even deem the order corrected without such a remand. *Huey*, 608 F.2d at 1237 (finding that where it was clear that the trial court would correct its order if given the opportunity, a remand is a matter of "mere form"); *Morris*, 942 F.2d at 654-55 (stating that "[f]rom the clarifying order it is obvious that the district court intended to dismiss the state and federal claims and that its first order simply was inartfully drafted. We therefore hold that despite the filing of the notice of appeal, the district court could clarify the original order under Rule 60(a)"); *Doyle v. United States*, 721 F.2d 1195, 1997 (9th Cir. 1983)((rule divesting the trial court of jurisdiction is designed to avoid confusion and inefficiency of two courts considering same issues simultaneously and is not absolute. Courts should not employ the rule to defeat this purpose by "induc[ing] needless paper shuffling.")(citing 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 203.11, at 3-44 n. 1 (2d ed. 1983)).

**B.  DSS Does Not Dispute that a Severance Pursuant to Fed.R.Civ.P. 42(b) Does Not Create Separate Cases and Therefore, is Not Final**

The Bankruptcy Court's Amended Order clarifies but does not change the Bankruptcy Court's ruling on October 13, 2006 and indicates that the Bankruptcy Court intended severance pursuant to Fed.R.Civ.P. 42.  According to the case law which DSS cites, "[w]hile judgment on a severed claim is final for purposes of appeal, judgment on a claim tried separately [under Rule 42(b)] is not an appealable final judgment, unless certified under Rule 54."  Appellate Brief, at p.7-9 (citing 4 Moore's Federal Practice §21.06 (3d Ed. 2007); *see also In re Paris Air Crash of March 3, 1974*, 69 F.R.D. 310, 318 (C.D. Cal. 1974); *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 558-560 (1st Cir. 2003); *Gaffney v. Riverboat Servs of Indiana, Inc.*, 451 F.3d 424, 441-42 (7th Cir. 2006);  *E.S. v. Ind. School District, No. 196*, 135 F.3d 566. 568 (8th Cir. 1998); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1514, at fn.8 (10th Cir. 1991).  Moreover, since separate trials under in the same case do not individually produce final judgments, any attempt to apply collateral estoppel or issue preclusion to the remaining trial(s) is invalid under Rule 42(b).  *Monroig*, 351 F.3d at 560  (*citing NLRB v. Donna-Lee Sportswear Co.*, 836 F.2d 31, 33-34 (1st Cir. 1987)).

**C.    The Court Should Not Interpret the Judgment as Final Because Such an Interpretation Would Substantially Prejudice the Appellees**

The Betta Parties would suffer the ultimate prejudice if this Court were to somehow find that despite the Bankruptcy Court's intended ruling, the Judgment Confirming the Arbitration Award was a final judgment because the Betta Parties would not have their day in a court on the claims in their Amended Complaint. It was the Betta Parties that brought the underlying motion to amend the complaint to assert bailment and tort claims. Although the Agreement contained a clause providing for arbitration of the certain claims, the tort and bailment claims are not within the scope of that clause. The Betta Parties' Motion for Leave to Amend did not request a severance of claims pursuant to Rule 21, nor did DSS did request such a severance. In addition, the Bankruptcy Court, by its own admission and through the Amended Order, clearly did not intend the result of such a severance. It was only through a mistake that the written order dated October 20, 2006 referenced Rule 21 instead of Rule 42(b). Despite the Bankruptcy Court's holding that its order was not final, DSS is attempting to use this innocent mistake to deprive the Betta Parties of their right to have their day in court on the claims in the Amended Complaint. This conduct is unfortunately characteristic of the prejudicial tactics employed by DSS throughout this case. DSS should not be rewarded for such conduct.

Betta and DSS never agreed to arbitrate any and all claims, only those arising out of the arbitration agreement. The Bankruptcy Court has already held that the claims in the Amended Complaint are not arbitrable. Therefore, DSS would suffer little prejudice, if any, by being held to answer for its tortious conduct. Accordingly, this Court should affirm the Bankruptcy Court's ruling that the Arbitration Award and the Judgment Confirming the Arbitration Award are not final judgments.

## VIII.
## BETTA PARTIES' OPENING BRIEF ON CROSS-APPEAL

### A.    Did the Bankruptcy Court Err in Applying the Correct Standard of Issue Preclusion

Under the Federal Full Faith and Credit Statute, Federal Courts must give state judgments the preclusive effect that those judgments would enjoy under the law of the state in which the judgment was rendered. *See* 28 U.S.C. § 1738; *Far Out Productions, Inc. v. Oskar,* 247 F. 3d 986 (9th Cir. 2001). However, the arbitration award is technically not a "state judgment", because the award only became a judgment when it was confirmed by the Bankruptcy Court. In addition, the U.S. Supreme Court has ruled that "arbitral factfinding is generally not equivalent to judicial factfinding. ... "[t]he record of the arbitration proceedings is not as complete; the usual rules of evidence do not apply; and rights and procedures common to civil trials, such as discovery, compulsory process, cross-

examination, and testimony under oath, are often severely limited or unavailable."

*Matsushita Elec. Indus. Co., Ltd. v. Epstein,* 516 U.S. 367, 116 S.Ct. 873 (1996);

*McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799 U.S. (1984).

Therefore, the federal standard of issue preclusion is the appropriate standard that

must be applied in this case.  Because it appears that the Bankruptcy Court applied

either the California or Minnesota standard of issue preclusion, the Bankruptcy

Court has erred as a matter of law. Appellant's Appendix, Exhibit H, p.3, ln.6-11.

Moreover, the federal law of issue preclusion requires a full and fair opportunity to

litigate the issue in the previous action and generally refuses to apply issue

preclusion to default judgments, this Court should reverse the Bankruptcy Court's

ruling that the other these elements of the issue preclusion were met.  *In re Palmer*,

207 F.3d 566, 567 (9th Cir. 2000)("Although [plaintiff] Palmer's behavior may not

amount to a classic default, because he initiated the Tax Court proceeding, it is

close enough for present purposes).

**B.    Did the Bankruptcy Court Err in Finding that the Issues in the Amended Complaint are Identical to Issues in the Arbitration?**

**1.    The Issues Cannot be "Identical" Because The Warehouse Agreement (Which Was The Subject of the Arbitration) Required A More Difficult and More Particular Set of Issues and Burden Of Proof Than The Tort, Bankruptcy and Common Law Claims**

Even if the Bankruptcy Court correctly applied the proper standard of issue

preclusion, the Bankruptcy Court's ruling is erroneous and should be reversed

because the issues in court action are not identical to the issues in the arbitration

proceeding. In order for issue preclusion to apply, the issues in the current

proceeding must be identical to the issues in a prior proceeding. *Harmon v. Kobrin*

*(In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001). For the reasons stated

below, the arbitration award does not meet this standard because the issues were

not the same.

      **a.    The Warehousing Agreement Distinctly Defines the Claims and**
           **the Burden of Proof Required for a Breach of the Agreement**
           **and this Differs from the Standard of Proof for the Tort and**
           **Bankruptcy Claims**

The Warehousing Agreement which was the subject of the AAA arbitration,

states a specific set of requirements and burdens for Betta to prove a loss under the

contract. Section 5(a) (i)-(ii) requires Betta to follow certain steps to prove loss

over a specific amount and sets the proof standard as requiring Betta to reveal its

"acquisition cost as defined in Exhibit A". AApp, Exhibit "3" at Exhibit A,

Section 5. In fact, the contract not only provides a different standard of proof, it

provides a different cause of action than is currently before the Bankruptcy Court.

For example, Section 5(a) only allows Plaintiffs to hold DSS responsible for the

loss of goods only if Plaintiffs can prove more than one half of one percent of the

products managed by DSS in any three month quarter were lost, stolen or

damaged. *Id*. This is a major limitation on the claims and the remedies available

to Plaintiffs under the contract. By contrast, none of Plaintiffs' tort or other

common law claims require that they prove their damages by calendar quarter nor

that Plaintiffs prove their damages as a percentage of goods held by DSS. Thus,

under the contract, Plaintiffs would have been burdened with the showing the value

of all of Betta's goods held by DSS, not just those lost or stolen. Further, the

contract requires that damages be proven with a particular calendar quarter, while

the non-contract claims have no such limitation. *Id.* Moreover, the contract

requires showings of actual cost for Betta's goods, not just fair market value. *Id.*

Collectively, these requirements are much more demanding than anything in

Plaintiffs' Amended Complaint. Since the arbitrators were only arbitrating the

claim for breach of the warehousing agreement, this limitation on claims means

that the issues decided by the arbitrators cannot be "identical" to the claims and

issues now before this court in the Amended Complaint. This contractual proof

requirement is a much different proof standard than that which would be used on

the claims in the Amended Complaint.

      **b.**    **Minnesota and Federal Law Requires a New Hearing
Between the Parties if There is any Variation in the Burden
of Proof**

     Both Minnesota and federal law is very clear that where there is a different

burden of proof, there can be no collateral estoppel. The 2007 case of *State v.*

*Lemmer,* 736 N.W.2d 650 (Minn. 2007) highlights the established rule that

different burdens of proof mean that the issues cannot be identical. "Of course, the

application of collateral estoppel between criminal and civil cases may run afoul

of another element, the need that the issues be identical. *See Willems v. Comm'r of*

*Public Safety*, 333 N.W.2d 619, 621 (Minn. 1983). A finding of fact against the

driver in a civil case, to a fair preponderance of the evidence, would not be

identical to the issue in the criminal case, where the same fact must be proven

beyond a reasonable doubt. And conversely, the findings of fact inherent in a *not-*

*guilty* verdict in a criminal case would not be the identical issue when the same

facts are presented in a civil case, where they need only be proven by a fair

preponderance of the evidence." *See also U.S. Aluminum Corp./Texas v. Alumax,*

*Inc.,* 831 F.2d 878, 879-80 (9th Cir.1987), *cert. denied,* 488 U.S. 822, 109 S.Ct.

68, 102 L.Ed.2d 45 (1988) (collateral estoppel does not preclude claims that have

a different burden of proof than previously decided claims.)

The Minnesota courts have held that an issue is not the same if there is any

change in the burden of proof, and requires that the burden be exactly the same

with no variation whatsoever.  In fact, the Willem case held that when two

different statutes provided for an administrative hearing on the suspension of a

driver's license, the court found that although both statues provide for a hearing,

they "do not conflict because § 169.123 provides for a prerevocation hearing,

whereas § [171.19] provides for a post-revocation reinstatement hearing. It seems

clear from the statutes that a person is entitled to both hearings, although as a

practical matter the issues raised in a reinstatement hearing might well have been previously decided in a prerevocation hearing. The difference in the two hearings is that the state has the burden of going forward in a § 169.123 proceeding, whereas in a § 171.19 proceeding, the petitioner's license has been revoked and therefore he has the burden of showing error to entitle reinstatement."

*Willem* illustrates Minnesota's rule that a party is entitled to litigate an issue even if substantially similar issues have been litigated, and requires an exact, identical issue without the tiniest variation. Since the burden of proof in the contract and the burden of proof under the tort and bankruptcy issues are different, there can be no collateral estoppel. Therefore, as a matter of law, the issues in the arbitration and the Amended Complaint are not identical and issue preclusion cannot apply.

**C.    Did the Bankruptcy Court Err in Finding that Allegedly Identical Issues Were Actually Litigated and Necessary to the Arbitration Award?**

**1.    The Arbitration Award is Devoid of Facts Sufficient to Specifically Identify Which Issues Were Actually Determined or Necessary to the Award**

In applying issue preclusion to an arbitration proceeding, courts must examine the record, including the findings of the arbitrators, to determine whether a rational fact finder could have reached a conclusion based upon an issue other than an issue which the defendant seeks to preclude. *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1321 (9th Cir. 1992)(defendants did not introduce a sufficient

record of the arbitration by failing to introduce transcript of arbitration or provide district court with evidence submitted to arbitration panel); *See, e.g., Emich Motors Corp. v. Gen. Motors Corp.,* 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1950); *Ashe v. Swenson,* 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). When the issue for which preclusion is sought is the only rational one the fact finder could have found, then that issue is considered foreclosed, even if no explicit finding of that issue has been made. *Id. (citing Ashe,* 397 U.S. at 444).

Conversely, issue preclusion may not have preclusive affect unless the issue for which preclusion is sought is the only rational issue that the fact finder could have found.  The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment and must introduce a sufficient record to allow the trial court to pinpoint the exact issues previously litigated.  *Id.* (citing *United States v. Lasky,* 600 F.2d 765, 769 (9th Cir. 1979), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979)(by failing to specify the identity of issues to the trial court, the defendants failed to meet their burden of proving what issues were actually litigated in the prior administrative proceeding)).

Here, the Arbitration Award does not make any specific findings or identify which issues the Panel actually determined.  The Arbitration Award summarily states that "there is no credible evidence in the arbitration record to establish any of

the breaches of contract alleged in Claimants' Specification of Claims..." AApp,
Exhibit "6" at Exhibit D, p.8, ¶ 2.  It is completely unclear as to whether
Arbitration Panel determined whether or not DSS failed to turn over pre and/or
post petition goods or whether the Panel found that the Betta Parties did not
establish their burden to show the amount of goods that were lost or stolen by
calendar quarter or as a percentage of all the goods DSS managed as require.  It is
entirely possible and rational that the Panel's finding was based on the latter issues
and not on a finding that DSS turned over all of the goods to Betta.  The
Arbitration Award simply does not provide a sufficient record to allow the
Bankruptcy Court or any other court to pinpoint the exact issues previously
litigated or to determine which issues were necessary to the Arbitration Award.
Therefore, the Bankruptcy Court's findings must be reversed.

   **2.    The Arbitration Award is Based Entirely upon DSS's  Presentation
          of Evidence Without Anyone to Represent what Claims Were being
          Asserted Against DSS**

   The Betta Parties had clearly communicated to the arbitrators, and to the
counsel for DSS that there was no reason to hold a hearing on November 13, 2006
withdrew their arbitration demand.  The arbitrations held an evidentiary hearing on
November 13, 2006, despite the clear and unequivocal communications from the
Betta Parties.  Moreover, the Arbitration Award is nothing more than a one-sided
opinion based solely upon evidence produced by the defendant without anyone

present to present the Plaintiffs' claims.  Therefore, the issues in the arbitration were not actually litigated and were not necessary or essential to the Arbitration Award.

## IX.    CONCLUSION

For the foregoing reasons, the Bankruptcy Court clearly did not intend to sever the arbitration proceeding and the court action to create separate and distinct cases pursuant to Fed.R.Civ.P. 21.  Accordingly, the Court should affirm the portion of the Judgment Denying DSS's Motion to Dismiss which finds that the Arbitration and Judgment Confirming the Arbitration Award are not final for purposes of issue preclusion.  In addition, the Bankruptcy Court clearly erred in applying the proper standard of issue preclusion, in finding that the issues in the arbitration were identical to the issues in the Betta Parties' tort, bankruptcy and common law claims and that the issues were actually litigated and necessary to the arbitration claims.  Therefore, this Court should also enter an order reversing the portion of the Judgment Confirming the Arbitration Award which finds that the other elements of issue preclusion were met.

December 27, 2007                          BRINKMAN PORTILLO, PC

                                           _____
                                                Laura J. Portillo
                                           Attorneys Betta Products, Inc. and
                                           Dana McCurnin, Trustee of the Betta
                                           Products Litigation Trust

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of <u>Fed. R. App. P.</u>

<u>32(a)(7)(B)</u> because:

[**X** ] this brief contains 5,246 words and 465 lines, excluding the parts of the

brief exempted by <u>Fed. R. App. P. 32(a)(7)(B)(iii)</u>, *or*

[   ] this brief uses a monospaced typeface and contains [   ] lines of text,

excluding the parts of the brief exempted by <u>Fed. R. App. P. 32(a)(7)(B)(iii)</u>.

2.    This brief complies with the typeface requirements of <u>Fed. R. App. P.</u>

<u>32(a)(5)</u> and the type style requirements of <u>Fed. R. App. P. 32(a)(6)</u> because:

[ **X** ] this brief has been prepared using MS Word word processing software

in 14 point Times New Roman font, *or*

[   ] this brief has been prepared in a monospaced typeface using [   ] with [ ].

Dated:  December 27, 2007                    BRINKMAN PORTILLO, PC

                                             _____
                                             Laura J. Portillo
                                             Attorneys for Betta Products, Inc. and
                                             Dana McCurnin, Trustee of the Betta
                                             Products Litigation Trust

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES
     The undersigned certifies and declares as follows:

     I am employed in the City of Westlake Village and County of Los Angeles, in the State of California. I am over the age of 18 and not a party to the within action. I am employed by Brinkman Portillo, P.C. whose business address is 4333 Park Terrace Drive, Suite 205, Westlake Village, California 91361.

     On **December 27, 2007**, I served the following documents described as:

**APPELLEES' COMBINED BRIEF ANSWERING APPELLANT'S OPENING BRIEF AND OPENING BRIEF ON CROSS-APPEAL**

on the interested parties in this action
[X] by placing [X] the original [ ] a true copy thereof enclosed in sealed envelopes addressed as follows:

[X] **BY OVERNITE EXPRESS**                    [X] **U.S. MAIL**

Mitchell Greenberg                                  James A. Beitz
Abbey, Weitzberg, Warren, & Emery                   Hagerty Johnson & Beitz, PA
100 Stony Point Rd. #200                            701 Fourth Avenue South, Ste 700
P.O.Box 1566                                        Minneapolis, MN 55415
Santa Rosa, CA. 95401

     [X] I deposited such envelope in a United States Postal Service drop box at Westlake Village, California. The envelope was mailed with postage thereon fully prepaid.

     [X] I am "readily familiar" with the firm's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with a United States Postal Service drop box on that same day with postage thereon fully prepaid at Westlake Village, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit of mailing in affidavit.

     [X] (**Federal**) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **December 27, 2007,** at Westlake Village, California.

Madelynn Alford