EXHIBIT "2"

BPI 0006

Daren R. Brinkman (State Bar No. 158698)
Laura J. Portillo (State Bar. No. 186813)
BRINKMAN PORTILLO, PC
4333 Park Terrace Drive, Suite 205
Westlake Village, CA 91361
Telephone: (818) 597-2992
Facsimile: (818) 597-2998

Special Counsel to Betta Products Inc. and
the Betta Products Litigation Trust

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>BETTA PRODUCTS, INC., a California Corporation<br><br>Debtor.<br><br>BETTA PRODUCTS, INC., the Debtor in Possession,<br><br>Plaintiff,<br><br>v.<br><br>DISTRIBUTION SYSTEMS AND SERVICES, INC., aka DSS,<br><br>Defendant. | ) Bankruptcy Case No. 03-10925 AJ<br>)<br>) Chapter 11<br>)<br>) Adversary No. 05-01046<br>)<br>)<br>) **PLAINTIFFS' MOTION FOR: 1)**<br>) **MODIFICATION OF THE STAY**<br>) **PENDING ARBITRATION; 2) LEAVE**<br>) **TO AMEND THE COMPLAINT;**<br>) **MEMORANDUM IN SUPPORT**<br>)<br>) Date:   TBD<br>) Time:   TBD<br>) Place:   99 South E Street<br>)         Santa Rosa, CA<br>)<br>)<br>)<br>) |

TO THE HONORABLE ALAN JAROSLOVSKY, UNITED STATES BANKRUPTCY

JUDGE AND TO DEFENDANT NAMED HEREIN:

   **PLEASE TAKE NOTICE** that Betta Products, Inc., (the "Debtor" or "Betta") and the Betta

Products Litigation Trust (collectively "Plaintiffs"), through their attorneys of record, will and hereby

1

does move the Court for modification of the stay pending arbitration and for leave to amend the original complaint ("Motion For Modification of Stay And Leave To Amend"). This Motion is raised based on the following arguments:

1. Plaintiff has recently obtained additional information which supports claims in tort for conversion, bailment, fraud, negligent misrepresentation and negligence.

2. Defendant maintains that Plaintiffs' tort and bailment claims do not arise under the Agreement, and thus are not subject to arbitration.

3. Plaintiff has relied on upon Defendant's position and will be precluded from recovering on its tort and bailment claims.

4. Plaintiff will be substantially disadvantaged and harmed if Defendant is allowed to change its established position regarding arbitration of Plaintiffs' claims and this Court denies Plaintiffs' requested relief.

5. Plaintiffs' proposed amended claims arise out of the same transaction or occurrence as set forth in the original complaint and the interests of justice require the claims be heard.

This motion is based upon the Ex-Parte Motion for Order Shortening Time For Hearing On Motion for Modification of Stay Pending Arbitration; For Leave To Amend Complaint; Memorandum in Support; Plaintiffs' Motion For Modification Of Stay And Leave To Amend and the accompanying Memorandum of Points and Authorities; all pleadings and papers on file in this action; and upon such other matters as may be presented to the Court at the time of the hearing.

2

BPI 0008

**WHEREFORE,** Plaintiff respectfully requests that the Court grant Plaintiffs' motion for modification of the stay pending arbitration and for leave to amend the original complaint to include claims for conversion, bailment, fraud, negligent misrepresentation and negligence.

Respectfully Submitted,

DATED:  October 9, 2006

BRINKMAN PORTILLO, PC

By:_____s/ Laura J. Portillo_____

Laura J. Portillo

Special Counsel to Betta Products, Inc. and the Betta Products Litigation Trust

3

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................... 4

II.  FACTUAL AND PROCEDURAL BACKGROUND.............................................. 5

    A.   THE CHAPTER 11 PLAN OF REORGANIZATION................................. 5

    B.   THE BUSINESS RELATIONSHIP .............................................................. 6

    C.   THE ADVERSARY PROCEEDING AND ARBITRATION......................... 7

III. ARGUMENT............................................................................................................ 8

    A.   PLAINTIFFS' TORT AND BAILMENT CLAIMS DO NOT "ARISE UNDER"
        THE AGREEMENT AND ARE NOT SUBJECT TO THE ARBITRATION
        AGREEMENT..................................................................................................... 8

    B.   JUSTICE DEMANDS THAT DEFENDANT SHOULD BE ESTOPPED FROM
        CHANGING ITS ESTABLISHED POSITION REGARDING PLAINTIFFS'
        TORT AND BAILMENT CLAIMS ................................................................ 10

        1.   Defendant, With Full Knowledge Of The Detail Of The Arbitration Agreement, Argues
            That Plaintiffs' Tort And Bailment Claims Are Not Arbitrable And Thus Barred....... 10

        2.   Plaintiff Was Induced To Change Its Position Regarding Arbitration Of The Tort And
            Bailment Claims By Defendant's Motion To Dismiss ..................................... 11

        3.   Plaintiff Will Be Substantially Disadvantaged And Harmed If Defendant Changes Its
            Position That Plaintiffs' Tort And Bailment Claims Are Outside the Scope of The
            Arbitration Provision And This Court Denies Plaintiffs' Request For Relief............. 12

    C.   PLAINTIFFS' LEAVE TO AMEND THE COMPLAINT SHOULD BE GRANTED
        IN THE INTERESTS OF JSUTICE PURSUANT TO FEDERAL RULE OF
        CIVIL PROCEDURE 15 ................................................................................. 13

        1.   Plaintiff Meets The Ninth Circuit's Standard For Leave To Amend Pleadings.......... 13

            a.   Plaintiff Has Conversion Claims Against Defendant ................................... 14

                1.   Plaintiffs' Request For Leave To Amend Is Made In Good Faith............... 14
                2.   No Undue Delay Or Prejudice.................................................................... 14
                3.   The Amendment Is Not Futile ................................................................... 15
                4.   No Previous Amendments .......................................................................... 15

            b.   Plaintiff Has Bailment Claims Against Defendant ...................................... 15

                1.   Plaintiffs' Request For Leave To Amend Is Made In Good Faith............... 15
                 2.   No Undue Delay Or Prejudice.................................................................... 16
                3.   The Amendment Is Not Futile ................................................................... 17
                4.   No Previous Amendments .......................................................................... 17

i

BPE0010

    c.   Plaintiff Has Claims For Fraud and Negligent Misrepresentation Against Defendant ................................................................................................... 17

        1.   Plaintiffs' Request For Leave To Amend Is Made In Good Faith .............. 17
        2.   No Undue Delay Or Prejudice ............................................................. 18
        3.   The Amendment Is Not Futile .............................................................. 18
        4.   No Previous Amendments ................................................................... 19

    d.   Plaintiff Has A Claim For Negligence .......................................................... 19

        1.   Plaintiffs' Request For Leave To Amend Is Made In Good Faith .............. 19
        2.   No Undue Delay Or Prejudice ............................................................. 19
        3.   The Amendment Is Not Futile .............................................................. 20
        4.   No Previous Amendments ................................................................... 20

D.   Plaintiffs Proposed Amended Claims Are Not Barred By the Statute of Limitations ............................................................................................................... 20

   1.   The Statute Of Limitations Has Not Expired ....................................................... 20

      a.   Conversion, Fraud and Negligent Misrepresentation ......................................... 20

      b.   Negligence ............................................................................................. 21

   2.   All Of Plaintiffs' Claims Relate Back To The Original Complaint ............................ 21

IV.  CONCLUSION ................................................................................................................ 23

ii

# TABLE OF AUTHORITIES

**Statutes**

11 U.S.C.A. § 105 (2006) ...................................................................................................8

Cal. Civ. Proc. Code § 338 (West 2006) ......................................................................20, 21

Cal. Civ. Proc. Code § 339 (West 2006) ...........................................................................21

Fed.R.Civ.P. 15 ...........................................................................................................8, 13, 22

**Cases**

*AT&T Technologies v. Communications Workers*, 475 U.S. 643 (1986) ..............................8

*Dream Theater, Inc. v. Dream Theater*, 124 Cal.App.4th 547 (2004) ...............................8

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ..........................15

*J & K Painting Co., Inc. v. Bradshaw* 45 Cal.App.4th 1394 (1996) .................................10

*Johnson v. Buckley*, 356 F.3d 1067 (9th Cir. 2004) ........................................................13

*Kampsen v. County of Kandiyohi*, 426 N.W.2d 917 (1988) ...........................................16

*Lone Star Ladies Invest. Club v. Schlotzsky's Inc.*, 238 F.2d 363 (5th Cir. 2001)............13

*Longbottom v. Swaby*, 397 F.2d 45 (5th Cir. 1968)........................................................22

*Martell v. Trilogy Ltd.*, 872 F.2d 322 (9th Cir. 1989) .......................................................22

*McDaniels v. Gen. Ins. Co.*, 1 Cal.App.2d 454 (1934) .....................................................10

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983)........8

*Miller v. Rykoff-Sexton, Inc.*, 845 F2d. 209 (9th Cir. 1988)...........................................15

*Moore v. Baker*, 989 F.2d 1129 (11th Cir. 1993) ...........................................................13

*Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074 (9th Cir. 1990) ....................13

*Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 253 F.Supp. 359 (S.D.N.Y.1966)........9

*Synopsis, Inc. v. Magma Design Automation, Inc.*, WL 825277 (N.D.Cal. 2006)..............10

*Tozzi v. Lincoln Nat. Life Ins. Co.*, 103 F.2d 46 (9th Cir. 1939) .....................................10

*Union Pac. R. Co. v. Nevada Power Co.*, 950 F.2d 1429 (9th Cir. 1991) .........................14

*Wallinga v. Johnson*, 131 N.W.2d 216 (1964).................................................................16

iii

BPT 0012

# MEMORANDUM OF POINT AND AUTHORITIES

## I. INTRODUCTION

DSS is trying to use the arbitration process to shield themselves from liability for their tortious actions and deceitful conduct. After demanding arbitration of the disputes arising under the May 1, 1996 agreement between Betta and DSS ("Agreement"), Defendant now argues that Plaintiffs' claims for conversion and bailment cannot be heard by the arbitrator and must be dismissed. Plaintiffs' do not dispute that the conversion and bailment claims provide alternative theories of recovery and do not directly "arise under" the Agreement. Plaintiffs maintain the validity of the conversion and bailment claims, however, and reserve their rights to have the claims heard in Bankruptcy Court. In addition, Plaintiffs' have subsequently become aware of additional information, which if true, support claims in tort for fraud, negligent misrepresentation and negligence. Accordingly, Plaintiffs' hereby respectfully request that this Court:

1. modify the stay pending arbitration with respect to Plaintiffs' tort and bailment claims;

2. grant Plaintiffs leave to amend the original complaint to include claims for conversion, bailment, fraud, negligent misrepresentation and negligence; and

3. issue any other order or relief the Court determines just and proper.

Plaintiffs' requested relief is based on the following:

1. The parties do not dispute that arbitration is the improper forum for Plaintiffs' tort and bailment claims.

2. Defendant is using the arbitration to shield itself from liability for its tortious and deceitful conduct.

4

RP1 0013

3.   Plaintiff will suffer substantial disadvantage and harm and will be without a forum to have its claims heard if Defendant is allowed to change its position regarding the scope of the arbitration provision and if this Court fails to grant the requested relief.

4.   The prejudice Plaintiff will suffer if it is not allowed to pursue any and all of their claims outweighs any prejudice that may be suffered by Defendants in preparing a defense to the amended causes of action.

5.   Plaintiff is entitled to argue alternative theories of liability theories of conversion, bailment, fraud, negligent misrepresentation and negligence.

6.   The claims Plaintiff seeks to add are rooted in the same transactions or occurrences complained of in the original complaint.

7.   The causes of action sought to be amended have significant likelihood of success on their merits.

8.   Plaintiffs' claims are not barred by the statute of limitations.

## II. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

### A.   THE CHAPTER 11 PLAN OF REORGANIZATION

Betta filed a voluntary Chapter 11 petition with this Court on April 15, 2003 (the "Petition Date"). The Chapter 11 Plan (hereafter "Plan") was confirmed on May 17, 2004. In the Plan, on page 7, section 7.04(c), the Debtor reserves the rights to pursue "claims and rights of set off against Distribution Systems & Services Corporation arising from the warehousing agreement dated May 1, 1996, payments, overcharges, lost and damaged goods and claims assigned pursuant to the Compromise Agreement." Pursuant to the Plan and Compromise Agreement Wells Fargo assigned its claims with respect to abandoned inventory back to Betta. Betta is also the beneficiary of the claims because there is no provision in the Plan to allocate the proceeds from the claims to another

5

PLAINTIFFS' MOTION FOR: 1) MODIFICATION OF THE STAY PENDING ARBITRATION; 2) LEAVE TO AMEND THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT – ADVERSARY NO. 05-01046

BPT 0014

1    entity. The Plan also gave Betta any and all recovery from the successful litigation of the claims. A

2    final decree was entered and this case was ordered closed February 28, 2006.

3    **B.    THE BUSINESS RELATIONSHIP**

4

5        Betta and DSS entered into the agreement dated May 1, 1996 ("Agreement"). For a copy of

6    the Agreement, please see the Declaration of Christina Erickson ("Erickson Decl."), accompanying

7    this Motion. The Agreement provided that DSS was obligated to keep records of the goods Betta

8    delivered to DSS and of the goods Betta shipped out of their warehouse. See Erickson Decl., Exhibit

9    A at §§ 2(a)(i)(2)-6, 2(a)(iii)-(iv). Pursuant to the Agreement DSS received incoming shipments of

10   Betta's products, produced reports stating the goods that arrived and the quantities, stored the goods,

11   physically packed the goods when Betta gave DSS orders to ship the goods, and produced reports as

12   to the goods and quantities that were shipped. Betta received the reports and records from DSS in

13   both paper and electronic form and relied upon DSS to keep accurate records because Betta did not

14   have possession of the goods.

15

16       DSS stands to profit from its own inaccurate record keeping. DSS charged Betta monthly

17   fees based upon the number of cartons that were shipped into the warehouse, the cubic feet of storage

18   space the goods occupied in the warehouse, and for handling, packing and shipping the goods. DSS

19   also had the unilateral ability to change its perpetual inventory reports to hide mistakes such as

20   damaging, destroying, losing or suddenly finding Betta's goods that it previously had lost.

21

22       In July 2003, Betta abandoned inventory in DSS's warehouse in which Wells Fargo Bank

23   held a security interest. DSS was instructed by both Betta and DSS to segregate the abandoned

24   ("Pre-Petition") inventory from the remaining ("Post-Petition") inventory and to hold it for Wells

25   Fargo. When Wells Fargo requested release of the inventory to its buyer, the amount of inventory

26

27

28

6

PLAINTIFFS' MOTION FOR: 1) MODIFICATION OF THE STAY PENDING ARBITRATION; 2) LEAVE TO AMEND
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT – ADVERSARY NO. 05-01046

BPT 0015

1  turned over by DSS was short.  DSS failed turn over the additional inventory upon Wells Fargo's

2  request.

3

4  In May 2004, Plaintiff terminated the Agreement and moved its Post-Petition inventory from

5  DSS's warehouse.  DSS failed to turnover all of Plaintiffs' inventory just as it did with Wells Fargo.

6  On July 20, 2004, Betta received a Notice of Warehouseman's Lien Foreclosure Sale notifying it that

7  either Betta or Wells Fargo may have an interest in inventory formerly owned by Betta that was to be

8  sold via a private sale due to a default in payment of storage fees.  Some of this inventory was sold in

9  the private sale.

10

11  The inventory warehoused by DSS which was not turned over to Wells Fargo and Plaintiff

12  was shown on Defendant's inventory records to be in the possession of DSS.  Despite its duty to keep

13  records regarding the shipments in and out of the warehouse, DSS disavows its records claiming they

14  are inaccurate and unreliable.

15  **C.    THE ADVERSARY PROCEEDING AND ARBITRATION**

16

17  On or about April 13, 2005, Betta, through its former counsel, filed an adversary complaint to

18  recover property of the debtor and to recover damages.  Defendant filed a motion to compel

19  arbitration and a hearing was held on June 24, 2005.  On July 11, 2005, the Court issued an order

20  ("Order") granting Defendant's motion and stayed the action pending arbitration.  Plaintiff, through

21  its new counsel filed its Specification of Claims Against DSS ("Betta's Specification of Claims")

22  with the American Arbitration Association ("AAA"), enumerating its claims including alternative

23  theories of recovery for conversion and bailment.  On September 15, 2006, DSS filed its Motion to

24  Dismiss All Or Part of Betta's Claims Against DSS with the arbitrators.

25

26

27

28

7

PLAINTIFFS' MOTION FOR: 1) MODIFICATION OF THE STAY PENDING ARBITRATION; 2) LEAVE TO AMEND
COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT – ADVERSARY NO. 05-01046

BPT 0016

## III.  ARGUMENT

This Court has the authority pursuant to the Bankruptcy Code ("Code) to grant Plaintiffs' request for modification of the stay of this action.  Section 105(a) of the Code provides in pertinent part that, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C.A. § 105(a) (2006).  The Court's Order recognizes such authority because it provides that the Adversary Proceeding has been stayed "pending disposition of the arbitration, or *pending further order of this Court*." (emphasis added).  The Court clearly has reserved its right to make additional orders within its authority and as it deems necessary.

The Court has the authority to grant Plaintiffs' request for leave to amend the complaint pursuant to the Federal Rules of Civil Procedure (Fed.R.Civ.P.).  Fed.R.Civ.P. 15, incorporated into bankruptcy cases by Rule 7015 of the Federal Rules of Bankruptcy Procedure, provides that a party may amend the complaint by leave of court and such leave "shall freely be given give when justice so requires."  Fed.R.Civ.P. 15(a).

### A.  PLAINTIFFS' TORT AND BAILMENT CLAIMS DO NOT "ARISE UNDER" THE AGREEMENT AND ARE NOT SUBJECT TO THE ARBITRATION AGREEMENT

The Supreme Court has held that arbitration is a matter of contract and a party cannot be required to arbitrate a dispute if he as not agreed to do so.  *Dream Theater, Inc. v. Dream Theater*, 124 Cal.App.4th 547, 552 (2004)(citing *AT&T Technologies v. Communications Workers*, 475 U.S. 643, 648 (1986)).  The Court has also held that the question of whether a dispute is arbitrable is for the court's determination unless the parties "clearly and unmistakenly provide otherwise".  *Id.*  In making the determination of whether an arbitration agreement reaches a particular dispute, the court will look to the language of the agreement.  *See generally Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983).  The Ninth Circuit has held that as arbitration

8

BIZ1 0017

1   provision providing arbitration of disputes "arising under" or "arising hereunder" are narrow and

2   should be interpreted accordingly. *Id.* at 1464 (citing *Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner &*

3   *Smith, Inc.*, 253 F.Supp. 359, 364 (S.D.N.Y.1966)).

4   

5        In the instant case, Section 19 of the Agreement provides that "any disagreement or dispute

6   *arising under* this Agreement between the parties may be submitted by either party to binding

7   arbitration…" (emphasis added)  See Erickson Decl., Exhibit A at § 19.  In accordance with the

8   Ninth Circuit's holding the arbitration provision between Plaintiff and Defendant should be given a

9   narrow scope.

10       Defendant DSS initially demanded arbitration of the claims in Plaintiffs' original complaint.

11  However, through DSS's Motion to Dismiss filed with the arbitrators on September 26, 2006,

12  Defendant now argues that Plaintiffs' claims for bailment and conversion should be dismissed from

13  the arbitration because they are not within the scope of the arbitration agreement.  The basis for the

14  argument is that because conversion is a tort and because both bailment and conversion are

15  alternative theories of recovery to the breach of contract claims, they do not "arise under" Agreement.

16  Since Defendant takes the position that Plaintiffs' tort and bailment claims are not within the narrow

17  scope of the arbitration agreement, Plaintiff maintains the validity of these claims and requires a

18  forum in which they can be heard.  In addition to the tort and bailment claims, Plaintiff has obtained

19  information through the discovery process which, if true, supports additional claims for fraud and

20  deceit, negligent misrepresentation and negligence.  Because these claims are also tort claims and

21  provide alternative theories of recovery, they too fall outside the scope of the arbitration agreement.

22  In order to provide a forum for Plaintiff to raise its alternative theories of recovery and seek prompt

23  resolution of its claims on the merits, Plaintiff hereby respectfully requests that this Court modify the

24  

25  

26  

27  

28  

9

BPI 0018

stay pending arbitration, grant Plaintiff leave to amend its complaint and allow Plaintiff proceed with the proposed amended complaint attached hereto as Exhibit A and incorporated herein.

**B.    JUSTICE DEMANDS THAT DEFENDANT SHOULD BE ESTOPPED FROM CHANGING ITS ESTABLISHED POSITION REGARDING PLAINTIFFS' TORT AND BAILMENT CLAIMS**

Defendant is barred by quasi-estoppel from challenging the position that Plaintiffs' tort and bailment claims are not within the scope of the arbitration provision. In California, a person with full knowledge of the details of an agreement or transaction, shall not be permitted to act in a manner which is inconsistent with his former position or conduct to the injury of another.  To constitute quasi-estoppel the act of the party against whom the estoppel is sought must have gained some advantage for himself or produced some disadvantage to another; the person invoking the estoppel must have been induced to change his position[.]  *Synopsis, Inc. v. Magma Design Automation, Inc.*, WL 825277 (N.D.Cal. 2006) (citing *Tozzi v. Lincoln Nat. Life Ins. Co.*, 103 F.2d 46, 52 (9th Cir. 1939) (quoting *McDaniels v. Gen. Ins. Co.*, 1 Cal.App.2d 454, 459 (1934))).

**1.    Defendant, With Full Knowledge Of The Detail Of The Arbitration Agreement, Argues That Plaintiffs' Tort And Bailment Claims Are Not Arbitrable And Thus Barred**

Plaintiff is especially concerned that Defendant will attempt to oppose this Motion by reversing its current position and claiming that Plaintiffs' tort and bailment claims are now with the arbitration provision and should be arbitrated.  Defendant should not be allowed to do so.  A party's concession in a pleading is binding as a judicial admission. *J & K Painting Co., Inc. v. Bradshaw*, 45 Cal.App.4th 1394, 1402 (1996).

In this case, Defendant initially demanded arbitration of the disputes between Betta and DSS. Plaintiff did not oppose Defendant's motion to compel arbitration.  However, after learning that Plaintiff alleged alternative theories of recovery for conversion and bailment, Defendant has changed

10

PLAINTIFFS' MOTION FOR: 1) MODIFICATION OF THE STAY PENDING ARBITRATION; 2) LEAVE TO AMEND COMPLAINT: MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT – ADVERSARY NO. 05-01048

BBT 0019

its position. Defendant, with full knowledge of the facts regarding the arbitration provision now argues that the conversion and bailment claims are not within the arbitration agreement and, therefore, cannot be arbitrated. Defendant's argument was clearly for the purpose of gaining an advantage and producing a disadvantage for Plaintiff in order to avoid liability for its tortious conduct.

**2.    Plaintiff Was Induced To Change Its Position Regarding Arbitration Of The Tort And Bailment Claims By Defendant's Motion To Dismiss**

Plaintiff was induced to change its position based on DSS's Motion To Dismiss because of its concern that the arbitrator could decline to hear Plaintiffs' claims and Plaintiff would be left without a forum for its tort and bailment claims. Once it became apparent that Defendant was challenging the scope of the arbitration provision with respect to Plaintiffs' tort and bailment claims, it also became evident that Plaintiff could be without a forum to have those claims heard. Accordingly, Plaintiff respectfully submits this Motion to modify the stay pending arbitration and seeks to leave of this Court to amend the original complaint in accordance with the proposed amended complaint attached hereto as Exhibit A.

Plaintiff has also obtained additional information including reports and records which supports additional claims in tort claims for fraud, negligent misrepresentation and negligence. See Erickson Decl. at ¶¶ 10-13. Although Defendant had a duty under the Agreement to keep records of the goods Betta delivered to DSS and goods Betta shipped out of the warehouse, it now disavows its records. The only figures which DSS maintains are valid are physical inventory counts obtained as of December 31, 2002. Accordingly, DSS admits to the inaccuracy and unreliability and disavows its records regarding transfers into and out of the warehouse beginning January 1, 2003.

11

BPI 0020

If the arbitrators accept Defendant's argument and decline to hear Plaintiffs' conversion and bailment claims, they are also substantially likely to decline to hear Plaintiffs' fraud, negligent misrepresentation and negligence claims. However, Plaintiffs' will not know of the arbitrators' decision on this issue until the arbitration. Accordingly, Defendant should be barred from contradicting its claim that Plaintiffs' tort and bailment claims are within the arbitration agreement.

3. **Plaintiff Will Be Substantially Disadvantaged And Harmed If Defendant Changes Its Position That Plaintiffs' Tort And Bailment Claims Are Outside the Scope of The Arbitration Provision And This Court Denies Plaintiffs' Request For Relief**

Plaintiff will suffer substantial damages and harm if Defendant is allowed to change its position on a whim and argue that the stay should not be modified because the claims are in fact arbitrable or if the Court denies Plaintiffs' requested relief. Plaintiff has invested substantial time, effort and property in initiating the adversary proceeding to pursue claims against DSS which had failed to turnover property belonging to the Plaintiff. Defendant initially demanded arbitration of the disputes, but eventually decided that some of the Plaintiffs' claims can not be arbitrated. Plaintiff will not know whether the arbitrators will hear all of Plaintiffs' claims until the arbitration. The arbitrators could decline to hear Plaintiffs' claims because of its reliance on Defendant's current position on the scope of the arbitration provision.

If Defendant is allowed to contradict its current position and claim that Plaintiffs' tort and bailment claims are arbitrable, Plaintiff will be without a forum to have its tort and bailment claims heard. Similarly if this Court fails to grant Plaintiffs' request for modification of the stay and for leave to amend the original complaint and the arbitrators decline to hear Plaintiffs' claims, Plaintiff will also be without a forum to hear its claims. Given the time and resources invested in this litigation, and to avoid being left without a forum to hear its claims, Plaintiff respectfully requests

this Court bar Defendant from changing its position on the scope of the arbitration provision and this Court grant Plaintiffs' requested relief.

**C.    PLAINTIFFS' LEAVE TO AMEND THE COMPLAINT SHOULD BE GRANTED IN THE INTERESTS OF JSUTICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15**

Pursuant to Rule 15 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), incorporated into bankruptcy cases by Rule 7015 of the Federal Rules of Bankruptcy Procedure, Plaintiff respectfully moves for leave to amend the complaint to add claims for conversion, bailment, fraud, negligent misrepresentation and negligence. Because the foregoing causes of action stem from the same transactions and occurrences referenced in the original complaint, they are simply alternative theories of recovery that relate back to the original complaint and, therefore, Plaintiff should be allowed to raise them. The proposed first amended complaint is attached hereto as Exhibit A and is incorporated herein by reference.

**1.    Plaintiff Meets The Ninth Circuit's Standard For Leave To Amend Pleadings**

Fed.R.Civ.P. 15(a) states that "leave [to amend a pleading] shall be freely given when justice so requires." To determine when "justice so requires" the Ninth Circuit takes five factors into account: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1078 (9th Cir. 2004). In applying this test, courts have held that there is a strong federal policy in favor of granting leave to amend pleadings with "extraordinary liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *See also Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993) ("a justifying reason must be apparent for denial of a motion to amend"). Such a policy is "a necessary companion to notice pleading and discovery." *Lone Star Ladies Invest. Club v. Schlotzsky's Inc.*, 238 F.2d 363, 367 (5th Cir. 2001). Moreover, amendments adding claims are to be

13

RPT 0022

more freely granted than amendments adding parties. *Union Pac. R. Co. v. Nevada Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991) ("amendments seeking to add claims are to be granted more freely than amendments adding parties"). A combination of the above factors weighs in favor of granting the Plaintiffs' motion for leave to amend the original complaint. Accordingly, Plaintiff respectfully requests the Court for leave to amend the original complaint with the following causes of action:

     **a.**     **Plaintiff Has Conversion Claims Against Defendant**

     **1.**    **Plaintiffs' Request For Leave To Amend Is Made In Good Faith**

Although the original complaint does not specifically use the label conversion, the necessary elements of conversion are present in the original complaint and Defendant was properly placed on notice that it would be required to defend the allegations. The original complaint specifically alleges that "Pursuant to a written warehouse agreement, Defendant warehoused inventory of the Plaintiff from and after May 1, 1996. See original complaint ("Cmplt") at at ¶ 3. Upon request for release or turnover of the pre-petition inventory by Wells Fargo and of the post-petition inventory by Plaintiff, Defendant failed, refused or was unable to turn over the inventory. Cmplt at ¶¶ 6-8. Moreover, Plaintiffs First Claim For Relief is titled "Turnover of Property" and states that "Despite Demand, the Defendant has failed and refused to turn over post petition inventory of the Plaintiff...Said inventory is property of the Plaintiff." Cmplt at ¶¶ 11-12. Accordingly, the conversion claim is an alternative theory to Plaintiffs' First Claim For Relief. Plaintiff also identified the conversion claim in the Specification of Claims filed with the AAA and served on the Defendant. The fact that the elements of conversion are alleged in the original complaint, combined with the fact that Plaintiff also asserted a cause of action for conversion in the Specification of Claims demonstrates the claim is brought in good faith and that Defendant has had proper notice of the claim.

     **2.**    **No Undue Delay Or Prejudice**

14

1    The "prejudice" analysis is the "touchstone of the inquiry under rule 15(a)." *Eminence*

*Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Plaintiff now seeks to amend the

3    original complaint because Plaintiff has developed a better understanding of the inventory processes

4    and procedures between Betta and DSS through and because it has now become apparent amendment

5

6    is necessary. After the action was stayed pending arbitration in July 2005, Plaintiffs filed the

7    Specification of Claims with the AAA setting forth its causes of action against DSS. The

8    Specification of Claims expressly identifies conversion as an alternative theory of recovery to Claims

9    Number One and Two. See Erickson Decl., Exhibit B at ¶¶ 42, 53. Subsequently, Defendant filed its

10    Motion To Dismiss with the AAA on September 15, 2006. At that time the need to amend the

11    complaint to clarify Plaintiffs' alternative theory of conversion first became apparent. Because the

12    complaint to clarify Plaintiffs' alternative theory of conversion first became apparent. Because the

13    Defendant was properly placed on notice of the conversion claim by the allegations in the original

14    complaint and the Specification of Claims, Plaintiffs' would suffer far greater prejudice if the request

15    for leave to amend is denied than Defendant would suffer in having to defend the claim.

16

17    ### 3. The Amendment Is Not Futile

18    A proposed amendment is futile only if no facts could be proven under the amendment which

19    would constitute a valid claim or defense. *Miller v. Rykoff-Sexton, Inc.*, 845 F2d. 209, 214 (9th Cir.

20    1988). Because the facts indicate that both Wells Fargo and Plaintiff requested return of their

21    inventory and Defendant failed to turnover inventory there is a significant likelihood that Plaintiff

22    will be successful on the conversion cause of action.

23

24    ### 4. No Previous Amendments

25    There have been no previous amendments to the Complaint.

26    ### b. Plaintiff Has Bailment Claims Against Defendant

27    ### 1. Plaintiffs' Request For Leave To Amend Is Made In Good Faith

28

15

BP 0024

"Three elements are necessary in order to create a bailment relationship: (1) delivery without transfer of ownership; (2) implied or express acceptance; and (3) an express or implied agreement that the goods be returned." *Kampsen v. County of Kandiyohi*, 426 N.W.2d 917, 920 (1988) (*See, e.g., Wallinga v. Johnson*, 131 N.W.2d 216, 218 (1964)).

Similar to Plaintiffs' claim for conversion, the Complaint alleges the necessary elements of bailment, without expressly using the bailment label. In the Complaint, Plaintiff alleges that "Pursuant to a written warehouse agreement, Defendant warehoused *the inventory of Plaintiff* from and after May 1, 1996." (emphasis added). Cmplt at ¶ 3. This allegation satisfies the first two elements of bailment. It alleges delivery of the inventory without transfer of ownership because defendant warehoused Plaintiffs' inventory. It also alleges that there was express acceptance of the inventory and business relationship because there was a written warehouse agreement. The third element, agreement that the goods be returned, is implied in the original complaint in that both Wells Fargo and Plaintiff requested turnover of their inventory and Defendant turned over some of the inventory but failed to turnover all of the inventory. Cmplt at ¶¶ 6-8. This implicitly acknowledges what the Agreement makes clear, that it was agreed that the Plaintiff owned the inventory and that it would be returned to Plaintiff at the termination of the Agreement. Decl of Christina Erickson, Exhibit A at section 9. Plaintiff also expressly indicated the bailment claim it its Specification of Claims. The fact that the elements of bailment are alleged in the original complaint, combined with the fact that Plaintiff also asserted bailment in the Specification of Claims as an alternative theory of recovery demonstrates the claim is brought in good faith and that Defendant has had proper notice of the claim.

## 2.    No Undue Delay Or Prejudice

16

PLAINTIFFS' MOTION FOR: 1) MODIFICATION OF THE STAY PENDING ARBITRATION; 2) LEAVE TO AMEND THE COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT – ADVERSARY NO. 05-04046

BPI 0025

The same analysis in section A.1.b. for conversion discussed *infra*, applies here. Because the action was stayed pending arbitration, the need to amend the original complaint was not apparent until just recently when Defendant filed its Motion to Dismiss with the arbitrators. In addition, because the Defendant was properly placed on notice of the with the elements bailment by the allegations in the original complaint and the Specification of Claims, Plaintiffs' would suffer far greater prejudice if the request for leave to amend is denied than Defendant would suffer in having to defend the claim.

### 3.  The Amendment Is Not Futile

Plaintiffs' bailment claim is not futile. As demonstrated in section 2.d. above, Plaintiff meets all the elements to make out a prima facie case for bailment under Minnesota law.

### 4.  No Previous Amendments

There have been no previous amendments to the Complaint.

### c.  Plaintiff Has Claims For Fraud and Negligent Misrepresentation Against Defendant

### 1.  Plaintiffs' Request For Leave To Amend Is Made In Good Faith

Since the time when Plaintiffs' former counsel filed the original complaint, Defendant has provided reports which amount to an admission that Defendant failed to turnover all Plaintiffs inventory. Plaintiff has reason to believe that the prior reports and files provided by DSS to Plaintiff intentionally, recklessly or without reasonable grounds for believing their representations were true, misstated transfers of inventory with the intent that Betta rely on their representations because DSS stood to profit from inaccuracies in the accounting and reporting. DSS stands to gain additional unearned fees if it over reported shipments into the warehouse and underreported shipments out. DSS also had the ability to change its reporting to reflect what it wanted. In support of this claim Plaintiff will also allege that Defendant charged and received rent for storage and handling fees for

17

goods that it failed to deliver to Wells Fargo and Betta. In addition, Plaintiffs' counsel has also learned that the Plaintiffs' inventory and billing system substantially relied on the same records and data provided by Defendant, which Defendant now disavows, to adjust its billing and inventory systems. Accordingly, based on this information Plaintiffs' request is in good faith in pursuit of resolving this dispute on the merits of all of Plaintiffs' claims.

### 2.    No Undue Delay Or Prejudice

Plaintiff now appears before the Court requesting leave to amend the Complaint to include fraud and negligent misrepresentation because Plaintiff did not feel at that time it had the necessary factual support for such claims initially and preferred to develop the facts before bringing such a claim. It was not until the discovery process that Plaintiffs began to develop a thorough understanding of the inventory, accounting and billing procedures of the Defendant and obtained additional information, which in Plaintiffs' estimation supports the fraud and negligent misrepresentation claims. If Plaintiffs' request for leave to amend is denied, the prejudice which the Plaintiff will suffer will vastly exceed the prejudice Defendant will suffer as a result of having to defend the claims. Plaintiff has developed its case through the discovery process and had developed alternative theories based on the information obtained therein. The fact that the support for Plaintiffs' claims was not obtained until the discovery process should not preclude Plaintiffs trying the issues on the merits.

### 3.    The Amendment Is Not Futile

Plaintiffs' claims for fraud and negligent misrepresentation are not futile because there are facts which support the claims. Defendant, by admission through the Inventory Transactions Report dated April 18, 2006, reflecting the ending balances of Plaintiffs' inventory, demonstrates their prior figures and submissions were inaccurate. Furthermore, Defendant was providing tracking, reporting

18

RPT 0027

and accounting of inventory to Plaintiff electronically and knew or should have known that Plaintiff was relying on the information provided by Defendant. Plaintiff did rely on the information from Defendant and, as a result, was injured in because it was unable to use inventory which it was misled to believe was non-existent. Finally, Defendant stands to benefit from inaccurate record keeping and reporting in the form of increased rents and handling fees.

### 4.    No Previous Amendments

There have been no previous amendments to the Complaint.

### d.    Plaintiff Has A Claim For Negligence

### 1.    Plaintiffs' Request For Leave To Amend Is Made In Good Faith

Similar to the analysis in section III.A.1.a above, the original complaint alleges the elements of a common law action for negligence. Plaintiffs' Third Claim For Relief states that:

> Defendant is responsible for the storage and accounting of Plaintiffs' inventory maintained at its warehouse. Defendant breached the terms of the warehouse agreement when it failed to adequately safeguard and account for the inventory in its possession. Defendant was negligent in failing to safeguard and protect the inventory in its possession. As a direct and proximate result of the said failure of Defendant, Plaintiff has suffered damage…

Cmplt at ¶¶ 16-19. As a result, Plaintiffs' request to amend the complaint in this regard is for the purpose of clarifying the language to specifically identifying claims subsumed within its language. The fact that the elements of negligence are already present in the original complaint demonstrates that Plaintiffs' request is in good faith.

### 2.    No Undue Delay Or Prejudice

Plaintiffs' decision to clarify and amend the complaint at this time results from a more thorough understanding of the inventory processes and procedures obtained through investigation of numerous records and reports obtained during the discovery process. Plaintiff could not amend the

19

BPI 0028

original complaint until it had a chance to investigate the volumes of reports and records provided by both Plaintiffs and Defendants. Furthermore, because Plaintiffs is merely clarifying the elements which are already included in the original complaint, the prejudice that Plaintiff will suffer if leave to amend is denied is so grossly disproportionate to the prejudice that Defendants will bear in preparing a defense against the claim that justice simply requires that leave be freely given here.

### 3.    The Amendment Is Not Futile

Plaintiffs' request for amendment to clarify its negligence claim is anything but futile. The facts indicate that Defendant had a duty to properly care and account for Plaintiffs' property. Plaintiffs' breached that duty by failing to turnover all of the pre-petition inventory to Wells Fargo's buyer and by failing to turnover all of the post petition inventory to Plaintiff upon its request. As a result, Plaintiffs' were damaged in the amount of the shorted inventory.

### 4.    No Previous Amendments

There have been no previous amendments to the Complaint.

### D.    Plaintiffs Proposed Amended Claims Are Not Barred By the Statute of Limitations

#### 1.    The Statute Of Limitations Has Not Expired

##### a.    Conversion, Fraud and Negligent Misrepresentation

Plaintiffs' claims for conversion, fraud and negligent misrepresentation are not barred by the statute of limitations because limitation period covering these claims is three years. Cal. Civ. Proc. Code § 338 (West 2006). The three year limitation period of section 338 extends to:

> (c) An action for taking, detaining or injuring any goods or chattels... (d) An action for relief on the ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved part, of the facts constituting the fraud or mistake.

20

RPT 0029

1     *Id.* at §§ 338(c)-(d). Plaintiff reasonably could not have been aware that it was being injured by

Defendant's conduct until it terminated the Agreement with Defendant and requested return of its

3     Inventory. Plaintiff did not terminate the Agreement with Defendant until May 2004. Per the

4

Agreement Defendant was entitled to maintain possession of Plaintiffs' goods until that time,

5

6     therefore, there was no conversion nor breach of the bailment until Plaintiff demanded return of its

7     goods and Defendant refused. Similarly, Plaintiff could not have reasonably been on notice to

8

inquire about possible negligence or negligent misrepresentation until it became aware that

9

Defendant would not or could not return its inventory. Therefore, because the earliest possible date

10

11     Plaintiff could have discovered it was being harmed by Defendant's conduct was May 2004 and the

12     statute provides for a three year limitation period, the statute has not yet expired with respect to

13     claims for conversion, fraud, and negligent misrepresentation.

14

        **b.**    **Negligence**

15

16        The statute of limitations for a negligence cause of action falls under California Civil

17     Procedure Code Section 339 which provides a limitation period of two years. Cal. Civ. Proc. Code §

18     339(1) (West 2006).

19

       As discussed in section C.1.d.1. above, Plaintiffs' request to amend the complaint to include

20

negligence is not really a request to add a new claim but is a request to isolate the elements under a

21

22     heading titled negligence. Because all of the elements of negligence were alleged in the original

23     complaint Defendant was put on notice of Plaintiffs' claim for negligence. In addition, Plaintiff

24     could not reasonably have been on notice of Defendant's conduct until it demanded return of the

25

goods in May 2004. Therefore, the Court should find that Plaintiffs' claim for negligence was timely

26

filed within the two year limitation period with the original complaint on April 13, 2005.

27

28       **2.**     **All Of Plaintiffs' Claims Relate Back To The Original Complaint**

BPI 0030

1    Rule 15(c) of the Federal Rules of Civil Procedure provides that whenever the claim or

defense asserted in an amended pleading arose out of the conduct, transaction or occurrence set for or

3    attempted to be set forth in the original pleading, the amendment relates back to the date of the

4    original proceeding. Fed.R.Civ.P. 15(c)(2). According to the Ninth Circuit, claims arise out of the

5    same transaction or occurrence where the essential transaction set forth in the original pleading

6    provided the defendant with 'fair notice that litigation is arising out of a specific factual situation'."

7    *Martell v. Trilogy Ltd.*, 872 F.2d 322, 326 n. 7 (9th Cir. 1989) (citing *Unicare, Inc. v. Thurman*, 97

8    F.R.D. 1 (W.D.N.Y. 1982) (quoting *Longbottom v. Swaby*, 397 F.2d 45, 48 (5th Cir. 1968))).

9    

10    

11    In this case, the essential transaction alleged in the original complaint clearly put plaintiff on

12    notice that litigation was arising out of the business relationship between Plaintiff and Defendant.

13    The essential transaction as alleged was that Defendant, through its business relationship and

14    Agreement with Plaintiff maintained duties to warehouse and safeguard Plaintiffs' inventory,

15    maintain inventory records and receive and ship the inventory of the Plaintiff. Further, Defendant

16    failed to satisfy it duties including to the failure to keep accurate inventory records, negligently failed

17    to safeguard Plaintiffs' inventory, failed return inventory which belonging to Plaintiff or Wells Fargo

18    and charged for services not provided and overcharged for services which it did provide. Plaintiffs'

19    proposed claims of conversion, bailment, fraud, negligent misrepresentation and negligence all stem

20    from this same transaction and are alternative theories of relief. In addition, to being put on notice

21    based on the allegations in the original complaint, Defendant was also put on notice of Plaintiffs'

22    claims of conversion and bailment because they are specifically referenced in Plaintiffs' Specification

23    Of Claims And Defenses Against DSS filed and with the AAA. Defendant has addressed those

24    

25    

26    claims in its Motion To Dismiss All Or Part Of Betta's Claims but never challenged the validity of

27    the claims or never indicated they were barred by the statute of limitations. Therefore, Plaintiffs'

28    

22

BPI 0031

1    claims relate back to the original complaint and should be considered timely filed within the statute

2    of limitations.

3

4                                    IV. **CONCLUSION**

5        Plaintiff does not dispute Defendant's claim that Plaintiffs' tort and bailment claims are not

6    within the scope of the arbitration agreement.  Plaintiff has also learned additional information

7    through discovery which supports claims in tort for fraud, negligent misrepresentation and

8    negligence.  Plaintiff has relied on Defendant's claim that the arbitration is not the proper forum for

9    its tort and bailment claims and requests that the stay pending arbitration be modified to allow

10   Plaintiff to pursue those claims in court.  Plaintiff also believes modification is necessary because

11   Defendant appears to be using the arbitration as a mechanism to avoid liability for its tortious and

12   deceitful conduct and Plaintiff has reason to believe it may be without a forum to have its tort and

13   bailment claims heard. For these reasons, Plaintiff respectfully requests, this Court modify the stay

14   pending arbitration; allow Plaintiff and leave to amend the complaint; and issue any other order the

15   Court deems necessary and appropriate.

16

17

18

19

20   DATED: October 9, 2006                     BRINKMAN PORTILLO, PC

21

22                                             By:   _____/s/ Laura J. Portillo_____
                                                         Laura J. Portillo
23                                             Special Counsel to Betta Products, Inc. and the
                                               Betta Products Litigation Trust
24

25

26

27

28

                                               23

BPH 0032