# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

## No: CV 07-04825 WHA

---

Betta Products, Inc. and Dana McCurnin, Trustee
of the Betta Products Litigation Trust,

Plaintiffs—Appellees—Cross-Appellants,

v.

Distribution Systems and Services, Inc.

Defendant—Appellant—Cross-Appellee.

---

## CONTINUATION OF APPELLANT'S REPLY BRIEF
## AND
## CROSS-APPELLEE'S BRIEF

---

Richard W. Abbey, Esq. SBN 53039
Mitchell B. Greenberg, Esq. SBN 114878
Abbey, Weitzenberg, Warren & Emery
100 Stony Point Road, Suite 200
Post Office Box 1566
Santa Rosa, CA 94502-1566
Telephone: (707) 542-5050

James Anton Beitz, MN ATTY. ID No. 6233
Hagerty Johnson & Beitz P.A.
701 Fourth Avenue, South, Suite 700
Minneapolis, Minnesota 55415
Telephone: (612) 349-9000
*Pro Hac Vice*

Attorneys for Defendant, Appellant, Cross-Appellee

## CROSS-APPELLEE'S BRIEF
## STANDARD OF REVIEW

Reviewing courts review bankruptcy court findings of fact for "clear error," (*see* FED. R. BANKR. P. 8013), and conclusions of law and mixed questions of law and fact *de novo.* (S*ee In Re Bammer* 131 F.3d 788, 792 (9th Cir. 1997); *see also Beaupied v. Chang*, 163 F.3d 1138, 1140 (9th Cir. 1998) (reviewing the bankruptcy court's findings of fact for clear error and its conclusions of law and mixed questions of law and fact *de novo); In Re Baldwin,* 245 B.R. 131, 134 (9th Cir. BAP (Cal.)) (holding that appeal from bankruptcy court to BAP on issue of law regarding availability of collateral estoppel was reviewed de novo).)

## STATEMENT OF THE CASE

In their cross appeal, Betta and the Trustee argue that the bankruptcy court wrongly applied a state version of issue preclusion instead of the Federal standard, despite the fact that under either the state or Federal standard the result is the same. They also contend that the bankruptcy court erred in finding that the Betta I and Betta II issues were the same, despite having themselves argued that they were the same in successfully denying DSS its demand for a jury trial earlier in Betta II. Finally, they argue that the bankruptcy court erred in finding that they were given a full and fair opportunity to be heard in the arbitration, an issue already argued and decided in Betta I, and now on appeal by Betta and the Trustee before this Court in *Betta, et al v. Distribution Systems, et al*, Case No. CV 07-02661 VRW.

## SUMMARY OF THE ARGUMENT

Besides raising arguments on which they took opposite sides below, Betta and the Trustee have not offered any new, convincing arguments that the Betta I and II issues were not the same. Under both the Minnesota and the

Federal standard for applying collateral estoppel, the issues in Betta I and Betta II were identical. Whether Betta and the Trustee were afforded ample opportunity to be heard and whether the arbitration addressed the merits of the issues were issues raised long ago in the alternative motions to confirm and vacate the arbitration award. Those issues were decided, and Betta and the Trustee have appealed that decision. (*See Betta, et al v. Distribution Systems, et al*, Case No. CV 07-02661 VRW.) Betta and the Trustee are seeking a second bite of the procedural apple in raising those issues again here, and, in any event, the record demonstrates conclusively that the Arbitration Panel followed the American Arbitration Association rules impeccably in rendering its award on the merits and deciding all issues before it.

## ARGUMENT

**I.    THE BANKRUPTCY COURT APPLIED THE CORRECT STANDARD FOR ANALYZING THE SAMENESS ISSUE REGARDLESS OF WHETHER STATE OR FEDERAL LAW APPLIES.**

Betta and the Trustee argue that the bankruptcy court incorrectly applied Minnesota or California law instead of Federal law in deciding that the issues were the same in Betta I and Betta II for collateral estoppel purposes. Betta's and the Trustee's entire argument on this issue rests on two sentences. The first sentence contains the unsupported conclusion that "[b]ecause it appears that the Bankruptcy Court applied either the California or Minnesota standard of issue preclusion, the Bankruptcy Court has erred as a matter of law." (Betta's and the Trustee's Brief at 17.) Actually, the bankruptcy court never mentioned California law, and its sole reference to the standard for collateral estoppel was to a Ninth Circuit Federal case. (*See* App. Ex. H at 3.) Regardless of which law the court applies, however, the decision is correct under both state and Federal law.

The second sentence contains one obvious and one irrelevant observation: "the Federal law of issue preclusion requires a full and fair opportunity to litigate the issue in the previous action[4], and generally refuses to apply issue preclusion to default judgments." Betta and the Trustee simply leave their argument there. They do not expressly contend that they were denied a full and fair opportunity to be heard in the arbitration or that the arbitration award was a default award.  Instead they appear content to leave those implications. Ironically, both of those questions were decided in the Betta I confirmation hearing in which it was established that Betta and the Trustee were given a full opportunity to be heard, and that the American Arbitration Association rules do not allow default judgments and require all final decisions to be on the merits.  (*See Betta Prod., Inc. v. Distrib. Sys. & Serv., Inc.* (In re Betta Prod., Inc.), No. AP 05-01046, Docket # 96, slip op. at 4 (Bankr. Ct. N.D. Ca, Feb. 15, 2007).)

### A.    The Issues In Betta I And Betta II Were The Same Under Either Minnesota Or Federal Law.

In order for collateral estoppel to bar a plaintiff's claim in pending litigation, the "issue" in the pending litigation must be the same as the issue already litigated by the parties in the previous action.  (*See Kourtis v. Cameron,* 419 F.3d 989, 994 (9th Cir. 2005); *see also Ellis v. Comm'n on Civil Rts.,* 319 N.W. 702, 703-04 (Minn. 1982).)

It is immaterial that Betta II involves tort and quasi-contract claims and Betta I involved contract claims. As Justice Harlan noted long ago ". . . even if the second suit is for a different cause of action, the right, question or fact once

---

[4] As do most, if not all, jurisdictions, including Minnesota.  (*See, e.g., Ellis v. Comm'n on Civil Rts.,* 319 N.W. 702, 703-04 (Minn. 1982).)

so determined must, as between the same parties or their privies, be taken as conclusively established. (*Southern Pac. R.R. Co. v. United States*, 168 U.S. 1, 48-49 (1897); *accord Manion v. Nagin,* 394 F.3d 1062, 1066-67 (8th Cir. 2005).)

"Under issue preclusion, unlike claim preclusion, the subject matter of the later suit need not have any relationship to the subject matter of the prior suit." (*United States v. Shanbaum*, 10 F.3d 305, 311 (5th Cir. 1994).) The keys are whether the issues are the same, *e.g.*, do both actions involve allegations of lost or damaged inventory; whether the actions arise out of the same factual circumstances, *e.g,* a warehouse contract requiring one party to maintain another's inventory; and whether there is substantial overlap in the evidence that will be required, *e.g,* inventory records, bills of lading, and invoices. (*See Blonder-Tongue Lab., Inc. v. University of Ill. Found.*, 402 U.S. 313 (1971); *Reyn's Pasta Bells, L.L.C., v. VISA USA, Inc.,* 442 F.3d 741 (9th Cir. 2006); *Ellis v. Minneapolis Comm'n on Civil Rts*, 319 N.W.2d 702 (Minn. 1982); *Youngstown Mines Corp. v. Prout,* 266 Minn. 450, 124 N.W.2d 328 (Minn. 1963).)

It is also immaterial that one of these actions was an arbitration, because both Minnesota and Federal law apply collateral estoppel to arbitration proceedings. (*See Mediterranean Enter., Inc. v. Ssangyong*, 708 F.2d 1451, 1465 (9th Cir. 1983) (noting arbitrator's decision on contract claims may preclude later tort claims); *accord Aufderhar v. Data Dispatch, Inc.*, 452 N.W. 648, 652 (Minn. 1990) (holding former arbitration decision precluded later case raising same issue).)

**B.    Betta And The Trustee Have Conceded The Sameness Issue, And That Concession Has Become Law Of The Case.**

The sameness issue is actually moot since the fact that the issues in Betta I and Betta II are the same has been conclusively established by judicial admissions made by Betta and the Trustee, and those admissions are now the law of the case.

1.    <u>Betta and the Trustee have made the judicial admission that the issues in Betta I and Betta II are identical.</u>

A judicial admission is a formal stipulation by a party or counsel that concedes any element of a claim or defense. Its effect is to determine the issue conclusively, to dispense entirely with the need for further evidence. (Note, *Judicial Admissions*, 64 COLUM. L. REV. 1121, 1131 (1964) (citing 2 CHARLES MCCORMICK, EVIDENCE §243 at 515 (1954).) Judicial admissions are usually made by the party's lawyer because "it is settled that the general authority to conduct the trial implies the authority to make such admissions." (9 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 2594 (James H. Chadbourn ed. 1981).) To have conclusive effect, declarations of counsel must be in writing or stated in open court and included in the record. (*See Ibid.*) In this case, they were in writing *and* included in the record in connection with Betta's and the Trustee's successful attempt to deny DSS a jury trial.

Judicial admissions differ from evidentiary admissions mostly by their unequivocal nature. For instance, equivocal testimony, whether due to uncertainty, confusion, or a party's fallible impressions, opinions, or understandings will be given only evidentiary value, (*Judicial Admissions* at 1131), but unequivocal written statements of counsel should be accorded judicial admission status. *(See Ibid.)* Judicial admissions completely

dispose of the particular issue. They are deemed more than evidence; instead they substitute for evidence. (*Judicial Admissions* at 1126.) "The vital feature of a judicial admission is universally conceded to be its *conclusiveness* upon the party making it, *i.e.,* the prohibition of any further dispute of the fact by him and of any use of evidence to prove or contradict it." (9 WIGMORE, EVIDENCE §2590; *see also* MCCORMICK, EVIDENCE § 254.)

Betta's and the Trustee's admissions in this case manifestly qualify as judicial admissions, dispositive of the sameness issue, for what could be more clear than the following declarations argued strenuously by Betta and the Trustee on three different occasions:

a.    The Amended Complaint did not change the substance of Betta's claims from those made in Betta I. (*See* Bankruptcy Court Docket No. 160, Ex. S at 4.);

b.    "Betta *did not allege* any new facts in the Amended Complaint" that were not alleged in Betta I. (Emphasis in original.)  (*Ibid.* at 7);

c.    The Amended Complaint "does not discuss any new facts" from those alleged in the complaint in Betta I. (*Ibid.*);

d.    The original complaint in Betta I and the Amended Complaint in Betta II are based on the "*exact same facts.*" (Emphasis in original.)  (*Ibid.*);

e.    "[t]he original complaint included a claim for fraud. . .[and] negligent misrepresentation."), (*Ibid.* at 8-9.);

f.    "Plaintiffs' Amended Complaint does not allege any new facts." (Bankruptcy Court Docket No. 160, Ex. T at 5.); and

g.    "[t]he original complaint contained all of the factual issues for a claim of fraud. . .and. . .negligent misrepresentation.)  (*Ibid.* at 6; *see also* Bankruptcy Court Docket No. 160, Ex. U at 20.)

Those statements, made in connection with Betta's and the Trustee's successful motion to strike DSS' jury demand, were judicial admissions. (*See Oscanyan v. Arms Co.*, 103 U.S. 261, 264 (1880).)

> Here there were neither unguarded expressions used, nor any ambiguous statements made. The opening counsel was fully apprised of all the facts out of which his client's claim originated, and seldom was a case opened with greater fullness of detail. He dwelt upon and reiterated the statement of the fact which constituted the ground of the court's action in directing a verdict for the defendant. . .

(*Ibid.; see also, Postscript Enter. v. City of Bridgeton*, 905 F.2d 223, 227-28 (8th Cir.1990) (treating statements by parties made in briefs as judicial admissions); and *Totten v. Merkle,* 137 F.3d 1172, 1176 (9th Cir. 1998).)

Betta and the Trustee cannot have it both ways. They may not prevail, as they have, in denying DSS its fundamental right to a jury trial based exclusively on their argument that the claims and issues in Betta I and Betta II are the same and then, in order to avoid collateral estoppel, argue the opposite—that the claims and issues are *not* the same. That reasoning is specious.  (*See New Hampshire v. Maine,* 532 U.S. 742, 742-43 (2001) (holding that under the doctrine of judicial estoppel a party who assumes a certain position in a legal proceeding, and succeeds in maintaining that position, may not thereafter, simply because his interests have changed, assume the a contrary position); *see also Friedmann v. U.S.,* 107 F. Supp. 2d 502, 510-11 (D.N.J. 2000) (holding that the taxpayer's clear and unmistaken assertion of the truth of a fact in support of one of its legal theories, on

which it ironically carried the day, must not be ignored and the opposite of that fact accepted as true for purposes of the analysis of a second legal issue).)

> 2.    <u>The Bankruptcy Court's decision to grant Betta's and the Trustee's motion to strike DSS' jury demand on the grounds that the claims and issues in Betta II are the same as those raised in Betta I has become the "law of the case."</u>

Not only did Betta and the Trustee make the admissions described in the foregoing section, they won that argument based on those admissions. (*See* Bankruptcy Court Docket No. 160, Ex. V at 2-3 (holding that "[t]he factual allegations and damages sought [in the two cases] are the same," "[t]he amended complaint is based on exactly the same facts as the original complaint," and that the only difference between the earlier case and this case is "the presentation of a new theory of recovery. . .which does not constitute the presentation of a new issue").)

The bankruptcy court's decision that the claims and issues in Betta I and Betta II are the same has become the law of the case. (*See, e.g.*, 18B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE §4478 (2d ed. 2002) (explaining that when a court decides upon a rule of law, that decision governs the same issues in subsequent stages in the same case); *Hydrick v. Hunter*, 466 F.3d 676, 687 (9th Cir. 2006); *Borgeson v. Borgeson*, 461 N.W.2d 402, 404 (Minn. Ct. App. 1990).)

Since the bankruptcy court concluded that all of the claims in the Amended Complaint and the issues they raised were the same as those decided in Betta I, its subsequent decision that collateral estoppel precludes Betta from raising them a second time was not only accurate, it was

mandated by its prior ruling thrust upon it by Betta and the Trustee. (*See,
e.g.*, *Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 323-24
(1971) (holding that issue preclusion bars a second action involving same
parties or privies, where issues in second action are same as in prior action,
and prior litigation ended in a final adjudication); *American Druggists Ins. v.
Thompson Lumber Co.*, 349 N.W.2d 569, 572 (Minn. Ct. App. 1984); *Reyn's
Pasta Bells, L.L.C., v. VISA USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006);
*Victory Highway Village, Inc. v. Weaver*, 480 F. Supp. 71, 74 (D. Minn.
1979).)

### C.    Betta And The Trustee Were Given A Full And Fair Opportunity To Be Heard On All Of The Issues Presented And Decided In Betta I.

The party against whom an estoppel is asserted must have had a fair
opportunity to present its position in the prior case. (*See Blonder-Tongue
Lab., Inc. v. University of Ill. Found.*, 402 U.S. 313, 329 (1971); *Masson v.
New Yorker Magazine, Inc.*, 85 F.3d 1394, 1400 (9th Cir. 1996); *see also Ellis
v. Minneapolis Comm'n on Civil Rts*, 319 N.W.2d at 704).)

The Arbitration Panel and the bankruptcy court made it clear that even
though Betta and the Trustee chose voluntarily to "boycott" the final
arbitration hearing in Betta I, they had a full opportunity to present their
position:

> The Claimants having cited the Panel to—and the Panel
> being aware of—no AAA Rules permitting a party to
> "withdraw a Demand for Arbitration" so as to
> unilaterally curtail arbitration proceedings and strip
> arbitrators of jurisdiction once those arbitrators have
> accepted appointment . . .; Claimants having failed . .
> .to make a showing of "good cause" for a
> postponement of the final hearing as required by AAA

> Rule 28[5]. . ., the Panel directed that (and the AAA
> notified all parties that) the final hearing would proceed
> as scheduled. . .
>
> On November 9, 2006, counsel for Claimants emailed
> the AAA, declaring that. . .[they] would no longer
> participate in the arbitration proceedings. . .

Bankruptcy Court Docket No. 160, Ex. K at 4-5.

> Fundamentally, Betta's situation is based on its own
> misunderstanding of this court's role once it had
> ordered the dispute to arbitration. . . .Betta's decision to
> seek dismissal from this court instead of the arbitrators
> was a fundamental mistake, and its voluntary boycott of
> the duly set arbitration hearing resulted in a predictable,
> and quite proper, award against it for the (sic) DSS'
> costs and expenses of arbitration."

(App. Ex. C at 2-4.)  Betta and the Trustee were given all the opportunity that
collateral estoppel requires.  (*See* 402 U.S. at 329; 85 F.3d at 1400; *see also*
319 N.W.2d at 704 (holding that he third test for collateral estoppel is the
*opportunity* to be heard); *Blue Mountain Constr. Co. v. Werner*, 270 F. 2d
305, 307-08 (9th Cir. 1959) (noting that plaintiff, which decided to ignore its
case following denial of motion to dismiss, did so at its peril, and could not
be  heard to complain following dismissal with prejudice for failure to
prosecute and loss of appeal);  *El Dorado School Dist. No. 15 v. Continental
Cas. Co.*, 247 F.3d 843 (8th Cir. 2001) (holding party's failure to attend and
participate in scheduled hearing was result of its own decision).)

---

[5] See Bankruptcy Court Docket No. 160, Ex. R at 10.

**D.    The Judgment Entered In Betta I Was Final And Valid And On The Merits.**

Arbitration decisions are final and binding on their own. (*See Local Freight Drivers, Local No. 208 v. Braswell, Motor Freight Lines, Inc*., 422 F.2d 109, 114 (9th Cir. 1970).) For instance, an arbitrator's decision that a railroad had not paid its contractor was a final determination binding on the Supreme Court. (*York & Cumberland R.R. Co. v. Myers*, 59 U.S. 246, 253 (1855).) In this case, the final Award was incorporated in the trial court's order for judgment, (*see* App. Exs. C and E), and the issues decided in the Betta I arbitration became part of the trial court judgment entered March 1, 2007. (App. Ex. D). They are final for purposes of applying collateral estoppel. (*See US West Financial Services, Inc. v. Buhler, Inc.,* 150 F.3d 929, 932 (8th Cir. 1998) (holding that a final arbitration award has the same preclusive effect as a judgment); *see also Local Freight Drivers; Manion v. Nagin,* 394 F.3d 1062, 1066-67 (8th Cir. 2005) (holding under Minnesota law that prior contract arbitration barred same issues in later tort case).)

The judgment from which Betta and the Trustee appealed was undeniably entered in a case severed under Rule 21. That judgment was final and on the merits. Ironically, the best evidence of that finality on the merits are Betta's and the Trustee's attempts to erase that final judgment with their motion to replace the October 20, 2006 order and the bankruptcy court's grant of that motion.

## II.    THE BURDEN OF PROOF IN THE TWO ACTIONS WAS THE SAME.

Betta and the Trustee submit that the bankruptcy court erred in concluding that the issues were the same in Betta I and Betta II because, they argue, the burdens of proof were different in the two cases and, therefore,

necessarily addressed different issues. (*See* Betta's and the Trustee's Brief at 17 *et seq*.) Their analysis contains a number of flaws. The burdens were and are identical, Betta and the Trustee rely on a Minnesota case[6] that patently has no application to these proceedings, Betta and the Trustee have misinterpreted Minnesota law, and Betta and the Trustee have misrepresented or misread the arbitration award.

### A.    The Burden Of Proof In Betta I Was The Same As The Burden That Will Be Applied In Betta II.

The Arbitration Panel in Betta I applied the preponderance of the evidence burden of proof. (*See* Bankruptcy Court Docket No. 160, Ex. K at 7.) Presumably, Betta and the Trustee do not expect the bankruptcy court to exact a less rigorous burden of proof in Betta II. The main flaw in their argument, however, is that they have confused the burden of proof with the limitation of damages clause in the warehouse agreement, which, according to the agreement, applies with the same force in Betta II as it did in Betta I. (*See* Bankruptcy Court Docket No. 160, Ex. A at 9.) The critical fact, however, is that the burdens of proof are identical in the two cases, which ought to dispose of Betta's and the Trustee's burden of proof argument outright, but they have additional problems with their argument. (*See infra*.)

### B.    Betta's And The Trustee's Burden Of Proof Argument Also Fails Because Betta And The Trustee Have Misread, Misinterpreted, Or Misrepresented Their Leading Case.

The two cases cited by Betta and the Trustee in support of this argument are patently inapposite. *U.S. Aluminum Corp/Texas v. Alumax,*

---

[6] Interestingly and inconsistently, Betta and the Trustee look to Minnesota law to support their position, while they based their first argument on the bankruptcy court's alleged erroneous reliance on Minnesota law.

*Inc.*, 831 F.2d 878 (9th Cir. 1987) dealt with two cases, the first of which imposed a "clear and convincing evidence" burden of proof whereas the second imposed a less rigorous "preponderance of the evidence" burden. *Willems v. Comm'r of Public Safety*, 333 N.W.2d 619 (Minn. 1983), on which they focus the bulk of their argument, they say, "illustrates Minnesota's rule that a party is entitled to litigate an issue even if substantially similar issues have been litigated, and requires an exact, identical issue without the tiniest variation" in order to apply collateral estoppel. (Betta's and the Trustee's Brief at 21.) In fact, *Willems* says nothing of the sort. *Willems* scrutinized two cases involving different burdens of "going forward," not different burdens of proof. (333 N.W.2d at 621.) *Willems* says nothing whatsoever about any "Minnesota rule" requiring "an exact, identical issue without the tiniest variation" in order to apply collateral estoppel. Last, and most important, *Willems upheld the application of collateral estoppel* even though the two cases did involve different burdens of going forward. (*Ibid.*)

### C.    The Minnesota Law Of Collateral Estoppel Precludes Trying The Issues Of Betta II A Second Time.

Minnesota attaches collateral estoppel to arbitration decisions which addressed the same issues among the same parties or privies, in a case where the parties were given a full opportunity to be heard and final decision was reached. (*Manion v. Nagin,* 394 F.3d 1062, 1066-67 (8th Cir. 2005) (holding prior contract arbitration decision barred same issues in later tort case under Minnesota law); *US West Financial Services, Inc. v. Buhler, Inc.,* 150 F.3d 929, 932 (8th Cir. 1998) (holding that under Minnesota law a final arbitration award has the same preclusive effect as a judgment). *Aufderhar v. Data*

*Dispatch, Inc.*, 452 N.W. 648, 652 (Minn. 1990) (holding former arbitration decision precluded later case raising same issue).)

Minnesota law does not mandate application of any stringent objective test to resolve sameness. It requires a comparison of the issues and the facts surrounding them, as well as the evidence that each has and will exact, and if the court determines from that analysis that the issues are the same the law mandates application of collateral estoppel. (*SeeIbid.*)

**D.    The Betta I Record Manifestly Illustrates That The Arbitration Panel Decided On The Merits The Same Issues Raised In Betta II And That Betta And The Trustee Were Given A Full And Fair Opportunity To Be Heard.**

In their final arguments, Betta and the Trustee claim the Betta I record was not sufficient for the bankruptcy court to determine what issues the Panel decided and that the Panel afforded Betta and the Trustee the opportunity required to impose collateral estoppel. (Betta's and the Trustee's Brief at 21 *et seq.*) In support of their argument, they cite *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1321 (9th Cir. 1992) for the proposition that in reviewing a record for collateral estoppel purposes, the court must determine whether the panel could have reached its decision on an issue other than the one the movant seeks to preclude. In fact, *Clark* said the converse: in order to refuse collateral estoppel to an arbitration decision, the court must decide whether the panel could have come to its decision based on an issue other than the one the movant seeks to preclude. That is impossible here because the Panel said there were no set of acts in the record on which Betta and the Trustee could have proven by a preponderance of the evidence that DSS breached any duty to Betta. (*See* Bankruptcy Court Docket No. 160, Ex. K at 7.)

1.   <u>The Panel determined on the merits that Betta and the Trustee did not and could not prove by a preponderance of the evidence that DSS had breached any duty under its agreement with Betta.</u>

That conclusion encompasses all of the liability claims and, if the issues attendant to those claims are the same as those raised in Betta II, they are precluded by collateral estoppel. (*See, e.g., Blonder-Tongue Lab., Inc. v. University of Ill. Found.,* 402 U.S. 313, 329 (1971).) The damages issues and the standard for measuring those damages are irrelevant.

2.   <u>Betta and the Trustee were given the opportunity to be heard necessary to apply collateral estoppel.</u>

Betta and the Trustee have argued over and over, twice in the appeal, in opposition to DSS' motion to confirm the award, and in their motion to vacate the award that their choice not to attend the arbitration precluded collateral estoppel from attaching to the Betta I. It is an issue decided conclusively against them in Betta I and one they have appealed in Betta I. As detailed in Argument I. C. of this Cross-Appellee's Brief, *supra*, the rule requires they have the *opportunity* to be heard, not that they participate. They may not choose voluntarily to boycott the hearing and then contest any form of *res judicata* on the ground that the opportunity to be heard prong of *res judicata* was not met.

The AAA rules prohibit default judgments and require hearings and awards on the merits even where, as here, one party chooses voluntarily not to appear.

> AAA Rule R-29 at 11 (providing that the arbitration may proceed in the absence of a party, who, after due notice, decides not to appear or fails to obtain a postponement; that there shall not be default awards; and that the arbitrator shall require the parties present to give such evidence that the arbitrator requires to make an award).

(Bankruptcy Court Docket No. 160, Ex. R.)

That is precisely what happened here. The Panel sent out a scheduling order; pursuant to that order the parties engaged in discovery. The Panel scheduled a hearing on a date accepted by Betta and the Trustee after due notice. Betta and the Trustee failed to appear, but the Panel held that duly scheduled hearing, at which it viewed all of the evidence presented, catalogued that evidence, analyzed it, and entered an Award, concluding that Betta and the Trustee had not met their burden to postpone or dismiss the arbitration and that Betta's and the Trustee's claims that DSS had breached the contract for not returned inventory belonging to Betta or Wells Fargo and charging them excess fees for servicing that inventory were without merit. (Bankruptcy Court Docket No. 160, Ex. K at 2-6.)

Betta and the Trustee chose to boycott the arbitration and not participate at their own risk. Betta and the Trustee may not decline to attend the arbitration and then contend that because they were not present, they are not bound by the preclusive effect of the Award. (*See Blonder-Tongue Lab., Inc. v. University of Ill. Found.*, 402 U.S. 313, 329 (1971); *see also, Blue Mountain Constr. Co. v. Werner*, 270 F. 2d 305, 307-08 (9th Cir. 1959); *El Dorado School Dist. No. 15 v. Continental Cas. Co.*, 247 F.3d 843 (8th Cir. 2001); *Betta Prod., Inc. v. Distrib. Sys. & Serv., Inc.* (In re Betta Prod., Inc.), No. AP 05-01046, Docket # 96, slip op. at 4 (Bankr. Ct. N.D. Ca, Feb. 15, 2007); *Ellis v. Minneapolis Comm'n on Civil Rts*, 319 N.W.2d 702 (Minn. 1982).)

Betta and the Trustee were given that full and fair opportunity and they voluntarily chose not to participate. "Betta's decision to seek dismissal from this court instead of the arbitrators was a fundamental mistake, and its voluntary boycott of the duly set arbitration hearing resulted in a predictable, and quite proper, award. . ." (*Betta Prod., Inc. v. Distrib. Sys. & Serv., Inc.*

(In re Betta Prod., Inc.), No. AP 05-01046, Docket # 96, slip op. at 1029 (Bankr. Ct. N.D. Ca, Feb. 15, 2007).)

## CONCLUSION

For the foregoing reasons, DSS respectively requests that the Court reject Betta's and the Trustee's appeal and reverse the Bankruptcy Court's August 15, 2007 Memorandum Decision denying DSS' motion that the Betta II claims be dismissed.

Dated:  January 7, 2008.        Respectfully submitted,


_____/S/ Mitchell B Greenberg_____
ABBEY, WEITZENBERG, WARREN
 & EMERY
Richard W. Abbey, Esq., State Bar 53039
Mitchell B. Greenberg, Esq., Bar 114878
100 Stony Point Road, Suite 200
Santa Rosa, CA  95402-1566
Telephone:  707-542-5050
Facsimile:  707-542-2589

HAGERTY JOHNSON & BEITZ P.A.
James A. Beitz, Minn. Atty. Id. No. 6233
701 Fourth Avenue, South, Suite 700
Minneapolis, Minnesota  55415
Telephone:  (612) 349-9000
*(Appearing Pro Hac Vice)*
Attorneys for Defendant—Appellant

## FED. R. APP. PRO. 32(a)(7)(C)

## CERTIFICATE OF COMPLIANCE

This Response Brief was prepared using Microsoft Word for Windows 2002 (10.2627.2625), and it contains 4,775 words of text, in 470 lines on 22 pages, using 17 point Times New Roman font.

Dated:  January 7, 2008.        _____ /s/ James Anton Beitz_____

1

1                    UNITED STATES BANKRUPTCY COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3                        (SANTA ROSA DIVISION)

4

5    In re:

6    BETTA PRODUCTS, INC.,              Case No. 03-10925
     a California corporation,
7                                       Chapter 11

8                                       Santa Rosa ,California
                                        November 30, 2007
9                                       10:57 a.m.
             Debtor.
10   _____/

11   BETTA PRODUCTS, INC., the
     Debtor in Possession,
12
             Plaintiff,
13
         v.                             A.P. No. 05-01046
14
     DISTRIBUTION SYSTEMS AND
15   SERVICES, INC., aka DSS,

16           Defendant.
     _____/
17

18                   TRANSCRIPT OF PROCEEDINGS
                    MOTION TO COMPEL DISCOVERY
19

20            BEFORE THE HONORABLE ALAN JAROSLOVSKY
                 UNITED STATES BANKRUPTCY JUDGE
21

22   APPEARANCES:

23   Special Counsel to         BRINKMAN PORTILLO, PC
     Betta Products:            BY: DAREN R. BRINKMAN, ESQ.
24                              4333 Park Terrace Drive, Suite 205
                                Westlake Village, California 91361
25

2

```
 1   For the Defendant:        ABBEY, WEITZENBERG, WARREN & EMERY
                               BY: MITCHELL GREENBERG, ESQ.
 2                             100 Stony Point Road, #200
                               Santa Rosa, California 95401
 3

 4
     Court Recorder:           DAWN PASSALACQUA
 5                             UNITED STATES BANKRUPTCY COURT
                               99 South "E" Street
 6                             Santa Rosa, California 95404

 7

 8
     Transcription Service:    Jo McCall
 9                             Electronic Court
                               Recording/Transcribing
10                             2868 E. Clifton Court
                               Gilbert, Arizona 85297
11                             Telephone: (480)361-3790

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1                    P R O C E E D I N G S
 2   November 30, 2007                        10:57 a.m.
 3                        ---oOo---
 4            THE CLERK: Betta Products, Inc. versus
 5   Distribution Systems and Services.
 6            MR. GREENBERG: Good morning, Your Honor, Mitch
 7   Greenberg from Abbey Weitzenberg for Distribution Systems
 8   and Services, Inc.
 9            MR. BRINKMAN: Good morning, Your Honor, Daren
10   Brinkman of Brinkman Portillo on behalf of the trustee and
11   Betta.
12            THE COURT: Well, I've been looking forward to
13   this motion all calendar just because the procedure
14   involved is so crazy.  When I was preparing for it, I saw
15   that there was a motion for a stay pending the
16   interlocutory appeal.  My suspicion was that you didn't
17   tell me it was -- or my assistant that it was on the docket
18   because you really didn't want me to rule on it, but I saw
19   it.  Now that I've seen it, do you need a decision on it?
20            MR. GREENBERG: That's not what my motion --
21            THE CLERK: You need to use the microphone.
22            THE COURT:  Mr. Greenberg?
23            MR. GREENBERG: We do not, Your Honor.  Right now,
24   the Court of Appeal has before it which was filed I believe
25   Wednesday by Betta a motion to dismiss the interlocutory
```

4

1  appeal, and now the District Court has that in front of it

2  as of Wednesday.  So that will be ruled on, I assume, in a

3  relatively short time.

4         THE COURT: All right.  Well, I really don't care.

5  It would not bother me in the least for -- you say the

6  Court of Appeals, the District Court, right?

7         MR. GREENBERG: I'm sorry, the District Court.

8         THE COURT: It wouldn't bother me in the least for

9  the District Court to declare the case over because I'm

10 still scratching my head over Betta's decision not to go

11 through with the arbitration.  On the other hand, DSS has

12 been fighting so hard to not actually have a trial date.

13 That would also be fine with me if the District Court lets

14 this go forward because I am just curious as heck as to

15 what happened to this inventory.  But I don't know if we're

16 going to get there.  The craziness for the -- I'm trying to

17 explain this; it's so crazy -- Betta asked me to amend the

18 complaint to add a tort.  I said fine, we'll amend the

19 complaint but we'll sever it.  I don't believe I specified

20 under what rule, and somebody -- I think it was Betta --

21 submitted an order for me to sign that said it was rule 42.

22 I signed it.

23        Then I believe I gave Betta a hard time

24 for -- I didn't even think about which rule -- then gave

25 Betta a hard time for an interlocutory appeal thinking that

5

1   I had just severed that out but under 21 not 42.  So Betta

2   goes ahead and because I gave them a hard time dismissed

3   their appeal and then it turns out, well, they had a right

4   to appeal if it was final but it really shouldn't be and

5   it's -- I'm just curious as hell as to how this is all

6   going to turn out.  So in the meantime --

7           MR. GREENBERG: Convoluted might be a good term,

8   Your Honor.

9           THE COURT: It is convoluted, but either way it

10  turns out, it's not going to bother me.  If we end up going

11  to trial, then I get to see if something actually happened

12  to this inventory, and if it doesn't end up going to trial,

13  then Betta pays a product for not finishing their

14  arbitration.  I don't care.  But I'll just wait and see

15  what the District Court does.  But I'm assuming that you

16  don't need me to rule on that interim --

17          MR. GREENBERG: We do not.  What we're here for,

18  Your Honor, is the motion to compel discovery.

19          THE COURT: Yeah, I know.  This is just my

20  opportunity to kind of see what's going on.  All right.

21  Let's see.  Have the parties met and conferred?  What is

22  the -- this has to do with the first set of

23  interrogatories?

24          MR. GREENBERG: Your Honor, yeah, two pieces of

25  discovery, interrogatories and request for documents, and