# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

## No: CV 07-04825 WHA

---

Betta Products, Inc. and Dana McCurnin, Trustee
of the Betta Products Litigation Trust,

Plaintiffs—Appellees—Cross-Appellants,

v.

Distribution Systems and Services, Inc.

Defendant—Appellant—Cross-Appellee.

---

## CONTINUATION OF APPELLANT'S REPLY BRIEF
## AND
## CROSS-APPELLEE'S BRIEF

---

Richard W. Abbey, Esq. SBN 53039
Mitchell B. Greenberg, Esq. SBN 114878
Abbey, Weitzenberg, Warren & Emery
100 Stony Point Road, Suite 200
Post Office Box 1566
Santa Rosa, CA  94502-1566
Telephone:  (707) 542-5050

James Anton Beitz, MN ATTY. ID No. 6233
Hagerty Johnson & Beitz P.A.
701 Fourth Avenue, South, Suite 700
Minneapolis, Minnesota  55415
Telephone:  (612) 349-9000
*Pro Hac Vice*

Attorneys for Defendant, Appellant, Cross-Appellee

1  we attempted to meet and confer.  I tried to do it at first

2  by telephone.  It didn't sound like that was going to

3  happen, so we wrote a detailed letter identifying all the

4  deficiencies in the written discovery.

5        THE COURT: Is there any reason why you cannot

6  meet and confer now?

7        MR. GREENBERG: No.

8        THE COURT: Why don't I pass this for a half an

9  hour or so.  I have other matters on my docket.  I would

10 like both counsel to go into one of the conference rooms

11 together and attempt to work this out and to the extent you

12 can't work it out, to identify exactly what narrow issues

13 still remain unresolved.  We'll come back to you later on

14 this morning and see where you are at that time.

15        MR. GREENBERG: Thank you, Your Honor.

16        MR. BRINKMAN: Thank you, Your Honor.

17    (Whereupon, extraneous matters are heard, and this

18 matter is recalled at 12:02 p.m.)

19        THE CLERK: Betta Products versus Distribution

20 Systems.

21        MR. GREENBERG: Good morning again, Your Honor,

22 Mitch Greenberg for DSS.  Your Honor, we have made a lot of

23 headway, but we haven't reached total agreement.  Let me

24 tell you what I believe we've agreed on.  There was a

25 document request and there were interrogatories, and there

1  were depositions to be taken.  We have agreed with respect

2  to the document production as follows, that Betta will

3  provide a response under oath identifying the fact that the

4  universe of documents that are responsive to the document

5  request currently pending includes the documents that were

6  produced in the arbitration by them, by Betta.  The

7  documents that Betta produced in response to this document

8  request on a CD Rom and the documents that DSS produced to

9  Betta, so that we then know what the universe of documents

10  is in response to the document request.

11       They will then produce a PMK or more than one PMK

12  depending on how many people they need who will answer

13  questions regarding the new documents that have been

14  produced since the arbitration and to answer questions

15  regarding any theories that they have in the case now that

16  were not in the arbitration case.  If that involves

17  documents that were produced earlier but relate to new

18  claims, then we'll be able to ask questions about those new

19  claims.

20       What we have been unable to agree on is there's

21  then a whole set of interrogatories.  We have asked for

22  them to provide responses to certain ones that they did not

23  answer.  In essence, their objection was that we exceeded

24  the 25 limit and the reason for that is because we would

25  set forth an interrogatory and ask for information in it

1  that they thought contained discreet sub parts; i.e., you

2  know, tell us the witness's name, address, telephone

3  number, et cetera.

4      We don't believe at all that those are discreet

5  sub parts, and under the case law that we've cited, Your

6  Honor, those are each individual interrogatories, and they

7  are basic interrogatories.  It is as I call it Litigation

8  101.  You made a contention about a conversion; give us the

9  facts.  You made a contention about conversion; identify

10  the documents.  You made a contention about conversion;

11  identify the witnesses.  Then we know what the primers are

12  and we can then take the deposition and then we're ready

13  for trial.  That's all that we're asking.

14      THE COURT: And that wasn't done as part of the

15  initial disclosures under Rule 26?

16      MR. GREENBERG: There's been no initial

17  disclosures under Rule 26?  The only discovery other than

18  the discovery that's in front of Your Honor now was done in

19  the arbitration, and that was an exchange of documents and

20  two depositions.  So all that we're asking for is

21  information that we believe we're entitled to under FRCP

22  26, which hasn't been provided.

23      THE COURT: Well, whatever order we end up with

24  today I want to include a requirement that both parties

25  will comply with Rule 26 immediately.  You've got your pre-

1  trial disclosures coming up, assuming the District Court

2  doesn't decide to take the case, which is fine with me, but

3  if it doesn't you've got your Rule 26 pre-trial disclosures

4  coming up pretty soon; don't you?

5          MR. GREENBERG: We do, Your Honor.  I don't know

6  the exact date, but yes, those dates are all coming up.

7  We've got trial I think the third or fourth week of

8  January.  So all those dates are coming up, and so we

9  served this discovery early enough so that we could get

10  this information and be ready to make all the disclosures

11  that we needed to disclose and we basically have been

12  stonewalled on that.  And as I said, you know, if you read

13  through it, they're Litigation 101 contention

14  interrogatories.  Tell us what the universe is so we know

15  what the claims are.

16          THE COURT: All right.  But what are your sticking

17  points right now?

18          MR. GREENBERG: The sticking point is they have

19  refused to respond to any of the interrogatories that they

20  had objected to and we would like answers to those

21  interrogatories so we have answers under oath which is what

22  we need and then that will probably shortcut the PMK

23  deposition because we've asked for things like, identify

24  what your damage claim is; tell us how you calculated it;

25  and identify what documents support it.  Once we have all

1  that, my guess is the PMK depositions are a third or a

2  quarter of the length that they have to be if I have to go

3  through a stack of two thousand documents and ask the PMK

4  to identify each and every one that supports a particular

5  number.  As I said it's Litigation 101 to me.

6          THE COURT: All right.  Well, today is --

7          MR. GREENBERG: And so my sticking point is he has

8  refused to respond to any of the interrogatories that are

9  the subject of our motion.

10          THE COURT: All right.  Well, let me hear what

11  opposing counsel has to say.

12          MR. BRINKMAN: This is Darren Brinkman appearing

13  on behalf of the trustee and Betta.  First, with regard to

14  what he announced as a proposed stipulation, we proposed

15  those terms basically to try to cut off the whole mess

16  because they told us what they were driving at, and we said

17  well, look, doesn't this take care of it?  Doesn't -- you

18  get something pinning us down saying, you know, we produced

19  the documents, and one thing that I would add to the stip

20  is that if there's something else that we come across, we,

21  you know, would reserve the right to supplement just like

22  anyone would in normal discovery.  But this is all we know

23  of now, and we proffered the PMK basically so that they can

24  ask questions regarding documents.

25          THE COURT: What about the pre-trial disclosures

11

1  under Rule 26?

2          MR. BRINKMAN: We've made lots of disclosures, and

3  obviously we were going through --

4          THE COURT: Well, Rule 26 anticipates a very

5  formal set of initial disclosures and then another set of

6  disclosures 30 days before trial.

7          MR. BRINKMAN: I beg the Court's apology in that I

8  didn't intend to be the attorney covering this hearing, and

9  my partner had something come up.  She couldn't be here

10 today, and she's really the person managing the case, so I

11 don't know every last detail.  I didn't do the preparation

12 for the arbitration proceeding, and --

13         THE COURT: What preparation was that?

14         MR. BRINKMAN: Well, Your Honor, we prepared that

15 case like we were going to go to trial, and when they filed

16 a motion to dismiss our main claims, that's when we came

17 back to this court.  So --

18         THE COURT: All right.  Well --

19         MR. BRINKMAN:  -- that being said, we had two

20 depositions of witnesses.  We produced a whole bunch of

21 documents.  We don't really know of any set of documents

22 that are really different this time around, although we

23 produced some --

24         THE COURT: Well, it's the interrogatories I

25 understand that are the sticking point right now.

1    MR. BRINKMAN: And they've had interrogatory

2  responses as part of that arbitration proceeding which was

3  technically still part of this proceeding.  They've sent us

4  a gob of new interrogatories --

5    THE COURT: It might not be.  If the dismissal --

6  if the severance was under Rule 42 instead of Rule 21, I'm

7  not sure it was.

8    MR. BRINKMAN: As it stands today, you've made it

9  a Rule 42, and it is all the same case.

10    THE COURT: Well, except I'm not sure I've got

11  jurisdiction to do that.  I didn't have time to research

12  what the jurisdiction was when there is an interlocutory

13  appeal, so I figured --

14    MR. BRINKMAN: Up until the time of docketing, you

15  do, and the time of docketing as it turned out was a day

16  later after you entered that order.  So anyway, the --

17    THE COURT: Well, if they've got interrogatories,

18  I'm not hearing why they shouldn't have responses.

19    MR. BRINKMAN: The interrogatories go beyond -- we

20  answered 25 of them, okay, and the interrogatories

21  themselves have their own objectionable parts.  I mean, do

22  we have to go out of our way and walk through a thousand

23  pages of documents and describe for them how to calculate

24  how there's these things in and these things out --

25    THE COURT: Well, wait a minute.  Rule 26(a)(1)(B)

1  requires a copy of or a description by category and

2  location of all documents, ta-da-ta-da, in control of the

3  party and that the disclosing party may use to support his

4  claim or defenses, unless solely for impeachment.  I mean

5  you've got to do that anyway; don't you?

6          MR. BRINKMAN: There's a very big difference

7  between that and what they requested on the

8  interrogatories.  They want it broken down into lots of

9  minutia.  They want us to produce lots of attorney work

10 product for their benefit in these interrogatories.  I can

11 tell you standing here at the podium today, it's not rocket

12 science, okay?  They were a warehouseman.  They had an

13 obligation to keep warehousing records of all ins and outs.

14 If you look at those records, and there's ongoing ins and

15 outs, and then there's two departure points, stuff that

16 left the warehouse en masse, all that at one point during

17 the case the Debtor abandoned all its pre-petition

18 inventory to Wells Fargo, okay?  Wells Fargo maintained a

19 relationship with DSS for a period and then said we want it

20 all out now.

21          At that point in time, the records show --

22          THE COURT: I'm not worried about the merits of

23 the case right now --

24          MR. BRINKMAN: I understand, but that was -- and

25 then later on the Debtor terminated its relationship and

1    said give us all our stuff.  Both times they should have

2    zeroed out.  Both times they didn't zero out.  There's a

3    six figure difference of missing goods each time.

4         THE COURT: I would love to be able to figure out

5    what happened to the inventory.  Whether or not I actually

6    will or not I have no idea, but in the meantime, I've got a

7    discovery dispute in front of me.

8         MR. BRINKMAN: I understand.

9         THE COURT: And do we have to go through the

10   interrogatories one by one and make a ruling --

11        MR. BRINKMAN: A Rule 26 response doesn't really

12   require more than just what I've said here which is, hey,

13   these are the records.  Here's the grand scheme of how they

14   fit together, and here's what's missing.  And I've just

15   told you that from the podium.  That's a whole lot

16   different from what they're demanding in these

17   interrogatories, which are --

18        THE COURT: What are they demanding?

19        MR. BRINKMAN: They are demanding that we go

20   through and under each theory describe every document that

21   relates to how our claim is made.

22        THE COURT: What's wrong with that?

23        MR. BRINKMAN: Because it's sort of like proving a

24   negative.  Their documents -- again, it's their warehouse,

25   their warehouse records.  Their documents show things

15

1    coming in and then they show things coming out and they

2    don't add up.  And other than that, you know, we have --

3              THE COURT: Well, I understand that there may

4    be -- situations may arise where the burden of proof

5    shifts.  I understand that.  But I am just focusing on

6    interrogatories.  If I have to go through them one by one

7    and make a ruling, I will, but the interrogatories do not

8    have to be directly related to what's going to be

9    admissible at trial.  Now we can be here for a long time if

10   I have to go through these one by one.  I'm not going to

11   stand on the 25 interrogatory limit.  So why don't you tell

12   me how you would adjudicate this if you were me.

13             MR. BRINKMAN: Well --

14             THE COURT: I guess what I would suggest, being as

15   I'm starting to get hungry if nobody else is, is that we

16   come back at, say, 1:30 and -- why don't we say 1:45 to

17   give the two of you a chance to talk again, but I'm going

18   to err on the side of requiring responses to

19   interrogatories.  I'm not going to stand on the 25 number.

20   So it may be extra work for you, but I would like to get

21   this all out in the open and I want to reiterate that you

22   better take a close look at Rule 26, and to the extent you

23   haven't complied, do so right away -- both sides.  And then

24   also take a look at the pre-trial disclosures.  It may be

25   that the pre-trial disclosures you're going to have

16

1 | disclose this stuff anyway.

2 | 　　　　I think between the Rule 26 requirements and the

3 | fact that I'm going to be pretty liberal in favor of

4 | requiring responses, you may be able to work things out.

5 | If you can't, I've got the whole afternoon for the two of

6 | you.  And if we have to slug through them one by one, I'll

7 | do it.  So let's come back at 1:45.

8 | 　　　　MR. BRINKMAN: Thank you, Your Honor.

9 | 　　　　MR. GREENBERG: Your Honor, Mitch Greenberg, if I

10 | could.  If we do reach agreement between now and 1:45, is

11 | there a way that we could just present a proposed

12 | stipulation and order to Your Honor and then not take up

13 | any time this afternoon?

14 | 　　　　THE COURT: Sure.  If you just -- if you reach an

15 | agreement, just leave a message for the courtroom deputy,

16 | and then we will await it in writing.  So, yeah, no need

17 | for you to stick around if you resolve it.

18 | 　　　　MR. GREENBERG: Thank you very much, Your Honor.

19 | 　　　　THE COURT: Okay.

20 | 　　(Whereupon, the luncheon recess is taken at 12:17

21 | p.m., and the court is reconvened at 3:11 p.m.)

22 | 　　　　THE CLERK: This court is now in session, The

23 | Honorable Alan Jaroslovsky presiding.

24 | 　　　　THE COURT: Be seated please.

25 | 　　　　THE CLERK: On the add-on calendar, No. 1, <u>Betta</u>

1 | <u>Products versus Distribution Systems.</u>

2 |         MR. GREENBERG: Good afternoon, Your Honor, Mitch

3 | Greenberg for DSS.

4 |         MR. BRINKMAN: Good afternoon, Your Honor, Daren

5 | Brinkman on behalf of the plaintiffs.

6 |         THE COURT: Did you settle the case?

7 |         MR. GREENBERG: We did not settle the case.  We

8 | have reached an agreement on almost all issues with regard

9 | to the motion to compel discovery.  There's one remaining

10 | one which I'll identify for you.

11 |         THE COURT: You took enough time.  I guess I kind

12 | of hoped that maybe you got beyond the discovery issues.

13 |         MR. GREENBERG: I wish we had, but we did not,

14 | Your Honor.

15 |         THE COURT: Well, do you want to recite your

16 | agreement on the record then?

17 |         MR. GREENBERG: I would, Your Honor.  What I'll do

18 | is I'll recite the portion that we have reached agreement

19 | on and then we'll address the one where we have not.  With

20 | regard to the outstanding discovery that DSS served on

21 | Betta, Betta will provide a supplemental written response

22 | to DSS's first request for production of documents by

23 | December 14th, 2007, under oath, providing that the

24 | following categories of documents are the only documents of

25 | which Betta is presently aware which are responsive to the

1   56 categories of document requests:

2           a) All documents produced by Betta to DSS in

3   connection with the Triple A arbitration, (little b);

4           b) All documents DSS produced to Betta in

5   connection with the parties' Triple A arbitration; and

6           c) All documents Betta produced via a CD Rom with

7   bates stamp numbers which we'll fill into the final order

8   which was in response to the first request for documents in

9   this action.

10          No. 2, Betta agrees to serve a response to

11  Interrogatory No. 2 and Betta agrees to serve supplemental

12  response -- excuse me -- let me start that over again

13  because I think I got that wrong.

14          With regard to the interrogatories, Betta agrees

15  to serve a supplemental response to Interrogatory No. 2 and

16  Betta agrees to serve responses to the following

17  interrogatories: 3, 9, 10, 11, 13, 14, 15, 16, 17, 18, 20

18  and 22.

19          The issue, Your Honor, that we have not reached

20  agreement on is regarding depositions.  We noticed -- DSS

21  noticed the deposition of the trustee, Dana McCurnin, and

22  the deposition of either the president or CEO, I don't

23  remember what his title is, Dennis Walsh of Betta.  We also

24  noticed a person most knowledgeable deposition to the

25  extent that one of these two people was not the person most

1  knowledgeable on various categories.  We believe we're

2  entitled to take these depositions with respect to

3  documents that have been produced in this case that are new

4  documents and theories of recovery and claims for recovery

5  that are stated in this case that were not stated in the

6  arbitration.

7          THE COURT: All right.  Hang on a minute.  With

8  depositions, I thought you just noticed them and then if

9  somebody had an objection to them, they did a request for a

10 protective order.  Is that -- are we using a different

11 procedure?

12         MR. GREENBERG: Well, actually I'm not in

13 disagreement with Your Honor.  What happened was we got a

14 meet and confer letter back in response to our notice of

15 deposition saying we're not producing these people.  We

16 don't believe we should, and so then we filed our motion to

17 compel because they simply were not going to show up.  So

18 we took them off calendar, and we filed our motion to

19 compel interrogatories, documents, and these depositions.

20         THE COURT: That's not my understanding of how the

21 Federal Rules of Civil Procedure work.  As reluctant as I

22 am to jump into the rules, that doesn't seem to comport

23 with my understanding of them.  But you say one of these --

24 I thought the Debtor got rid of Dennis Walsh.

25         MR. GREENBERG: I believe he's still with Betta.

20

1          MR. BRINKMAN: Betta has closed its doors.

2          THE COURT: Has what?

3          MR. BRINKMAN: It's closed its doors.  It's no

4    longer functioning.

5          THE COURT: Yeah.

6          MR. BRINKMAN: He -- I'm not sure if he actually

7    has a title, but he has cooperated with getting things

8    produced for the estate along the way.  So to reach what

9    they're after, they've taken his deposition, and I've taken

10   the trustee, Dana McCurnin's deposition, earlier in this

11   case while it was in the arbitration round.  And to where

12   we're at now, we basically said, look, the facts aren't any

13   different.  We've added a couple of additional legal

14   theories, but you've already had their depositions.

15   There's no reason to go take their deposition again.

16          And what we proposed is an alternative to them,

17   and I thought it was workable, at the beginning of the

18   hearing this morning was, hey, we'll give you a PMK

19   deposition regarding anything that's new.  And we tried to

20   work out a list of what might be new, but --

21          THE COURT: Well, I guess my first point is,

22   unfortunately Dennis Walsh is well known to this Court.  If

23   you go back and search through my posted opinions, I

24   suspect his name will come up in not a very favorable

25   light.  I'm trying to determine if he's an independent

21

1   witness, in which case, it's not up to Betta to say you

2   can't do it.  You noticed a deposition, and if he doesn't

3   want to appear, he gets his own lawyer.

4           MR. BRINKMAN: I think technically he has some

5   sort of officer title, so --

6           MR. GREENBERG: So we noticed the depositions, and

7   they refused to produce them, which is why we moved to

8   compel.  And, Your Honor, we're dealing with a fraud claim.

9   We're dealing with a negligence claim.  We're dealing with

10  lots of new claim numbers in the amended complaint, which

11  are not in the claim of arbitration, and so we need to

12  explore those just like the rest of the discovery.  And so

13  those are the two people we've noticed, plus the PMK to the

14  extent there's someone who knows more.

15          My guess is it'll just be those two people.  And

16  my guess is they won't take very long if -- it's all the

17  same information, but, you know, it's lots of new labels on

18  lots of claims, and we need to address those and see really

19  what they are.

20          Again, it goes back to my contention

21  interrogatories followed up with the document request, and

22  then you take the depositions, and these are the two likely

23  candidates.  We have no interest in plowing old ground.  We

24  will not be plowing old ground.  In fact what we tried to

25  do in our stipulation is restrict the question subject

1  matter and I think we reached agreement on this, but we ran

2  into problems with exactly who we are deposing, and what we

3  reached agreement on is that it would be any new documents

4  not produced in connection with the arbitration or any

5  documents whatsoever whether produced in connection with

6  the arbitration or thereafter, which are relevant to any

7  new theories of recovery which were not part of the

8  arbitration claims.  So we're separating them out.  And --

9          THE COURT: Can I --

10         MR. GREENBERG: I'm sorry.

11         THE COURT: I would like to read to you from Rule

12  37(d) of the Federal Rules of Civil Procedure.

13         "If a party or an officer or director or managing

14          agent of a party designated under Rule 30 or 31 to

15          testify fails to appear before the officer who is

16          to take his deposition, after being served with

17          proper notice... the court in which the action is

18          pending on motion makes such orders in regard to

19          the failure that are just."

20  -- and among other things, it says all the things I can do.

21  And then the last sentence says:

22         "The failure to act described in this subdivision

23          may not be excused on the ground that the

24          discovery sought is objectionable, unless the

25          party failing to act has a pending motion for a

1          protective order as provided by Rule 26(c)."

2    Now doesn't that mean that if someone notices his

3    deposition, as long as it's one of a party, an officer or

4    director, et cetera, that it is no defense to failure to

5    show up, that the objection is discoverable unless there is

6    a pending request for a protective order?  That's the way

7    I've read the rule for quite a while.  Do I have something

8    wrong?

9          So if you notice a deposition, either show up or

10   ask for a protective order.  To the extent you want a

11   preliminary ruling, my advice would be just to show up,

12   but it will be a miracle if you get the case to trial.  I'd

13   kind of like to get to trial, because I'm curious to tell us

14   what happened to the inventory.  But --

15          MR. GREENBERG: We've now got a situation where

16   we --

17          THE COURT: The case is such a complicated matter

18   already regarding the Federal Rules of Civil Procedure, I

19   don't want to make it any worse by knowingly deviating from

20   the prescribed rules.  And the rules say unless you applied

21   for a protective order, you can't ignore a notice of

22   deposition on the grounds that it's objectionable.

23          MR. GREENBERG: Well, Your Honor, under that rule,

24   that's what he's done and so my only remedy at this point is

25   to come and ask --

24

1          THE COURT: What's he done?

2          MR. GREENBERG: He has failed to show --

3          THE COURT: Did he ask for a protective order?

4          MR. GREENBERG: He's failed to show and he's failed

5     to move for a protective order.  So now my only remedy is to

6     come to you and say, I've noticed it properly; he hasn't

7     moved for a protective order; please enter an order that

8     they must be there by "X" day.  That's what I'm here to do.

9     That was part of my motion for today.

10         THE COURT: All right.  I want them to appear; I

11    don't care if they appeared before or not.  This is a battle

12    which should not be fought at this point.  Just comply and

13    be thankful the consequences are not worse.  And if there's

14    more objectionable discovery, comply with the Federal Rules,

15    please.

16         MR. BRINKMAN: We appreciate the Court trying to

17    work this out and save the parties' time.  They canceled

18    their depositions so that's why we didn't move for a

19    protective order.  That being said, we appreciate the

20    Court's direction.  We will appear.

21         THE COURT: All right.  Does that resolve

22    everything?

23         MR. GREENBERG: Yes.  I will put this into formal

24    writing.

25         MR. BRINKMAN: Did you read all the scope issues on

25

1  this?

2          MR. GREENBERG: Your Honor, if I could finish with

3  the scope of these depositions and then I will reduce it to

4  writing, send it to counsel, and then submit it to the

5  Court.

6          THE COURT: Okay.

7          MR. GREENBERG: The scope of the depositions will

8  be number one, any new documents not produced in connection

9  with the arbitration or any documents whatsoever, whether

10 produced in connection with the arbitration or thereafter,

11 which are relevant to any new theories of recovery which

12 were not part of the arbitration claims; and

13         No. 2, any new theories of recovery and/or any new

14 damage calculations in the instant action, which were not

15 raised or alleged in the Triple A arbitration.

16         And that will be the scope of the depositions.

17         THE COURT: All right.  That's fine.  Now that

18 you've spent a lot of time with each other, maybe you can

19 become friends and can talk settlement of the case.  One can

20 only hope.

21         MR. GREENBERG: It would be nice.

22         MR. BRINKMAN: Thank you, Your Honor.

23         THE COURT: All right.  Thank you.

24         MR. BRINKMAN: Thanks.

25 (Whereupon, the proceedings are concluded at 3:25 p.m.)

26

1

2

3

4                    CERTIFICATE OF TRANSCRIBER

5

6         I certify that the foregoing is a correct

7    transcript from the digital sound recording of the

8    proceedings in the above-entitled matter.

9

10    DATED: December 20, 2007

11

12                        By:___/s/ Jo McCall_____

13

14

15

16

17

18

19

20

21

22

23

24

25

## PROOF OF SERVICE
### [Code Civ. Proc. § 1013(a)]

I am employed in the County of Sonoma, California.

I am over the age of eighteen (18) years and not a party to the within cause; my business address is 100 Stony Point Road, Suite 200, Santa Rosa, California 95401.

On the date set out below, I served the attached:

### APPELLANT'S REPLY BRIEF
### AND CROSS-APPELLEE'S BRIEF

on the interested parties in said cause, by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

| | |
|---|---|
| Daren R. Brinkman. Esq. | Counsel for |
| Laura J. Protillo, Esq. | Betta Products, Inc. and |
| Brinkman Portillo, PC | Dana McCurnin Trustee of |
| 4333 Park Terrace Drive | The Betta Products, Inc. Litigation |
| Suite 205 | Trust |
| Westlake Village, CA 91361 | |
| Telephone: (818) 597-2992 | |
| Facsimile: (818) 597-2998 | |

<u>  XX  </u>  (BY MAIL) I placed each such sealed envelope, with postage thereon fully prepaid for first-class mail, for collection and mailing at Santa Rosa, California, following ordinary business practices. I am readily familiar with the practice of Abbey, Weitzenberg, Warren & Emery for the processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited with the United States Postal Service the same day as it is placed for processing.



_____ (BY OVERNIGHT MAIL)  I placed each such sealed envelope, with postage thereon fully prepaid for overnight mail, for collection and mailing at Santa Rosa, California, following ordinary business practices.  I am readily familiar with the practice of Abbey, Weitzenberg, Warren & Emery for the processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited with the overnight mail provider the same day as it is placed for processing.

_____ (BY PERSONAL SERVICE)  I caused such envelope to be delivered by hand to the addressee(s) noted above.

_____ (BY FACSIMILE)  I caused said document to be transmitted by facsimile machine to the number indicated after the address(es) noted above.

_____ (BY ELECTRONIC TRANSMISSION)  I caused said document to be transmitted electronically to the email addresses indicated after the address(es) noted above.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on January 7, 2008, in Santa Rosa, California.

/s/ Barbara S. Himbert
Barbara S. Himbert